**zenbusiness** *26CV61150*

**July 9, 2026**



FILED BY_____CN L____D.C.

JUL 13 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

Charles Jake Stratmann
545 NE 17th Avenue
Fort Lauderdale, FL 33301

In Re: Stratmann v. Ivankovich et al., Civil Action No. 0:26-cv-61150-PAB

To whom it may concern:

ZenBusiness Inc. is the registered agent for many entities and is unable to determine the entity registered with the Florida Secretary of State this service is intended for. Please re-serve clearly identifying the entity registered with the Florida Secretary of State.

Thank you,
Chesney H.
Compliance Specialist

CC: District Court of Southern Florida, Fort Lauderdale Division, 299 East Broward Boulevard #108 Fort Lauderdale, FL 33301

FORT LAUDERDALE
FL 33316
JUL 02, 2026
**$21.02**

32301

S2324N502833-07

RDC 03

RMLY TO SEAL

# UNITED STATES POSTAL SERVICE ®

## PRIORITY® MAIL

FROM:

pected delivery date specified for domestic use.

omestic s

**CERTIFIED MAIL**

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS FOLD AT DOTTED LINE

ctions apply).*

any international destinations.

PS Trac

mited inte

hen used

n is required.

exclusions see the

nance does

estic Mail M

9589 0710 5270 4059 1284 39

and limitations of coverage.

International Mail Manual

PKG-C_04 ; Case 0:26-cv-61150-PAB

**CERTIFIED MAIL + RETURN RECEIPT**
FROM:  Charles Jake Stratmann, Plaintiff Pro Se
545 NE 17th Avenue
Fort Lauderdale, FL 33301

TO:

Nexus Capital Funding LLC
c/o ZenBusiness Inc.
336 E. College Avenue, Suite 301
Tallahassee, FL 32301

# LAT RATE ENVELOPE
NE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

# RACKED ■ INSURED



now2recycle.info

PAPER
POUCH

500001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

# RICO CIVIL COMPLAINT

Stratmann v. Ivankovich et al.

Case No. [TO BE ASSIGNED BY CLERK]

Filed: April 14, 2026

CAPTION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

Case No. [TO BE ASSIGNED BY CLERK]

**CHARLES JACOB STRATMANN,**
    Plaintiff,

    v.

STEVEN IVANKOVICH, a/k/a "Dr. Anthony Ivankovich";

TOM ACKEL; DAVID HUNTER; NEIL BURELL;

SEAN BRIGHTON; RICK PANERO;

ED BIGGIE; MICHAEL MOORE; CAYCIE FLITMAN;

OLAFUR "OLI" HAND;

CONTESSA MARINE RESEARCH LLC;

BLUEWATER REEL ESTATE LLC;

IN-VISIONS LLC; NATIONAL LIQUIDATORS LLC;

FILED BY _CWC_ D.C.

APR 17 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

SHM LMC, LLC, d/b/a LAUDERDALE MARINE CENTER;

BLACKSTONE GROUP INC.; MOORE & COMPANY, P.A.;

HIGHLAND HILL CAPITAL LLC;

SINCLAIR FUNDING GROUP LLC;

NEXUS CAPITAL FUNDING LLC;

AKERMAN LLP; AMANDA KLOPP;

JENNA M. YOSS; JOHN DOES 1-10,

Defendants.

_____/

## VERIFIED COMPLAINT FOR RICO VIOLATIONS, CIVIL THEFT, FRAUD, AND RELATED CLAIMS

Plaintiff Charles Jacob Stratmann ("Stratmann" or "Plaintiff"), appearing pro se in his individual capacity, files this Verified Complaint against the above-named Defendants and states:

## I. PARTIES AND JURISDICTION

### A. Plaintiff

Plaintiff Charles Jacob Stratmann is a natural person and citizen of the State of Florida, residing at 545 NE 17th Avenue, Fort Lauderdale, Florida 33301.

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. [TO BE ASSIGNED BY CLERK]

CHARLES JACOB STRATMANN,
    Plaintiff,

v.

STEVEN IVANKOVICH, a/k/a "Dr. Anthony Ivankovich";

TOM ACKEL; DAVID HUNTER; NEIL BURELL;
SEAN BRIGHTON; RICK PANERO;
ED BIGGIE; MICHAEL MOORE; CAYCIE FLITMAN;
OLAFUR "OLI" HAND;
CONTESSA MARINE RESEARCH LLC;
BLUEWATER REEL ESTATE LLC;
IN-VISIONS LLC; NATIONAL LIQUIDATORS LLC;

SHM LMC, LLC, d/b/a LAUDERDALE MARINE CENTER;

BLACKSTONE GROUP INC.; MOORE & COMPANY, P.A.;

HIGHLAND HILL CAPITAL LLC;

SINCLAIR FUNDING GROUP LLC;

NEXUS CAPITAL FUNDING LLC;

AKERMAN LLP; AMANDA KLOPP;

JENNA M. YOSS; JOHN DOES 1-10,

Defendants.

_____/

### VERIFIED COMPLAINT FOR RICO VIOLATIONS,

### CIVIL THEFT, FRAUD, AND RELATED CLAIMS

RICO Civil Complaint

Stratmann v. Ivankovich et al.

Filed: April 16, 2026

Judicial Assignment Note: Assigned to District Judge Raag Singhal, Fort Lauderdale Division. Pursuant to Administrative Order 2026-4, Magistrate Judge Alicia O. Valle retired effective February 2, 2026. All discovery matters previously referred to Judge Valle are now handled by Magistrate Judge Jared M. Strauss per Judge Singhal's current Fort Lauderdale pairing. All discovery-related filings and requests are directed to Magistrate Judge Jared M. Strauss consistent with his published discovery procedures.

Plaintiff Charles Jacob Stratmann ("Stratmann" or "Plaintiff"), appearing pro se in his individual capacity, files this Verified Complaint against the above-named Defendants and states:

## I. PARTIES AND JURISDICTION

### A. Plaintiff

Plaintiff Charles Jacob Stratmann is a natural person and citizen of the State of Florida, residing at 545 NE 17th Avenue, Fort Lauderdale, Florida 33301.

2

Stratmann is the founder, CEO, and Managing Member of Starboard Yacht Group LLC ("SYG"), a Florida limited liability company engaged in marine engineering, vessel service, and dealer operations since 2008.

Stratmann is also the Managing Member of Starboard Group Holdings LLC ("SGH"), the parent entity of SYG.

This complaint is filed in Plaintiff's individual capacity pursuant to 28 U.S.C. § 1654 and Rowland v. California Men's Colony, 506 U.S. 194, 201-02 (1993). Entity claims of SYG LLC and SGH LLC are preserved for amendment upon retention of counsel. Additional plaintiff classes — including family members with homestead property interests, employees with accrued wage claims, and federal secured creditors — are identified for potential joinder or amendment upon completion of standing analysis.

1. To avoid standing confusion, Plaintiff expressly separates (i) business-to-business contractual dealings in which SYG was the operating counterparty from (ii) Plaintiff's personal injury lane. Allegations regarding SYG vendor, dealer, and customer relationships are pled as enterprise context, motive, pattern, and causation evidence; they are not pled as pro se prosecution of SYG's entity-owned claims. Plaintiff's individual standing in this Track 2 posture is grounded in direct personal injury to business or property, including personal guaranty exposure,

3

personal liability pressure, personal reputational and earning-capacity harm, and out-of-pocket defense burden caused by the enterprise's conduct.

4a. The United States, through the Small Business Administration ("SBA"), holds a perfected first-position UCC-1 security interest in all assets of Starboard Yacht Group LLC by virtue of EIDL Loan No. 5611798202 in the original amount of $1,915,000. The SBA qualifies as a "person" under 18 U.S.C. § 1964(c) and has suffered direct injury to its business (federal lending program operations) and property (perfected lien impairment) as a proximate result of the enterprise's post-notice conversion conduct. This injury is direct — the SBA is the primary secured creditor whose first-position lien is impaired by enterprise actors who had actual knowledge of the perfected security interest — and is not derivative of SYG's injury. Standing analysis under Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992) and Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006) is satisfied because no intervening party stands between the enterprise's conduct and the SBA's lien impairment. Plaintiff preserves SBA's standing for potential joinder, intervention, or amendment.

4b. This action also arises from the enterprise's use of trust-building commercial engagement as the opening phase of a larger extraction scheme. In May 2022, after a Seakeeper-related crisis involving Ivankovich's Cobia vessel, Plaintiff intervened, documented the defect condition, positioned the warranty and

4

vendor-liability lane, and communicated that the unit would be resolved quickly and at no cost to Ivankovich. The resulting communications and subsequent litigation posture are part of the record summarized in Plaintiff's financial pillar materials and related exhibit packets.

4c. Within days of that resolution effort, Plaintiff introduced Ivankovich to Seakeeper refit sales representative Chase Russell for follow-on vessel work associated with M/V Octopussy. The relationship that followed gave Ivankovich access to Plaintiff's operating model, dealer channels, project management systems, and the financial strength SYG had built before the enterprise attack.

4d. Plaintiff alleges that this opening sequence is not a separate predicate act and is not pled as an independent count for relief. Rather, it is the origin narrative that explains why Plaintiff became the enterprise's target, how access and dependency were created, and why later non-payment, discovery weaponization, sanctions pressure, and coordinated revenue destruction were effective.

4e. A separate Seakeeper/Madison action addresses the distinct dealership-termination damages track arising from later events. That matter remains separate. This complaint references the Cobia-to-Octopussy origin sequence only as pattern and motive evidence for the enterprise conduct alleged here.

**B. Defendants**

Tier 1 — Individual Enterprise Actors

5

Defendant Steven Ivankovich, a/k/a "Dr. Anthony Ivankovich" (Hub 1 principal), is a natural person and citizen of the State of Illinois. Ivankovich directed and managed the enterprise's federal litigation fraud, creditor cascade, and discovery weaponization operations from at least May 2022 through the present. Cook County Receiver Neal Levin was appointed over Ivankovich's entity CMR in May 2025. As reflected in transcript testimony, Ivankovich admitted he knew the location of SK35 because he hired a private investigator, corroborating intentional asset-tracing conduct through enterprise intermediaries. In the February 23, 2026 bench trial transcript, Ivankovich further testified that Seakeeper reported being threatened with litigation if it spoke directly, and that "ultimately, through counsel and ongoing conversation" he was able to speak to vendors directly and obtain the information sought (Tr. pp. 86, 88-89).

Defendant Tom Ackel (Hub 2 principal) is a natural person and citizen of the State of Florida residing in Broward County. Ackel directed and managed the enterprise's physical seizure, conversion, and extortion operations, and signed a subordination agreement on May 30, 2024 that he subsequently breached on November 10-13, 2025.

Defendant David Hunter is a natural person and citizen of the State of Florida. Hunter served as the LLC Manager of BlueWater Reel Estate LLC, executed void service of process on his own company's behalf in the eviction

6

action, and maintained connections to both enterprise hubs through In-Visions LLC.

Defendant Neil Burell is a natural person whose address is known through the CMR docket. Burell provided a sworn affidavit containing a $758,000+ proven overstatement of damages that was submitted to this Court in support of CMR's default judgment application. On information and belief, Burell was coerced to execute the final affidavit version after preparing a materially different preliminary damages report (D-48, filed as DE 314-5 in CMR's proposed findings package), and the final sworn submission removed and/or recharacterized material components reflected in the preliminary work product. D-48's preliminary findings report states: money in to SYG of $4,504,641.18; third-party vendor payments of $1,491,348.48 (with SYG audit-file variance to $1,590,770.78); and Exhibit A amount-due calculations of $2,033,483.48 with internal discrepancies noted by the same report. Plaintiff further alleges a suppression-to-inflation chain in which earlier ZOMMA/Betty Martin audit work identifying materially lower substantiated amounts was displaced by later sworn figures; the final DE 314-5-to-DE 288-1 quantified inflation delta is designated for Rule 26(e) supplementation.

Defendant Sean Brighton is a natural person and citizen of the State of Florida residing in Broward County. Brighton served as co-manager of BlueWater

Reel Estate LLC and received proceeds from the unauthorized sale of SK35 gyroscopic marine stabilizer equipment.

Defendant Rick Panero is a natural person. Panero received and possessed SK26 gyroscopic marine stabilizer equipment through Ares Marine without court authorization and in furtherance of the enterprise's asset conversion operations.

Defendant Ed Biggie is a natural person and citizen of the State of Florida. Biggie served as the intelligence channel between Hub 1 (CMR/Ivankovich) and Hub 2 (TBW/Ackel), conducting four documented pre-seizure reconnaissance visits to SYG's operating facility between August and October 2025.

Defendant Michael Moore (Moore & Co) is a natural person. Moore participated in the enterprise's discovery weaponization by handling combined communications (SYG006686-SYG007040) that were channeled through the enterprise, was introduced in enterprise communications as "our team's attorney," and provided legal-strategy messaging to Plaintiff including direction that it was "bad business" to include Matthew Valcourt. On information and belief, Moore also participated in, directed, or ratified the improper use, redirection, or strategic deployment of approximately $400,000 in bond-related funds or bond leverage in connected litigation pressure lanes, in a manner inconsistent with the bond's proper protective purpose and used to intensify coercive settlement and enforcement pressure against Plaintiff and SYG.

8

12a. Defendant Caycie Flitman is a natural person and attorney associated with Moore & Company, P.A. Flitman participated in the enterprise's information channel operations by transmitting and coordinating litigation-adjacent intelligence used in the enterprise's pressure campaign against SYG.

12b. Defendant Olafur "Oli" Hand is a natural person who operated as an enterprise coordination actor in Seakeeper/CMR-adjacent channels. On information and belief, Hand assumed operational intelligence-routing functions after SYG's vessel arrest actions and participated in compartmentalized information control directed by Hub 1 leadership.

Tier 2 — Enterprise Entity Defendants

Defendant Contessa Marine Research LLC ("CMR") is a Florida limited liability company currently under Cook County Receiver Neal Levin. CMR served as the primary litigation vehicle for Hub 1's federal court fraud operations, obtaining a $6,524,783.18 default judgment against SYG through enterprise conduct.

Defendant BlueWater Reel Estate LLC is a Florida limited liability company. BlueWater served as the operational vehicle for Hub 2's eviction, seizure, and conversion operations against SYG's collateral and operating base.

Defendant In-Visions LLC is a Florida limited liability company controlled by Defendant Hunter. In-Visions served as the organizational bridge between Hub

9

2 (TBW/Ackel operations) and Seakeeper/SHM enterprise activities, and facilitated the conversion and relocation of seized SYG property through Hunter's dual role as In-Visions principal and BlueWater LLC Manager.

Defendant National Liquidators LLC is a Florida limited liability company deployed to conduct unauthorized vessel location and asset tracing operations against SYG without court order, including sending agents to SYG's known marina locations on February 12, 2026 to photograph and document vessel positions in furtherance of the enterprise's asset search and seizure operations.

16a. Defendant SHM LMC, LLC, d/b/a Lauderdale Marine Center, is a limited liability company operating a marine facility at 2301 SE 17th Street, Fort Lauderdale, Florida 33316. SHM LMC served as the enterprise's facility-control weapon by executing a workspace lockout of SYG during the critical CMR discovery period (December 2024 – January 2025), creating duress conditions that coerced Plaintiff into a $238,000 settlement on January 31, 2025 — the same day as the Triple Coordination Event. SHM LMC further destroyed SYG customer contracts worth $2.5M+ (All Speed Fins, Quad Humphree) by denying access to vessels and work-in-progress. On information and belief, SHM LMC's pressure lane also overlaps with retaliatory escalation after Plaintiff's reporting activity, the misappropriation/misallocation of approximately $455,000 of SYG funds, and uncollected sales-tax exposure exceeding $60,000 tied to resale-certificate misuse.

10

SHM LMC's eviction-pressure lane is further documented in Broward County Case No. COCE-24-017512, including the initial eviction complaint (Filing #194561390, Mar. 21, 2024), summons/appearance/counterclaim filings (Filing #194597881 and Filing #195238536), and later landlord motion practice with a joint stipulated possession filing (Filing #196307292 and Filing #199371645). SHM LMC was represented by Akerman LLP in the related CMR proceedings, reinforcing the concurrent-conflict channel.

16b. Defendant Blackstone Group Inc. is a Delaware corporation with principal offices in New York, New York. Blackstone is the parent entity of Safe Harbor Marinas, which owns and operates SHM LMC. Blackstone acquired Safe Harbor Marinas for $5.7 billion, with the acquisition announced February 1, 2025 — one day after the coerced $238K settlement — and closing approximately February 24, 2025. Blackstone Senior Managing Director Frank Cohen serves on the Northwestern University Board of Trustees alongside Larry Gies, CEO of Madison Industries (Seakeeper's parent), establishing the coordination nexus between the SHM/Blackstone and Seakeeper/Madison enterprise tracks. Blackstone's corporate presence during the lockout period was leveraged to amplify the duress conditions imposed on Plaintiff.

16c. Defendant Moore & Company, P.A. is a professional association through which Defendant Michael Moore and associated personnel, including

Flitman, conducted discovery and communications functions relevant to the enterprise's litigation and intelligence channels.

16d. Defendant Highland Hill Capital LLC is, on information and belief, a financing entity that participated in the coordinated MCA pressure lane, including refusal of payment and manufactured default conditions that aligned with enterprise timing.

16e. Defendant Sinclair Funding Group LLC is, on information and belief, a financing entity in the MCA acceleration lane that participated in coordinated collection pressure aligned with enterprise objectives.

16f. Defendant Nexus Capital Funding LLC is, on information and belief, a financing entity in the MCA acceleration lane that participated in coordinated default escalation and pressure tactics against SYG.

Tier 3 — Legal Intermediary Defendants

Defendant Akerman LLP is a Florida limited liability partnership with offices at 201 E. Las Olas Blvd., Fort Lauderdale, FL 33301. Akerman served as the enterprise's principal legal coordination channel through a five-layer concurrent conflict structure that, in combination, constitutes the enterprise's most pervasive single-actor conflict pattern: (1) Asset Protection Retention: On information and belief, Akerman was retained to protect and insulate Ivankovich-controlled assets — including CMR-related interests — a representation in which Akerman's duty of

12

Case 0:26-cv-61150-PAB Document 1 Entered on FLSD Docket 04/20/2026 Page 15 of 74

loyalty ran directly to Ivankovich and his controlled entities. (2) Ivankovich-Versus-Ivankovich Inter-Party Proceedings: Simultaneously and in direct conflict with that asset-protection mandate, Akerman represented parties in internal Ivankovich/CMR inter-party proceedings; those proceedings are currently under the control of Cook County court-appointed Receiver Neal Levin (Case No. 21-D-9220), appointed May 2025 following enterprise abuse of court process — circumstances to which Akerman's continued adverse conduct contributed. (3) SCB Parallel Enforcement Against CMR/Anthony: In the separate Seacoast enforcement action against CMR and Anthony Ivankovich, Seacoast proceeded through non-Akerman counsel while CMR and Anthony appeared without defense counsel and default was entered. That no-defense collapse is consistent with the enterprise's counsel-deprivation and default-cascade methods and separates that lane from Akerman's direct role in the SCB-v.-SYG foreclosure lane. (4) SCB v. SYG Admiralty Foreclosure: Akerman currently represents Seacoast National Bank in its admiralty vessel foreclosure against SYG, filed by complaint on February 12, 2026 (DE 1) and prosecuted through vessel-arrest filings on February 13, 2026 (DE 6) by Defendants Klopp and Yoss — the enterprise's primary connecting enforcement channel linking Hub 1's judgment apparatus to Hub 2's physical-seizure operations, filed exactly ten days before the CMR trial date. (5) SHM LMC v. SYG Retaliatory Eviction and Lockout: Akerman represented SHM

LMC in its retaliatory eviction and lockout action against SYG in Broward County Case No. COCE-24-017512 (initial complaint Filing #194561390, Mar. 21, 2024), culminating in a joint stipulated possession settlement (Filing #199371645) reflecting coerced resolution under enterprise-coordinated pressure following Plaintiff's reporting activity. The cumulative effect of representations (1) through (5) is a single law firm simultaneously (a) entrusted to protect Ivankovich assets, (b) representing parties within Ivankovich's entity complex before that complex was placed under court-appointed receiver control, (c) operating alongside a parallel SCB enforcement lane that drove CMR/Anthony into uncounseled default, (d) prosecuting SCB's vessel seizure against SYG, and (e) prosecuting SHM LMC's retaliatory lockout of SYG's operating base — an enterprise coordination function operating under the appearance of independent legal representation. Each engagement pairing violates FL Bar Rule 4-1.7(a)(1) or (a)(2); in aggregate, the five concurrent representations constitute the enterprise's legal coordination infrastructure. A Florida Bar complaint documenting these conflicts (ACAP No. 26-7791) was filed January 29, 2026.

Defendant Amanda Klopp is a natural person and attorney licensed in the State of Florida, associated with Akerman LLP. Klopp served as lead counsel on the SCB admiralty foreclosure against SYG while personally aware of — and, on information and belief, a participant in managing — all five concurrent adverse

14

representation conflicts described in the Akerman LLP paragraph above. Klopp authored the conflict denial letter dated January 26, 2026 — transmitted through interstate communications and directly responsive to Plaintiff's formal conflict-of-interest challenge — that affirmatively denied the existence of the concurrent representations. That denial was contradicted by contemporaneous docket records then active across the CMR, SCB, IFB International bankruptcy, and COCE-24-017512 proceedings. The letter was issued three days before Plaintiff filed the Florida Bar complaint (January 29, 2026), reflecting enterprise awareness of and preemptive cover-up of the conflict structure. Klopp's transmission of a materially false conflict denial through interstate wire communications, in furtherance of the enterprise's coordinated legal channel, constitutes an independent predicate act in the pattern of racketeering activity (PA-SCB-02; 18 U.S.C. § 1343). On information and belief, Klopp further coordinated National Liquidators direction in support of vessel-tracing activity without valid federal warrant process, constituting an additional overt act in furtherance of the conspiracy.

Defendant Jenna M. Yoss is a natural person and attorney licensed in the State of Florida, associated with Akerman LLP. Yoss served as co-counsel alongside Defendant Klopp in the SCB admiralty foreclosure against SYG, participating in the February 12, 2026 complaint filing (DE 1) and February 13, 2026 arrest-phase filings (DE 6) in the S.D. Fla. proceeding while all five

concurrent adverse representations described in the Akerman LLP paragraph above were operative. Yoss's active participation in filing and prosecuting the SCB vessel arrest — an enterprise-coordinated enforcement action timed to intersect with the CMR trial — constitutes sustained overt acts in furtherance of the enterprise's legal coordination channel and the enterprise's overall pattern of racketeering activity.

Tier 4 — John Doe Defendants

Defendants John Does 1-10 are individuals and/or entities whose identities are presently unknown but who participated in or facilitated the enterprise's pattern of racketeering activity, including additional enterprise coordinators, financial conduits, surveillance operatives, and control persons not yet fully identified by legal name and service address. Their identities will be ascertained through discovery. Plaintiff reserves the right to amend this complaint to name such individuals and entities upon identification. This reservation expressly includes potential family-asset conduit actors identified in the record, including Dr. Olga Ivankovich, if discovery and docket-certified transfer evidence confirms personal participation in post-judgment asset routing or concealment.

## C. Jurisdiction

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 18 U.S.C. § 1964 (RICO civil remedies).

16

This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a), as the state claims arise from the same nucleus of operative facts as the federal RICO claims.

Venue is proper in the Southern District of Florida, Fort Lauderdale Division, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims occurred in Broward County, Florida. The enterprise's physical operations — asset seizure, eviction, property conversion, discovery production — occurred in this district.

In personam jurisdiction exists over each Defendant. The individual Florida resident defendants (Ackel, Hunter, Brighton, Biggie) reside and conduct enterprise activity in this district. Non-resident defendants (Ivankovich, Burell, Moore, Flitman, Hand) directed enterprise conduct into this district through wire and mail transmissions, court filings, and coordinated actions targeting a Florida victim. Entity defendants (CMR, BlueWater, In-Visions, National Liquidators, SHM LMC, Moore & Company, Highland Hill, Sinclair, Nexus) are organized in, conduct business in, and/or directed collection and litigation conduct into Florida. Blackstone Group Inc. is subject to jurisdiction under Florida's long-arm statute, Fla. Stat. § 48.193(1)(a)(1), having operated, conducted, engaged in, or carried on a business venture in this state through its subsidiary SHM LMC. Akerman LLP is headquartered in this district.

17

## II. THE ENTERPRISE

The enterprise is defined as the method, system, and coordinated operating structure through which the defendants acted — distinct from the defendants themselves.

### A. Enterprise Definition

The RICO enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4), operating as a coordinated system of financial extraction, physical asset seizure, litigation manipulation, and victim resource destruction.

The enterprise operates through a dual-hub command structure with shared intelligence channels, legal coordination intermediaries, and synchronized timing mechanisms. The enterprise is an ongoing organizational system — separate and distinct from the defendants who conduct its affairs.

The enterprise's common purpose is the systematic extraction and conversion of Starboard Yacht Group's assets, revenue streams, intellectual property, business relationships, and operating capacity through coordinated multi-vector attack.

### B. Enterprise Operating Methods

The enterprise employs the following recurring methods to accomplish its common purpose:

Case 0:26-cv-61150-PAB Document 1 Entered on FLSD Docket 04/20/2026 Page 21 of 74

(a) Litigation Fraud Method: Filing inflated or fabricated damage claims in federal court; submitting sworn affidavits containing proven financial overstatements; manipulating discovery processes to simultaneously extract victim intelligence and conceal enterprise financial records; obtaining default judgments when the enterprise's own conduct prevents the victim from retaining counsel.

(b) Creditor Cascade Method: Coordinating the simultaneous acceleration of multiple creditor obligations on a single target date, creating compounding financial pressure designed to collapse the victim's ability to service any individual obligation. On January 31, 2025, three independently devastating enterprise actions were executed on the same day: Seakeeper dealer termination, SHM duress settlement, and CMR discovery deadline — the Triple Coordination Event.

(c) Physical Seizure and Conversion Method: Signing binding agreements (subordination, lease) to establish trust and access, then breaching those agreements to seize the exact assets protected by them. Deploying enterprise actors (Hunter for service of process, Biggie for pre-seizure intelligence, Brighton for proceeds collection, Panero for asset receipt) in a sequential chain.

(d) Counsel Prevention Method: Draining the victim's financial resources through coordinated multi-front litigation, creditor acceleration, and asset seizure, rendering the victim unable to retain counsel in any of the pending matters. Once victim is unrepresented, exploiting the 28 U.S.C. § 1654 LLC representation

Case 0:26-cv-61150-PAB Document 1 Entered on FLSD Docket 04/20/2026 Page 22 of 74

requirement to obtain default judgments against entity defendants and to strike entity filings.

(e) Legal Coordination Channel Method: Using dual representation by a single law firm (Akerman LLP) across multiple enterprise actions to facilitate information sharing, timing coordination, and synchronized filing of new actions against common targets.

(f) Intelligence Gathering Method: Deploying intermediary actors (Biggie — 4 documented visits; Flitman/Leatherwood — discovery transmissions to Seakeeper) to collect target intelligence, map assets, and relay operational information between the enterprise's hubs. On information and belief, this same relay channel also supported mail-fraud and mail-claims execution lanes culminating in the Fourth IC3 reporting event.

(g) Undocumented Transaction Method: Conducting enterprise operations through oral agreements, undocumented arrangements, and handshake deals — including Ackel's initial occupancy terms, Hunter's LLC management role, Biggie's reconnaissance assignments, and Brighton's proceeds-sharing arrangement — to evade paper trails and frustrate discovery. The deliberate absence of written agreements across multiple enterprise relationships is itself evidence of coordinated concealment.

## C. Enterprise Organizational Structure

Case 0:26-cv-61150-PAB Document 1 Entered on FLSD Docket 04/20/2026 Page 23 of 74

The enterprise operates through two command hubs connected by shared channels:

Hub 1 — Federal Litigation and Creditor Cascade (Ivankovich)

Hub 1 is directed by Defendant Ivankovich and operates primarily through federal litigation to obtain fraudulent judgments and orchestrate creditor cascades. Hub 1 actors include Ivankovich, Burell (damages affiant), Moore (discovery handler), Flitman (information channel actor), Hand (coordination actor), Moore & Company, P.A. (professional association channel), and CMR LLC (litigation vehicle). Hub 1's methods include litigation fraud, discovery weaponization, creditor cascade orchestration, and receiver circumvention.

Hub 2 — Physical Seizure and Conversion (Ackel)

Hub 2 is directed by Defendant Ackel and operates primarily through physical seizure, conversion, and extortion of SYG's assets and operating base. Hub 2 actors include Ackel, Hunter (LLC manager/void service executor), Brighton (co-manager/proceeds receiver), Panero (asset receiver), and BlueWater Reel Estate LLC (operational vehicle). Hub 2's methods include subordination breach, $1.166M property conversion, void eviction, and extortionate storage demands.

Connecting Channels

21

Case 0:26-cv-61150-PAB Document 1 Entered on FLSD Docket 04/20/2026 Page 24 of 74

The two hubs are connected through shared intelligence, legal intermediaries, and synchronized timing:

(a) Akerman LLP Channel: Simultaneous adverse representation in CMR (Hub 1), SCB (connecting enforcement), and IFB International bankruptcy (DIP counsel) — creating a three-way legal coordination pipeline between enterprise actions targeting a common victim. The triple conflict was operative concurrently: Akerman represented CMR creditors seeking the $6.5M judgment, prosecuted the SCB vessel arrest against SYG, and served as DIP counsel in the IFB International bankruptcy involving overlapping Ivankovich-controlled entities — all simultaneously, all against SYG or SYG-related interests. The Akerman conflict denial letter of January 26, 2026 was issued three days before the Florida Bar complaint (January 29, 2026) and three days after IFB International events bearing on the concurrent representation. Gary Goldstein — the only member of Ivankovich's inner circle who had been excluded from SCB knowledge — was turned as a cooperating FBI witness, further demonstrating the enterprise's need to insulate the SCB channel from potential exposure.

(b) Ed Biggie Intelligence Channel: Four documented pre-seizure reconnaissance visits to SYG's facility (August-October 2025), providing Hub 2 with target intelligence informed by Hub 1's discovery extractions.

22

(c) Timing Synchronization: Enterprise actions across hubs demonstrate coordinated timing that cannot reasonably be attributed to coincidence — including the January 31, 2025 Triple Coordination Event and the February 12, 2026 SCB filing exactly 11 days before the CMR trial.

## D. Enterprise Continuity

The enterprise has operated continuously from at least May 2022 (Ivankovich corporate communications regarding Seakeeper) through the present date, with no natural endpoint. This satisfies both closed-ended continuity — 45+ months of coordinated activity far exceeding the Eleventh Circuit's nine-month floor in Jackson v. BellSouth Telecommunications, Inc., 372 F.3d 1250 (11th Cir. 2004) — and open-ended continuity, as new predicate acts occurred in 2026 with no indication of cessation.

## E. Enterprise Distinctness

The enterprise is distinct from the defendants. It is the coordinated system of methods, channels, and timing mechanisms described above — not merely the sum of the defendants. Individual defendants may be replaced without destroying the enterprise's operating structure. The hubs, channels, and methods have existed and operated independently of any single defendant's participation in any single action, as evidenced by the enterprise's continued expansion into new venues (SCB

23

foreclosure), new shell entities (National Liquidators), and new enforcement methods (garnishment via VIV) even as individual components (CMR under receiver control) undergo structural changes.

## III. FACTUAL BACKGROUND AND TIMELINE

This section sets forth the factual chronology of the enterprise's operations in sufficient detail to satisfy Rule 9(b)'s particularity requirement for fraud-based predicates.

### A. Pre-Enterprise Foundation (2008-2021)

In 2008, Stratmann founded SYG with $10,000 in personal savings and a $20,000 personal loan. Over fourteen years, Stratmann built SYG into a $7.68 million annual-revenue marine engineering operation employing approximately 30 full-time workers with benefits.

By 2021, SYG held the Seakeeper "Dealer of the Year" designation and maintained daily average Bank of America operating balances exceeding $1,000,000.

SYG invested over $9 million of its own capital in Seakeeper and Humphree dealerships, demo vessels, sodium-ion battery development (Salty Marine Batteries LLC), and proprietary marine engineering IP.

24

Case 0:26-cv-61150-PAB Document 1 Entered on FLSD Docket 04/20/2026 Page 27 of 74

## B. Enterprise Initiation (2022)

On January 3, 2022, Stratmann met Steven Ivankovich aboard M/V Octopussy and shared SYG's post-COVID vision, including SYG's EIDL-funded capital position.

On April 8, 2022, the first Ivankovich wire — $12,862.00 from Glencoe Family Dwelling — was received by SYG. This amount represented approximately 1.2% to 1.3% of SYG's combined operating cash at that time.

The subsequent business relationship resulted in $4,504,641.18 received from four Ivankovich-controlled entities, all accounted for in the 151-page CFO Declaration (DE 237 in Case No. 0:23-cv-61696-AHS), certified as showing $0.00 unaccounted.

## C. Enterprise Operations — Hub 1 (2022-2026)

The detailed chronology of CMR litigation fraud, discovery manipulation, damages inflation, creditor cascade events, and the resulting default judgment is set forth in the predicate acts in Sections IV.A and IV.B below and the supporting exhibits referenced therein. The chronology includes, without limitation: the filing of an inflated damages affidavit containing a $758,000+ proven overstatement; a material divergence between Burell's preliminary report (D-48/DE 314-5) and the later sworn affidavit used for default relief; the use of redacted and incomplete file

25

productions and withholding of responsive evidence during the pretrial discovery lane; the manipulation of discovery deadlines while concealing enterprise financial records; the orchestration of the January 31, 2025 Triple Coordination Event; and the exploitation of SYG's inability to retain counsel to obtain the $6,524,783.18 default judgment.

### D. Enterprise Operations — Hub 2 (2024-2026)

On May 30, 2024, Ackel signed a subordination agreement acknowledging and subordinating BlueWater's lien position to SYG's SBA loans. Ackel confirmed the agreement via email the same day — establishing actual knowledge of the subordination obligations and destroying any future ignorance defense.

The Hub 2 chronology includes, without limitation: the breach of the subordination agreement, the November 10-13, 2025 seizure of $1,166,000 in SYG collateral, the execution of void service of process by Hunter on behalf of his own company, the imposition of extortionate storage demands, the unauthorized sale of SK35 gyroscopic marine stabilizer equipment for $309,000, and transcript-confirmed admissions by Ivankovich that he hired a private investigator and knew SK35's location.

D.1. Federal Lending Structure and Post-Notice Conversion

43a. SBA EIDL Loan and Lien Priority Stack. The SBA holds EIDL Loan No. 5611798202 (original amount: $1,915,000) secured by a perfected UCC-1

26

Case 0:26-cv-61150-PAB   Document 1   Entered on FLSD Docket 04/20/2026   Page 29 of 74

filing encumbering all assets of SYG — a first-position security interest with priority over all subsequent liens. Locality Bank holds a Section 7(a) SBA-guaranteed loan in a subordinate second-position lien. The subordination agreement signed by Defendant Ackel on May 30, 2024 explicitly acknowledged and subordinated BlueWater's interests to the SBA lending position. The lien priority stack is:

(i) First Position: United States (SBA) — EIDL Loan No. 5611798202, $1,915,000, UCC-1 all-assets, perfected;

(ii) Second Position: Locality Bank — Section 7(a) SBA-guaranteed loan, subordinate to EIDL;

(iii) Subordinated: BlueWater Reel Estate LLC — per Ackel subordination agreement, May 30, 2024;

(iv) Unsecured: All other creditors, including enterprise-produced judgments.

43b. The Smoking-Gun Email and Post-Notice Conversion Sequence. On November 5, 2025, Defendant Ackel sent an electronic communication to the SBA inquiring: "Can we auction everything off and not pay the SBA anything?" The SBA responded on the same date, through Nakayama B. Abouem, confirming: "The UCC-1 is perfected... does not disclaim... lien and priority interest remains."

Nancy Chamides was carbon-copied on this communication chain. The post-notice conversion sequence is:

(i) Pre-November 5, 2025: SBA UCC-1 filed and perfected. Enterprise actors aware of SBA lending relationship through subordination agreement and SYG records;

(ii) November 5, 2025: Ackel transmits electronic inquiry to SBA asking whether SBA collateral can be excluded from auction proceeds. This communication establishes actual knowledge of the SBA lien AND deliberate inquiry regarding circumvention;

(iii) November 5, 2025: SBA confirms perfected lien status in writing. Enterprise actors now have actual, confirmed, written notice that the SBA's security interest is perfected and not disclaimed;

(iv) Post-November 5, 2025: Enterprise actors proceed to dispose of, divert, and convert SBA-encumbered collateral — the November 10-13, 2025 seizure of $1,166,000 in SYG collateral occurs five to eight days after Ackel's inquiry and the SBA's confirmation;

(v) Continuing: Enterprise continues to hold, conceal, and dispose of SBA-encumbered assets without SBA authorization or court order.

**E. Connecting Channel Operations (2025-2026)**

The Akerman dual representation timeline spans from initial CMR representation through the SCB vessel arrest filing on February 13, 2026, including the January 26, 2026 conflict denial letter contradicted by concurrent docket records and the Florida Bar complaint filed January 29, 2026.

The communications chronology corroborates that channel structure: settlement and lockout pressure communications in 2023-2025 (including SHM no-trespass and settlement-enforcement exchanges), the June 2025 Akerman conflict inquiry and dismissive response, SCB demand/acceleration correspondence in January 2026, service packages for objections and disqualification motions in February 2026, and April 2026 default/strike service activity in the SCB foreclosure lane. Taken together, those dated transmissions show a repeatable legal-coordination pattern in which Akerman lawyers (primarily Klopp/Yoss) and parallel service-recipient counsel channels (including Stroup-related service threads) were used to synchronize pressure, preserve adverse positioning, and escalate enforcement against SYG across related matters.

The Biggie intelligence channel comprises four documented reconnaissance visits between August and October 2025, each providing Hub 2 with target intelligence on SYG's asset positions, operational vulnerabilities, and physical layout.

Timing coordination evidence includes the January 31, 2025 Triple Coordination Event (three independent devastating actions on one day), the February 12, 2026 SCB filing exactly 11 days before CMR trial, and the synchronized acceleration of MCA and creditor obligations.

47a. Plaintiff also relies on testimony and records from former CMR General Manager Joe Seinitz, who has direct historical familiarity with Ivankovich and the CMR operating structure predating his CMR role. Seinitz has represented that he is prepared to execute an updated sworn affidavit addressing enterprise motive, operational compartmentalization, and information-control methods, including statements by Ivankovich that SYG would be loaded with enterprise-controlled business to create dependency and restriction from other work.

47b. On information and belief, Seinitz will further attest that after SYG vessel arrest actions, Ivankovich reduced Seinitz's access while elevating Hand in intelligence-routing functions, consistent with a compartmentalized enterprise model in which different actors receive different narratives and are discouraged from cross-communication.

47c. Plaintiff intends to authenticate Seinitz-linked historical communications through metadata and chain-of-custody records, including date/time headers, sender-recipient routing, and device/account provenance, and to use that authentication to corroborate intent evidence, including Ivankovich email

Case 0:26-cv-61150-PAB Document 1 Entered on FLSD Docket 04/20/2026 Page 33 of 74

admissions concerning plans and resources directed at disabling SYG's operating continuity.

### F. Enterprise-Produced Judgments and Enforcement (2026)

On February 20, 2026, this Court entered a $6,524,783.18 final default judgment against SYG in Case No. 0:23-cv-61696-AHS (DE 299/300). The Court sua sponte identified potential First Degree Grand Theft of $362,072.20 in Footnote 3, referring the matter for appropriate criminal action under FL § 812.014(2).

The default judgment was entered after SYG's opposition (DE 290) was stricken because SYG could not retain counsel — the direct result of the enterprise's coordinated financial destruction of SYG's resources, creating a 28 U.S.C. § 1654 procedural trap.

## IV. PREDICATE ACTS

Predicates are organized by independent fraud element, not by filing/service mechanics. Each predicate identifies: (a) the actor(s), (b) the specific conduct, (c) the date and location, (d) the applicable statute, and (e) the source evidence — satisfying Rule 9(b). Routine litigation filings without independent fraud elements and service of process mechanics are contextual evidence of enterprise pattern, not standalone predicates.

31

## A. Hub 1 Predicates — Litigation Fraud and Creditor Cascade

Predicates supported by independent fraud elements (fabrication, overstatement, concealment, unauthorized filing):

PA #

Actor(s)

Conduct

Date

Statute

Evidence Ref

PA-CMR-01

Ivankovich, Burell

Filing of Burell Affidavit containing $758K+ proven overstatement of damages, after coercive replacement of preliminary report components reflected in D-48/DE 314-5 (preliminary findings: $4,504,641.18 money in; $1,491,348.48 vendor payments; $1,590,770.78 SYG audit-file paid total), and use of redacted/incomplete productions and withheld underlying records before trial to obstruct verification

On or about the date of filing (exact date to be confirmed through discovery)

18 U.S.C. §§ 1343, 1623 (wire fraud and false declaration via CM/ECF)

DE 288 Objection; DE 237 CFO Declaration; DE 314-5 (D-48 preliminary report, Mar. 4, 2024 findings letter); pretrial production logs and redacted-file productions

PA-CMR-02

Ivankovich, CMR

Filing of DE 287 damages motion without proven Receiver authorization, constituting ultra vires action

On or about the date of filing (exact date to be confirmed through discovery)

18 U.S.C. § 1343

DE 287; Cook County Receiver appointment order

PA-CMR-03

Ivankovich

Name fraud: "CHARLES JAKE" used in filings instead of "Charles Jacob"

On or about the date of filing (exact date to be confirmed through discovery)

18 U.S.C. § 1343

CMR docket entries

PA-CMR-04

Moore

Discovery weaponization — combined communications (SYG006686-SYG007040) channeled through enterprise, including communications introducing

33

Moore as "our team's attorney" and advising that it was "bad business" to include Matthew Valcourt

2022 through 2024 (Bates-stamped records SYG006686-SYG007040)

18 U.S.C. § 1343

Bates-stamped discovery records; Exhibit PILLER communications (Steve-to-Plaintiff attorney-introduction + Moore advisory message)

PA-CMR-05

Ivankovich, Flitman

Privileged litigation information (mechanic lien filings) transmitted to Seakeeper in November 2024

Nov 2024

18 U.S.C. § 1341 (mail fraud)

Flitman email records

PA-CMR-06

Ivankovich, Leatherwood

Discovery weapons channeling — "need to involve SeaKeeper directly in dissatisfaction" email July 6, 2023, coupled with transcript testimony that Seakeeper reported litigation threats and that "ultimately, through counsel" vendor communications were forced open to obtain desired information (Feb. 23, 2026 Tr. pp. 86, 88-89)

34

Jul 6, 2023

18 U.S.C. § 1343

Leatherwood email to Seakeeper; Feb. 23, 2026 Bench Trial Transcript (pp. 86, 88-89)

### B. Hub 1 Predicates — Creditor Cascade and Business Destruction

PA #

Actor(s)

Conduct

Date

Statute

Evidence Ref

PA-SKR-01

Ivankovich, Seakeeper

Dealer termination destroying $72.5M value, effective Jan 31, 2025 — same day as Triple Coordination Event

Dec 2, 2024 (notice) / Jan 31, 2025 (effective)

18 U.S.C. § 1343; tortious interference

Termination letter; dealer agreement

PA-SHM-01

SHM LMC, LLC; Blackstone Group Inc.

35

Workspace lockout creating duress conditions during CMR discovery period, resulting in $238K coerced settlement

Dec 2024 - Jan 31, 2025

18 U.S.C. § 1951 (extortion)

Settlement agreement; lockout evidence

PA-SHM-02

SHM LMC, LLC

Customer contract destruction: All Speed Fins ($1.5M), Quad Humphree ($1.0M)

December 2024 – January 2025

18 U.S.C. § 1343

Customer correspondence; contract records

PA-MCA-01

Highland Hill

Refused SYG payment Feb 3, 2025 despite borrower ability to pay — manufactured default

Feb 3, 2025

18 U.S.C. § 1343

Payment records; refusal documentation

PA-MCA-02

36

Highland Hill, Sinclair, Nexus

BofA account freeze (May 28, 2025) blocking payroll tax deposits, forcing IRS/FL RT-6 delinquencies

May 28, 2025

18 U.S.C. § 1343

BofA records; IRS notices

## C. Hub 2 Predicates — Physical Seizure and Conversion

PA #

Actor(s)

Conduct

Date

Statute

Evidence Ref

PA-LOC-01

Ackel

Signed subordination agreement subordinating BlueWater lien to SBA loan, with specific intent to later breach

May 30, 2024

18 U.S.C. § 1343

Subordination agreement; Ackel confirmation email

37

PA-LOC-02

Ackel, Hunter, Brighton

Conversion of $1,166,000 in SYG collateral, Nov 10-13, 2025

Nov 10-13, 2025

FL § 812.014(2) (grand theft); 18 U.S.C. § 1343

FLPD Case #34-2512-209096

PA-LOC-03

Ackel, Hunter, Brighton

Felony finding entered Dec 9, 2025 — establishing probable cause for First

Degree Grand Theft

Dec 9, 2025

FL § 812.014(2); FL § 772.11

Felony finding order

PA-LOC-04

Hunter

Void service of process: Hunter served process for BlueWater — his own

company — rendering COSO-25-053444 default judgment void ab initio

On or about the date of service (exact date to be confirmed through

discovery)

Procedural fraud

Service records; Sunbiz records; Broward County Case No. COCE-24-017512 docket packet (Filing #194561390, #194597881, #195238536, #196307292, #199371645)

PA-LOC-05

Ackel

Extortionate storage fees: $135/day imposed on seized inventory as leverage

Nov 2025 - present

18 U.S.C. § 1951 (extortion)

Demand communications

PA-LOC-06

Hunter

Lowball offer: $70K-$100K for $1.166M in seized property, November 22, 2025 phone call

Nov 22, 2025

18 U.S.C. § 1951

Call records

PA-LOC-07

Brighton

SK35 gyroscopic marine stabilizer equipment sold for $309,000 on December 5, 2025; proceeds retained by enterprise actors

39

Dec 5, 2025

FL § 812.014

Sale records

PA-LOC-08

Panero

SK26 gyroscopic marine stabilizer equipment possessed via Ares Marine without court authorization

on or about November 2025

18 U.S.C. § 1343

BSO/FLPD records

PA-LOC-09

In-Visions LLC, Hunter

Facilitated relocation and concealment of seized SYG property through In-Visions' operational infrastructure, including storage coordination with third-party locations and asset transport logistics directed by Hunter in his dual capacity as BlueWater LLC Manager and In-Visions principal

Nov 2025 - present

18 U.S.C. § 1343; FL § 812.014 (accessory)

Property location records; Sunbiz cross-reference

**D. Connecting Channel Predicates**

PA #

Actor(s)

Conduct

Date

Statute

Evidence Ref

PA-SCB-01

Akerman, Klopp

SCB vessel arrest (DE 6) filed Feb 13, 2026 — 10 days before CMR trial; timing coordination through dual representation and the January-February 2026 demand/service sequence that positioned SYG for default-pressure litigation

Feb 13, 2026

18 U.S.C. § 1343

SCB docket; CMR docket; January 2026 demand and service-transmittal chronology

PA-SCB-02

Klopp, Akerman LLP

Conflict-knowledge timeline: June 2025 conflict inquiry and response communications, followed by Klopp's Jan 26, 2026 conflict denial letter

contradicted by concurrent dockets showing Akerman representing adverse parties

in CMR and SCB simultaneously

Jan 26, 2026

18 U.S.C. § 1343

June 2025 conflict inquiry/response emails; Jan 26 denial letter; PACER

records

PA-SCB-03

National Liquidators LLC

Unauthorized vessel location operation: agents dispatched to SYG's known

marina locations on February 12, 2026 to photograph and catalog vessel positions

without court authorization, providing actionable intelligence for the SCB vessel

arrest filed the following day; corroborated by transcript testimony admitting

private-investigator retention and SK35 location knowledge and by related pre-

arrest pressure communications in the no-trespass/settlement lane

Feb 12, 2026

18 U.S.C. § 1343

Deployment records; marina witness statements; SCB DE 6 timing; hearing

transcript admission (private-investigator retention/SK35 location); no-

trespass/settlement correspondence timeline

PA-SCB-04

42

Klopp, Yoss, coordinated service-recipient channel participants

Post-filing default and strike escalation activity in April 2026: coordinated service/email transmittals and docket steps used to press uncontested foreclosure posture after conflict objections were raised, consistent with the enterprise's counsel-prevention and pressure-channel methods

Apr 2026

18 U.S.C. § 1343

SCB docket default/strike sequence; service transmittal emails; prior conflict correspondence timeline

PA-MAIL-01

Enterprise actors (access via 545 NE 17th Ave)

Visa gift cards intercepted Jan 29, 2026 constituting access device fraud

Jan 29, 2026

18 U.S.C. § 1029

USPS Inspector report; FLPD; FBI IC3

PA-NEW-01

Klopp, Akerman LLP

Demand letter sent to SYG on January 6, 2026 on behalf of SCB while Akerman simultaneously represented CMR creditors in federal court and served as IFB International DIP counsel — triple concurrent conflict of interest violating FL

43

Bar Rule 4-1.7(a). The demand was transmitted by wire (email) and constituted a material step in the enterprise's coordinated legal extraction using conflicted counsel.

Jan 6, 2026

18 U.S.C. § 1343 (wire fraud)

Demand letter; FL Bar complaint (Jan 29, 2026); CMR docket; IFB International docket; Akerman conflict denial letter (Jan 26, 2026)

PA-NEW-02

Klopp, Yoss, Akerman LLP

SCB admiralty complaint and vessel arrest petition filed via CM/ECF on February 12-13, 2026 while Akerman maintained active representation of CMR creditors (Hub 1) and IFB International DIP interests — an affirmative litigation act prosecuted through a triple-conflicted law firm, timed to coincide with National Liquidators' vessel location operation (PA-SCB-03) and to land 10 days before the CMR trial.

Feb 12-13, 2026

18 U.S.C. § 1343 (wire fraud via CM/ECF)

SCB docket (Case No. 0:26-cv-60289-WPD); CMR docket; IFB International bankruptcy docket; Akerman LLP firm records

### E. Federal Secured Creditor Predicates

PA #

Actor(s)

Conduct

Date

Statute

Evidence Ref

PA-FED-01

Ackel (primary sender), Chamides (CC'd)

Post-notice electronic inquiry to SBA: "Can we auction everything off and not pay the SBA anything?" — representing deliberate intent to deprive federal secured creditor of perfected lien recovery. SBA responded same day through Nakayama B. Abouem confirming UCC-1 perfected and priority interest not disclaimed. The inquiry itself is evidence of fraudulent intent: Ackel sought confirmation that the SBA could be excluded from asset distribution BEFORE proceeding with conversion.

Nov 5, 2025

18 U.S.C. § 1343 (wire fraud — email transmission)

Smoking-gun email chain: Ackel → SBA (Nov 5, 2025); SBA response (Nakayama B. Abouem, same date); CC: Nancy Chamides; Subordination agreement (May 30, 2024)

PA-FED-02

Ackel, BlueWater, coordinating enterprise actors

Post-notice conversion and concealment of SBA-encumbered assets, commencing 5-8 days after Ackel's Nov 5 inquiry and SBA's same-day confirmation of perfected lien. The seizure of $1,166,000 in SYG collateral on November 10-13, 2025 occurred with actual knowledge that every asset seized was subject to a perfected SBA first-position lien.

Nov 10-13, 2025 (seizure), continuing

18 U.S.C. § 1343 (wire fraud); FL § 812.014 (conversion of federally secured collateral)

Transaction records; FLPD Case #34-2512-209096; Nov 5 email chain establishing actual knowledge timeline

PA-FED-03

Enterprise actors (coordinated)

Ongoing collateral diversion impairing SBA first-position security interest — including unauthorized sale of SK35 gyroscopic marine stabilizer equipment ($309,000 on Dec 5, 2025), possession of SK26 gyroscopic marine stabilizer equipment via Ares Marine, and extortionate storage demands ($135/day) on federally secured assets

Dec 5, 2025/continuing

18 U.S.C. § 1343; 18 U.S.C. § 1962(d) (conspiracy to convert secured collateral)

SBA servicing records; SK35 model stabilizer sale documentation; SK26 model stabilizer possession records; storage demand communications

PA-FED-04

Enterprise actors (through default cascade)

Secondary lien impairment — Locality Bank 7(a) SBA-guaranteed loan forced into default through enterprise-driven creditor cascade, MCA acceleration, and BofA account freeze. The Locality Bank loan guarantee creates additional federal program loss because the SBA must cover the guaranteed portion upon Locality Bank default.

2025-ongoing

18 U.S.C. § 1343

Locality Bank records; SBA guarantee documentation; MCA acceleration records; BofA freeze records

**F. Enterprise-Produced Judgment Enforcement Predicates**

PA #

Actor(s)

Conduct

Date

47

Statute

Evidence Ref

PA-VIV-01

Vivifi Medical / Valcourt entities

Garnishment of Plaintiff's personal Chase bank account in excess of $85,000 pursuant to enterprise-produced default judgment obtained through coordinated creditor cascade, without valid basis to pierce individual liability

2025-2026

18 U.S.C. § 1343 (wire fraud — electronic garnishment)

Chase garnishment records; VIV docket

PA-VIV-02

Vivifi Medical / Valcourt entities

Obtained default judgment against SYG without proper service upon Managing Member, in coordination with enterprise timing designed to prevent response

On or about the date of judgment entry (exact date to be confirmed through discovery)

18 U.S.C. § 1343

VIV docket; service records

## V. INJURY AND CAUSATION

48

Damages are presented as a line-item schedule mapped to direct injury and predicate linkage, not lump-sum demands.

Plaintiff seeks recovery in this Track 2 pro se filing only for injuries that struck him directly in his own business or property. Plaintiff does not rely on the mere fact that SYG suffered harm. Rather, the enterprise used litigation fraud, creditor-cascade tactics, physical seizure, and counsel-prevention methods to reach Plaintiff's own accounts, credit, homestead exposure, litigation expenditures, and personal liability position.

The proximate-cause chain is direct. The VIV predicate series resulted in an actual garnishment of Plaintiff's personal Chase account. The CMR and SCB predicate series forced Plaintiff to incur personal litigation expense and defense burden while depriving SYG of counsel and using that deprivation to obtain or press enterprise-produced judgments. The PA-FED, PA-LOC, PA-MCA, and related predicates impaired collateral and lending relationships tied to obligations for which collection pressure was directed at Plaintiff personally, thereby damaging his credit, exposing his homestead and other personal assets, and forcing him to defend concurrent proceedings in his own name.

To the extent the tables below identify entity-level SYG injuries, those allegations are pleaded as enterprise-injury background and to preserve the factual chain for later amendment, counsel appearance, or related proceedings. Plaintiff's

Case 0:26-cv-61150-PAB Document 1 Entered on FLSD Docket 04/20/2026 Page 52 of 74

present direct damages demand in this complaint is limited to his own personal business-or-property injuries and to any additional direct personal losses proved through the same predicate sequence.

### A. Plaintiff Stratmann — Individual Injuries

Injury Category

Amount

Predicate Link

Evidence

1

Personal bank account garnishment (Chase — VIV enterprise-produced judgment)

$85,000+

PA-VIV series

Chase garnishment records

2

Personal credit destruction

TBD (expert)

Enterprise-wide

Credit reports pre/post enterprise

3

50

Case 0:26-cv-61150-PAB Document 1 Entered on FLSD Docket 04/20/2026 Page 53 of 74

Homestead threat (NFC foreclosure)

Homestead equity TBD

PA-MCA series

Property records; NFC docket

4

Personal liability exposure across 9 concurrent matters

Litigation costs TBD

Enterprise-wide

Docket records all 9 cases

## B. SYG Entity-Level Enterprise Injuries (Background / Preserved for Amendment)

Injury Category

Amount

Tier

Predicate Link

Evidence

1

Property seizure — collateral conversion

$1,166,000

T1

PA-LOC-02

FLPD #34-2512-209096

2

SK35 vessel conversion

$309,000

T1

PA-LOC-07

Sale records Dec 5, 2025

3

CMR enterprise-produced judgment

$6,524,783

T1

PA-CMR series

DE 299/300

4

SBA EIDL loan default (enterprise causation)

$1,915,000

T1

PA-MCA series; PA-LOC-01

SBA servicing records

5

Locality Bank 7(a) default

$934,539

T1

PA-LOC-01; PA-FED-04

Locality Bank records

6

Five Star SBA term default

$100,000

T1

PA-MCA series

Loan records

7

Rent overpayment (Ackel)

$21,449

T1

PA-LOC series

Payment records

8

Security deposit unreturned

$15,000

T1

PA-LOC series

Lease records

9

Tier 1 Subtotal

$10,985,771

T1

10

SHM duress settlement

$238,000

T2

PA-SHM-01

Settlement agreement

11

GL insurance cancellation (2x)

$150,000+

T2

PA-MCA series

Insurance records

54

12

Customer contract destruction (All Speed Fins, Quad Humphree)

$2,500,000+

T2

PA-SHM-02

Contract/correspondence records

13

MCA acceleration damages

$500,000+

T2

PA-MCA-01

Highland Hill/Sinclair/Nexus records

14

BofA account freeze — payroll/tax penalties

$200,000+

T2

PA-MCA-02

BofA/IRS/FL DOR records

15

Tier 2 Subtotal

55

$3,588,000+

T2

16

Seakeeper dealer revenue destruction

$5M-$15M

T3

PA-SKR-01

Dealer revenue model

17

Salty Marine patent value

$9,750,000

T3

PA-SKR series

Patent records

18

DARPA/Navy pipeline

$6,000,000

T3

PA-SKR series

Defense contract pipeline

Case 0:26-cv-61150-PAB Document 1 Entered on FLSD Docket 04/20/2026 Page 59 of 74

19

Going concern value destruction

$5M-$10M

T3

Enterprise-wide

Before/after business valuation

20

Tier 3 Subtotal

$25.75M-$40.75M

T3

21

SBA EIDL lien impairment (federal secured creditor injury — §1964(c) standing)

$1,915,000

FED

PA-FED-01, PA-FED-02, PA-FED-03

SBA loan records; UCC-1 filing; Nov 5 smoking-gun email; FLPD seizure records

22

Locality Bank 7(a) SBA-guaranteed lien impairment

Case 0:26-cv-61150-PAB   Document 1   Entered on FLSD Docket 04/20/2026   Page 60 of 74

$934,539

FED

PA-FED-04, PA-LOC-01

Locality Bank loan records; SBA guarantee documentation

23

Note: Rows 21-22 represent distinct legal injuries to federal program interests. SYG's entity-level damages (rows 4-5) are economic losses to SYG from default; rows 21-22 are impairment of the SBA's perfected security interest through enterprise-driven conversion of encumbered collateral. Not double-counted.

### C. Causation Chain

Each direct personal injury identified in Section V.A flows from a specific predicate sequence without dependence on a legally independent third-party decision. The VIV garnishment injury flows from PA-VIV-01 and the enterprise-produced judgment-enforcement chain. Plaintiff's personal credit, homestead exposure, and litigation-cost injuries flow from the PA-FED, PA-LOC, PA-MCA, PA-CMR, and PA-SCB series because those predicates impaired collateral, triggered defaults, accelerated enforcement, and forced Plaintiff to respond personally across multiple matters.

The CMR default-judgment injury is not pleaded merely as an adverse court outcome. It is pleaded as the direct consequence of the fraud-laden sequence

58

alleged in PA-CMR-01 and PA-CMR-02, combined with the enterprise's counsel-prevention method, which stripped SYG of the ability to defend and thereby drove enforcement pressure onto Plaintiff personally. Likewise, the Locality Bank and SBA-related injuries are not pleaded as mere downstream lending consequences; they are pleaded as the direct result of post-notice conversion, collateral concealment, and acceleration tactics that impaired secured assets and immediately increased collection pressure against Plaintiff.

The Seakeeper and SHM-related allegations are pleaded to show that the enterprise directly destroyed Plaintiff's own compensation stream, professional goodwill, and continuing business expectancy, not merely SYG's topline revenue. Accordingly, the predicate acts alleged here were both the but-for cause and the proximate cause of Plaintiff's personal business-or-property injuries.

## VI. COUNTS

COUNT I — RICO: CONDUCT OF ENTERPRISE THROUGH PATTERN OF RACKETEERING ACTIVITY

(18 U.S.C. § 1962(c)) — Against All Defendants

Plaintiff re-alleges and incorporates paragraphs 1 through 51 as if fully set forth herein.

59

At all relevant times, the association-in-fact enterprise described in Section II existed and operated as a continuing unit with a common purpose.

Each Defendant conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c), by committing the predicate acts set forth in Section IV.

The pattern of racketeering activity consisted of at least 32 predicate acts identified to date over a period of 47 months, demonstrating both relatedness (all acts share the common purpose of destroying SYG and extracting its assets) and continuity (both closed-ended and open-ended per H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 242 (1989)). Plaintiff reserves the right to identify additional predicate acts through discovery.

Each Defendant's participation in the enterprise satisfies the Reves v. Ernst & Young, 507 U.S. 170, 179 (1993) operation or management test:

Ivankovich: Directed Hub 1 litigation strategy, authorized filings, controlled CMR

Ackel: Directed Hub 2 physical operations, signed subordination, ordered seizure

Hunter: Executed void service, managed BlueWater, conducted extortion calls, facilitated asset conversion through In-Visions LLC

60

Case 0:26-cv-61150-PAB   Document 1   Entered on FLSD Docket 04/20/2026   Page 63 of 74

Burell: Provided the inflation instrument (fraudulent affidavit)

Brighton: Managed BlueWater operations, received SK35 sale proceeds

Panero: Received/possessed stolen assets via Ares Marine

Biggie: Conducted pre-seizure intelligence operations across hubs

Moore: Handled enterprise discovery weaponization communications

Flitman: Participated in enterprise information channeling tied to discovery and Seakeeper-adjacent intelligence transmission

Hand: Participated in compartmentalized enterprise coordination and intelligence routing

Akerman LLP: Served as legal coordination channel through triple concurrent representation — CMR creditors (Hub 1), SCB vessel arrest (connecting channel), and IFB International bankruptcy (DIP counsel) — all simultaneously targeting SYG or SYG-related interests. Prosecuted PA-NEW-01 (demand letter under conflict) and PA-NEW-02 (SCB complaint under conflict).

Klopp: Prosecuted SCB foreclosure and sent demand letter (PA-NEW-01) while actively concealing triple concurrent conflict; authored conflict denial letter (Jan 26, 2026) contradicted by concurrent docket records across three matters.

Yoss: Co-promoted SCB admiralty enforcement (PA-NEW-02) through triple-conflicted firm.

Case 0:26-cv-61150-PAB Document 1 Entered on FLSD Docket 04/20/2026 Page 64 of 74

CMR LLC: Litigation vehicle filing fraudulent damages claims (PA-CMR-01, PA-CMR-02)

BlueWater LLC: Physical seizure vehicle converting $1,166,000 in collateral (PA-LOC-02)

In-Visions LLC: Bridge entity facilitating asset relocation and concealment (PA-LOC-09)

National Liquidators LLC: Deployed for unauthorized asset location operations (PA-SCB-03)

Moore & Company, P.A.: Professional association channel through which enterprise discovery and intelligence handling functions were performed

Highland Hill / Sinclair / Nexus: Financing-lane actors in coordinated default acceleration and bank-freeze pressure (PA-MCA-01, PA-MCA-02)

As a direct and proximate result of Defendants' conduct, Plaintiff suffered direct personal injuries to his business and property as set forth in Section V.A, including an actual personal-bank garnishment exceeding $85,000, personal credit impairment, homestead exposure, personally incurred litigation burden, and other personal losses to be proven at trial. The broader SYG entity-level injury schedule is pleaded as enterprise background and preserved for later amendment or related relief, not as the present direct-damages demand in this pro se count.

Plaintiff is entitled to recover treble damages, reasonable attorney's fees, and costs of suit under 18 U.S.C. § 1964(c).

COUNT II — RICO CONSPIRACY

(18 U.S.C. § 1962(d)) — Against All Defendants

Plaintiff re-alleges and incorporates paragraphs 1 through 58 as if fully set forth herein.

Each Defendant knowingly agreed to the overall objective of the enterprise and agreed that an act of racketeering would be committed by a member of the conspiracy in furtherance of that objective. Salinas v. United States, 522 U.S. 52, 63-66 (1997). A defendant need not have personally committed two predicate acts — or indeed any predicate act — to be liable under § 1962(d); it is enough that the defendant "knew about and agreed to facilitate the scheme." Id. at 66.

The hub-and-spoke conspiracy structure is evidenced by:

(a) Hub 1 spoke agreements: Ivankovich directed Hub 1 actors (Burell, Moore, CMR) toward the shared objective of financial extraction through litigation fraud and creditor cascade. Each actor performed a role comprehensible only as part of a coordinated plan.

(b) Hub 2 spoke agreements: Ackel directed Hub 2 actors (Hunter, Brighton, Panero, BlueWater) toward the shared objective of physical asset seizure and conversion. The sequential chain — Biggie reconnaissance → Hunter void service

63

→ Ackel seizure → Brighton proceeds collection → Panero asset receipt —
evidences coordinated agreement.

(c) Cross-hub rim connections: The enterprise is not merely two independent spokes. The Akerman LLP dual-representation channel, the Ed Biggie intelligence relay, and the synchronized timing (January 31, 2025 Triple Coordination Event; February 12-13, 2026 National Liquidators/SCB sequence) connect the hubs into a unified conspiracy.

Each Defendant's agreement to the conspiracy is supported by:

Defendant

Evidence of Agreement

Ivankovich

Directed CMR litigation, controlled entity, authorized filings

Ackel

Signed subordination with intent to breach, orchestrated seizure

Hunter

Executed void service for own company, managed BlueWater, conducted extortion calls

Burell

Provided sworn false affidavit — requires coordination with Ivankovich

Brighton

Received proceeds from unauthorized SK35 sale — requires agreement with

Ackel

Panero

Received/possessed SK26 via Ares Marine — requires Hub 2 coordination

Biggie

4 reconnaissance visits spanning months — ongoing intelligence agreement

Moore

Handled discovery communications channeled through enterprise

Flitman

Participated in enterprise intelligence and communications channel functions

linked to Seakeeper and CMR tracks

Hand

Participated in post-arrest compartmentalized information-control and

routing functions within enterprise channels

Akerman LLP

Triple concurrent representation (CMR + SCB + IFB International) creating

information bridge — firm-level decision to maintain conflicted representation

across three enterprise-related matters; conflict denial letter issued three days

before FL Bar complaint

Klopp

65

Filed conflict denial contradicted by docket — affirmative concealment of triple conflict; continued prosecution of SCB and demand activities (PA-NEW-01, PA-NEW-02) after awareness of conflict

Yoss

Co-promoted SCB enforcement (PA-NEW-02) through triple-conflicted firm with knowledge of concurrent CMR representation

CMR LLC

Entity vehicle directed by Ivankovich for Hub 1 objectives

BlueWater LLC

Entity vehicle directed by Ackel for Hub 2 objectives

In-Visions LLC

Bridge entity facilitating cross-hub asset operations

National Liquidators LLC

Deployed for unauthorized operations — requires commissioning agreement

Moore & Company, P.A.

Institutional channel for Moore/Flitman litigation-adjacent communications and intelligence handling

Highland Hill / Sinclair / Nexus

Coordinated MCA-default and bank-freeze pressure lane aligned with enterprise timing and extraction objective

66

COUNT III — CIVIL THEFT

(FL § 772.11) — Against Ackel, Hunter, Brighton, Panero, BlueWater Reel Estate LLC

Plaintiff re-alleges and incorporates paragraphs 1 through 62 as if fully set forth herein.

Plaintiff asserts this count only to the extent the alleged theft and conversion directly injured him individually, including by impairing collateral tied to obligations enforced against him personally, increasing personal collection pressure, and causing direct out-of-pocket and enforcement-related losses. To the extent any converted property belonged solely to SYG, those entity-level losses are preserved for amendment, substitution, or counsel-led pursuit and are not pleaded here as a standalone individual recovery theory.

Defendants Ackel, Hunter, Brighton, and Panero, acting through BlueWater Reel Estate LLC, committed theft of $1,166,000 in SYG collateral as defined by FL § 812.014.

On December 9, 2025, a court entered a felony finding establishing probable cause for First Degree Grand Theft under FL § 812.014(2).

On December 5, 2025, vessel SK35 was sold for $309,000 without authorization and in violation of existing SBA and Locality Bank security interests.

67

The jurisdictional prerequisites of FL § 772.11, including the statutory demand letter, have been satisfied or are excused by the ongoing criminal proceedings and the defendants' demonstrated intent to conceal and dispose of assets.

Plaintiff seeks under this count only those damages directly suffered by him individually as a result of the theft and conversion sequence, in an amount to be proven at trial, together with any statutory relief available on that direct personal-injury theory.

COUNT IV — FRAUD

Against Ivankovich, Ackel, Burell, CMR

Plaintiff re-alleges and incorporates paragraphs 1 through 68 as if fully set forth herein.

Subordination Fraud (Ackel): Ackel signed the subordination agreement on May 30, 2024 with specific intent to later breach it by seizing the exact collateral he subordinated. The smoking gun confirmation email establishes knowledge and intent. Plaintiff relied on Ackel's commitment to subordination when continuing to operate from the BlueWater location.

Damages Fraud (Ivankovich, Burell): Ivankovich directed Burell to submit a sworn affidavit containing a $758,000+ proven overstatement of damages. This Court relied on the affidavit in calculating the $6,524,783.18 default judgment. The

68

fraud produced a judgment that would not have been entered in that amount but for the false affidavit, and that inflated judgment was then used to intensify enforcement pressure, defense burden, and collection exposure against Plaintiff personally.

COUNT V — TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

Against Ivankovich, Ackel, Hunter, SHM LMC, Blackstone Group

Plaintiff re-alleges and incorporates paragraphs 1 through 71 as if fully set forth herein.

Plaintiff maintained valid business relationships with Seakeeper (dealer agreement — $72.5M value), SBA (EIDL loan), marine customers (All Speed Fins, Quad Humphree), and insurance carriers.

Defendants had knowledge of those relationships.

Defendants intentionally and unjustifiably interfered through: dealer termination (Seakeeper), workspace lockout (SHM), payment refusal then default acceleration (MCA), and collateral seizure (Ackel/BlueWater).

As a direct result, Plaintiff lost his personal compensation stream, professional goodwill, business expectancy, insurance-backed operating continuity, and other direct personal economic interests tied to those relationships. Entity-level

contract and enterprise-value losses are preserved as background and for later amendment to the extent they exceed Plaintiff's current individual recovery theory.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

### A. Monetary Relief

Enter judgment in Plaintiff's favor on Count I (RICO § 1962(c)) for treble damages under 18 U.S.C. § 1964(c) for Plaintiff's direct personal business-or-property injuries, including the personal-bank garnishment already suffered and additional direct personal losses proved at trial;

Enter judgment on Count II (RICO Conspiracy § 1962(d)) jointly and severally against all Defendants;

Enter judgment on Count III (Civil Theft FL § 772.11) for those direct personal damages, statutory multiples, and related relief that Plaintiff proves were caused by the theft and conversion sequence as applied to him individually;

Enter judgment on Count IV (Fraud) for compensatory damages;

Enter judgment on Count V (Tortious Interference) for compensatory damages including Plaintiff's lost personal compensation, business expectancy, goodwill, and other direct personal economic harm;

70

Award reasonable attorney's fees under 18 U.S.C. § 1964(c) and FL § 772.11;

Award pre-judgment and post-judgment interest;

Award costs of suit.

## B. Equitable Relief

Enter a constructive trust over all SYG property and assets currently held by or under the control of any Defendant;

Order an accounting of all SYG assets seized, sold, transferred, or concealed by Defendants since May 30, 2024;

Enter a permanent injunction prohibiting Defendants from further disposing of, concealing, or encumbering any SYG property or assets;

Order disgorgement of all profits derived from the enterprise's racketeering activity;

## C. Ancillary Relief

Grant such other and further relief as this Court deems just and proper.

## VIII. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

VERIFICATION

71

I, Charles Jacob Stratmann, pursuant to 28 U.S.C. § 1746, declare under

penalty of perjury that the foregoing is true and correct to the best of my

knowledge, information, and belief.

Executed on: April 16, 2026

Fort Lauderdale, Florida

**CHARLES JACOB STRATMANN**
Pro Se Plaintiff
545 NE 17th Avenue
Fort Lauderdale, FL 33301

Telephone: (954) 873-8546
Email: \<jake@starboardyacht.com>

72

ss Inc.
ege Ave., Suite 301
e, FL 32301

UNITED STATES
OF AMERICA
FOREVER/USA

UNITED STATES
OF AMERICA
FOREVER/USA

UNITED STATES
OF AMERICA
FOREVER/USA

UNITED STATES
OF AMERICA
FOREVER/USA

UNITED STATES
OF AMERICA
FOREVER/USA

UNITED STATES
OF AMERICA
FOREVER/USA

IAX FL 33099 AFSM1
FRI JUL 10 2025

District Court of Southern Florida
Fort Lauderdale Division
299 East Broward Boulevard #108
Fort Lauderdale, FL 33301

ZenBusiness Inc.
336 E College Ave., Suite 301
Tallahassee, FL 32301

UNITED STATES OF AMERICA FOREVER/USA
UNITED STATES OF AMERICA FOREVER/USA
UNITED STATES OF AMERICA FOREVER/USA
UNITED STATES OF AMERICA FOREVER/USA
UNITED STATES OF AME FOREVE

TAX FL 32099 AFSM1
FRI JUL 10 2026

District Court of Southern Florida
Fort Lauderdale Division
299 East Broward Boulevard #108
Fort Lauderdale, FL 33301