Charles Jacob Stratmann
Pro Se Plaintiff
545 NE 17th Avenue
Fort Lauderdale, FL 33301
Telephone: (954) 873-8546
Email: jake@starboardyacht.com

FILED BY ____ D.C.
NOV - 9 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 0:26-cv-61150-PAB

CHARLES JACOB STRATMANN,

Plaintiff,

v.

STEVEN IVANKOVICH; TOM ACKEL; DAVID HUNTER; NEIL BURELL;

SEAN BRIGHTON; RICK PINEIRO; ED BIGGIE; MICHAEL MOORE;

CAYCIE FLITMAN; OLAFUR "OLI" HAND; CONTESSA MARINE RESEARCH LLC;

BLUEWATER REEL ESTATE LLC; IN-VISIONS LLC; NATIONAL LIQUIDATORS LLC;

SHM LMC, LLC d/b/a LAUDERDALE MARINE CENTER; BLACKSTONE GROUP INC.;

MOORE & COMPANY, P.A.; HIGHLAND HILL CAPITAL LLC;

SINCLAIR FUNDING GROUP INC.; NEXUS CAPITAL FUNDING LLC;

ROBERT ALLEN LAW; AKERMAN LLP; AMANDA KLOPP; JENNA M. YOSS;

JOHN DOES 1-10,

Defendants.

# VERIFIED FIRST AMENDED COMPLAINT FOR RICO VIOLATIONS, CIVIL THEFT, FRAUD, AND RELATED CLAIMS

Plaintiff Charles Jacob Stratmann ("stratmann" or "Plaintifp'), appearing pro se in his individual capacity, files this Verified Complaint against the above-named

Defendants and states:

1. PARTIES AND JURISDICTION

A . Plaintiff

Plaintiff Charles Jacob Stratmann is a natural person and citizen of the State of Florida, residing at 545 NE 17th Avenue, Fort Lauderdale, Florida 33301.

---

Stratmann is the founder, CEO, and M anaging M ember of Starboard Yacht Group LLC ("SYG"), a Florida limited liability company engaged in marine engineering, vessel service, and dealer operations since 2008.

Stratmann is also the M anaging Member of Starboard Group Holdings LLC ("SGH"), the parent entity of SYG.

This complaint is filed in Plaintiffs individual capacity pursuant to 28 U.S.C. §1654 and Rowland v. California Men's Colony, 506 U.S. 194, 201-02 (1993). Entity claims of SYG LLC and SGH LLC are preserved for amendment upon retention of counsel. Additional plaintiff classes

including family

m embers with hom estead property interests, employees with accrued wage claim s, and federal secured creditors - are identified for potential joinder or amendment upon completion of standing analysis.

1 . To avoid standing confusion, Plaintiff expressly separates (i) business-to-business contractual dealings in which SYG was the operating counterparty from

(ii) Plaintiffs personal injury lane. Allegations regarding SYG vendor, dealer, and custom er relationships are pled as enterprise context, motive, pattel'n, and causation evidence', they are not pled as pro se prosecution of SYG'S entity-owned claim s. Plaintiffs individual standing in this Track 2 posm re is grounded in direct personal injury to business or property, including personal guaranty exposure,

3

---

personal liability pressure, personal reputational and eam ing-capacity harm , and out-of-pocket defense burden caused by the enterprise's conduct.1

4a. The United States, through the Small Business Administration ("SBA"), holds a perfected tirst-position UCC-I security interest in all assets of Starboard Y acht Group LLC by virtue of EIDL Loan N o. 561 1798202 in the original amount of $1,915,000.2 The SBA qualities as a "person" under 18 U.S.C. §1964(c) and has suffered direct injury to its business (federal lending program operations) and property (perfected lien impairment) as a proximate result of the enteprise's post-notice conversion conduct. This injury is direct - the SBA is the primary secured creditor whose tirst-position lien is impaired by enterprise actors w ho had actual knowledge of the perfected security interest - and is not derivative of SYG'S injury. Standing analysis under Holmes v. Securities lnvestor Protection Cop ., 503

1 Individual-capacity standing only; SYG/SGH entity claims preserved for amendment upon retention of counsel (L.R. 11.1; Rowland v. Cal. Men's Colony, 506 U.S. 194 (1993)).

2 SBA EIDL Loan No. 5611798202, original amount $1,915,000, secured by perfected UCC-1 all-assets filing (VERIFIED — loan and lien records). SBA is a "person" under 18 U.S.C. §1964(c); standing analysis per Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258 (1992), and Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006).

U.S. 258 (1992) and Anza v. ldeal Steel Supply Corp., 547 U.S. 451 (2006) is satistied because no intervening party stands between the enterprise's conduct and the SBA'S lien impairment. Plaintiff preserves SBA'S standing for potentialjoinder, intervention, or amendment.

4b. This action also arises from the enterprise's use of trust-building commercial engagement as the opening phase of a larger extraction schem e. In M ay 2022, after a Seakeeper-related crisis involving Ivankovich's Cobia vessel, Plaintiff intervened, documented the defect condition, positioned the w arranty and

---

vendor-liability lane, and comm unicated that the unit would be resolved quickly and at no cost to Ivankovich. The resulting communications and subsequent litigation posture are part of the record summarized in Plaintiffs financial pillar materials and related exhibit packets.3

4c. Within days of that resolution effort, Plaintiff introduced Ivankovich to Seakeeper refit sales representative Chase Russell for follow -on vessel work associated with M /V Octopussy. The relationship that followed gave Ivankovich access to Plaintiffs operating model, dealer channels, project management system s, and the financial strength SYG had built before the enterprise attack.4

4d. Plaintiff alleges that this opening sequence is not a separate predicate act and is not pled as an independent count for relief. Rather, it is the origin narrative

3 Cobia casualty response and M/V Octopussy introduction are pled as enterprise origin narrative, pattern, and motive evidence only — not as an independent count for relief (see ¶4d-4e).

4 ALLEGED — relationship-access framing; to be supported by witness declaration and correspondence exhibits.

that explains why Plaintiff became the enterprise's target, how access and dependency were created, and why later non-payment, discovery weaponization, sanctions pressure, and coordinated revenue destruction were effective.

4e. A separate Seakeeper/M adison action addresses the distinct dealership-termination damages track arising from later events. That matter remains separate. This complaint references the Cobia-to-octopussy origin sequence only as pattern and motive evidence for the enterprise conduct alleged here.

B. Defendants

Tier 1

Individual Enterprise Actors

---

Defendant Steven Ivankovich (Hub 1 principal) is a living natural person and citizen of the State of Illinois. He is the son of Decedent Dr. Anthony D. Ivankovich, whose formal probate administration was opened on September 3, 2026 in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Probate Division, styled In re: Estate of Anthony D. Ivankovich, Case No. 2026-003865-CP-02. All references in the original Complaint to "a/k/a Dr. Anthony Ivankovich" are withdrawn; Defendant Steven Ivankovich is sued solely in his individual capacity for his own acts and omissions. Ivankovich directed and managed the enterprise's federal litigation fraud, creditor cascade, and discovery weaponization operations from at least May 2022 through the present. Cook County Receiver Neal Levin was appointed over Ivankovich's entity CMR in May 2025. As reflected in transcript testimony, Ivankovich admitted he knew the location of SK35 because he hired a private investigator, corroborating intentional asset-tracing conduct through enterprise intermediaries. In the February 23, 2026 bench trial transcript, Ivankovich further testified that Seakeeper reported being threatened with litigation if it spoke directly, and that "ultimately, through counsel and ongoing conversation" he was able to speak to vendors directly and obtain the information sought (Tr. pp. 86, 88-89).

and ongoing conversation" he was able to speak to vendors directly and obtain the information sought (Tr. pp. 86, 88-89).

Defendant Tom Ackel (Hub 2 principal) is a natural person and citizen of the State of Florida residing in Broward County. Ackel directed and managed the enterprise's physical seizure, conversion, and extortion operations, and signed a subordination agreem ent on May 30, 2024 that he subsequently breached on November 10-13, 2025.

D efendant David Hunter is a natural person and citizen of the State of Florida. Hunter served as the LLC M anager of Bluewater Reel Estate LLC, executed void service of process on his own company's behalf in the eviction

---

action, and m aintained connections to both enterprise hubs through ln-v isions LLC.

D efendant N eil Burell is a natural person whose address is known through the CMR docket. Burell provided a sworn aftidavit containing a $758,000+ proven overstatement of damages that was submitted to this Court in support of CMR'S default judgment application. On information and belief, Burell was coerced to execute the final affidavit version after preparing a materially different preliminary damages report (D-48, filed as DE 314-5 in CMR'S proposed findings package), and the final sworn submission removed and/or recharacterized material components reflected in the preliminary work product. D-48's preliminary findings report states: money in to SYG of $4,504,641.18., third-party vendor payments of $1,491,348.48 (with SYG audit-tile variance to $1,590,770.78); and Exhibit A

amount-due calculations of $2,033,483.48 with internal discrepancies noted by the same report. Plaintiff further alleges a suppression-to-iniation chain in which earlier ZOM M A/BeA M artin audit work identifying materially lower substantiated amounts was displaced by later sw om figures; the tinal DE 314-5-to-DE 288-1 quantified inflation delta is designated for Rule 26(e) supplementation.

D efendant Sean Brighton is a natural person and citizen of the State of Florida residing in Broward County. Brighton served as co-manager of Bluewater

---

Reel Estate LLC and received proceeds from the unauthorized sale of 51135 gyroscopic m arine stabilizer equipm ent.

Defendant Rick Pineiro (misidentified in the original caption as "Rick Panero") is a natural person.5 Pineiro received and possessed

SK26 gyroscopic m arine stabilizer equipm ent through Ares M arine without court

I

authorization and in furtherance of the enterprise's asset conversion operations.

Defendant Ed Biggie is a natural person and citizen of the State of Florida. Biggie served as the intelligence channel between Hub 1 (CM W Ivankovich) and Hub 2 (TBW /Ackel), conducting four documented pre-seizure reconnaissance visits to SYG'S operating facility between August and O ctober 2025.

Defendant Michael Moore (Moore & Co) is a natural person. Moore participated in the enterprise's discovery weaponization by handling combined

5 Caption correction — the original complaint (DE 1) misidentified defendant Rick Pineiro as "Rick Panero"; corrected per Sunbiz/Ares Marine records and facility records (VERIFIED). Entity name conformed to Ares Marine Inc.

communications (SYG006686-SYG007040) that were channeled through the enterprise, was introduced in enterprise communications as "our team 's attonzey," and provided legal-strategy m essaging to Plaintiff including direction that it was "bad business" to include M atthew Valcourt. On information and belief, Moore also participated in, directed, or ratified the improper use, redirection, or strategic deployment of approximately $400,000 in bond-related funds or bond leverage in connected litigation pressure lanes, in a m anner inconsistent with the bond's proper protective purpose and used to intensify coercive settlement and enforcement pressure against Plaintiff and SYG.

---

12a. D efendant Caycie Flitman is a natural person and attorney associated with Moore & Company, P.A. Flitman participated in the enterprise's information channel operations by transmitting and coordinating litigation-adjacent intelligence used in the enterprise's pressure cam paign against SYG .

12b. Defendant Olafur "O1i" Hand is a nam ral person who operated as an enterprise coordination actor in Seakeeper/cM R-adjacent channels. On information and belief, Hand assum ed operational intelligence-routing ftm ctions after SYG'S vessel arrest actions and participated in compartmentalized information control directed by Hub 1 leadership.

Tier 2 - Entem rise Entity Defendants

Defendant Contessa M arine Research LLC ("CMR") is a Florida limited liability company currently tmder Cook County Receiver Neal Levin. CMR served as the prim ary litigation vehicle for Hub 1's federal court fraud operations,

obtaining a $6,524,783.18 default judgment against SYG through enterprise conduct.

Defendant Bluewater Reel Estate LLC is a Florida limited liability company. Bluewater served as the operational vehicle for H ub 2's eviction, seizure, and conversion operations against SYG 'S collateral and operating base.

Defendant ln-visions LLC is a Florida limited liability company controlled by Defendant Hunter. ln-v isions served as the organizational bridge between Hub

---

2 (TBW /Ackel operations) and Seakeeper/sllM enterprise activities, and facilitated the conversion and relocation of seized SYG property through Hunter's dual role as ln-v isions principal and Bluewater LLC M anager.

Defendant N ational Liquidators LLC is a Florida limited liability company deployed to conduct unauthorized vessel Iocation and asset tracing operations against SYG without court order, including sending agents to SY G'S known m arina locations on February 12, 2026 to photograph and document vessel positions in furtherance of the enterprise's asset search and seizure operations.

16a. Defendant SH M LMC, LLC, d/b/a Lauderdale M arine Center, is a limited liability company operating a m arine facility at 2301 SE 17th Street, Fort Lauderdale, Florida 33316. SHM LMC served as the enterprise's facility-control w eapon by executing a workspace lockout of SYG dtlring the critical CMR discovery period (December 2024 - January 2025), creating duress conditions that coerced Plaintiff into a $238,000 settlement on January 31, 2025 - the same day as the Triple Coordination Event. SHM LMC further destroyed SYG custom er

contracts worth $2.5M+ (A11 Speed Fins, Quad Humpltree) by denying access to vessels and work-in-progress. On information and belief, SHM LMC'S pressure lane also overlaps with retaliatory escalation after Plaintiffs reporting activity, the misappropriatioimisallocation of approximately $455,000 of SYG funds, and uncollected sales-tax exposure exceeding $60,000 tied to resale-certificate misuse.

---

SHM LMC'S eviction-pressure lane is further documented in Broward County Case No. COCE-24-017512, including the initial eviction complaint (Filing #194561390, Mar. 21, 2024), summons/appearance/counterclaim ûlings (Filing #194597881 and Filing #195238536), and later landlord motion practice with a joint stipulated possession filing (Filing #196307292 and Filing #199371645). SHM LMC was represented by Akerman LLP in the related CMR proceedings, reinforcing the concurrent-conflict channel.

16b. D efendant Blackstone Group Inc. is a D elaware corporation with principal oftk es in New York, N ew York. Blackstone is the parent entity of Safe H arbor M arinas, which owns and operates SHM LMC. Blackstone acquired Safe Harbor M arinas for $5.7 billion, with the acquisition announced February 1, 2025

\-

one day after the coerced $238K settlement - and closing approxim ately Febm ary 24, 2025. Blackstone Senior M anaging Director Frank Cohen serves on the Northwestern U niversity Board of Trustees alongside Larry Gies, CEO of M adison lndustries (Seakeeper's parent), establishing the coordination nexus between the SllM /Blackstone and Seakeeper/M adison entem rise tracks.

Blackstone's cop orate presence during the lockout period was leveraged to am plify the duress conditions im posed on Plaintiff.

16c. Defendant Moore & Company, P.A. is a professional association through which Defendant Michael Moore and associated personnel, including

---

Flitman, conducted discovery and communications functions relevant to the enterprise's litigation and intelligence channels.

16d. Defendant Highland H ill Capital LLC is, on information and belief, a tinancing entity that participated in the coordinated M CA pressure lane, including refusal of payment and m anufactured default conditions that aligned with enterprise timing.

16e. Defendant Sinclair Funding Group Inc. is, on information and belief, a financing entity in the M CA acceleration lane that participated in coordinated collection pressure aligned with enteprise objectives.

16f. Defendant Nexus Capital Funding LLC is, on information and belief, a financing entity in the M CA acceleration lane that participated in coordinated default escalation and pressure tactics against SYG .

Tier 3 - Legal lnterm edialy Defendants

D efendant Akerman LLP is a Florida limited liability partnership with ofices at 20l E. Las Olas Blvd., Fort Lauderdale, FL 33301. Akerm an served as the enterprise's principal legal coordination channel through a five-layer concurrent conflict structure that, in combination, constitutes the entem rise's m ost pervasive single-actor conflict pattem: (1) Asset Protection Retention: On information and

belief, Akerm an was retained to protect and insulate Ivankovich-controlled assets

-

including CMR-related interests - a representation in which Akerm an's duty of

---

loyalty ran directly to Ivankovich and his controlled entities. (2) Ivankovich-V ersus-Ivankovich Inter-party Proceedings: Sim ultaneously and in direct conflict with that asset-protection m andate, Akerman represented parties in internal Ivankovich/cM R inter-party proceedings; those proceedings are currently under the control of Cook County court-appointed Receiver Neal Levin (Case No. 21-D-9220), appointed May 2025 following enterprise abuse of court process - circumstances to which Akerman's continued adverse conduct contlibuted. (3) SCB Parallel Enforcement Against CMR/Anthony: In the separate Seacoast enforcement action against CMR and Anthony Ivankovich, Seacoast proceeded through non-Akerm an counsel while CMR and Anthony appeared without defense counsel and default was entered. That no-defense collapse is consistent with the enterprise's counsel-deprivation and default-cascade methods and separates that lane from Akerman's direct role in the SCB-V.-SYG foreclosure lane. (4) SCB v. SYG Admiralty Foreclosure: Akerman currently represents Seacoast National Bank in its admiralty vessel foreclosure against SYG , filed by complaint on February 12, 2026 (DE 1) and prosecuted through vessel-arrest filings on February 13, 2026 (DE 6) by Defendants Klopp and Yoss - the enterprise's primary connecting enforcement channel linking Hub 1's judgment apparatus to Hub 2's physical-seizure operations, filed exactly ten days before the CMR trial date. (5)

SHM LMC v. SYG Retaliatory Eviction and Lockout: Akerm an represented SHM

LMC in its retaliatory eviction and lockout action against SYG in Broward County Case No. C0CE-24-017512 (initial complaint Filing #194561390, M ar. 21, 2024), culminating in ajoint stipulated possession settlement (Filing #199371645) retlecting coerced resolution under enterprise-coordinated pressure follow ing Plaintiffs reporting activity. The cumulative effect of representations (1) through (5) is a single law 51-11,1 simultaneously (a) entrusted to protect Ivankovich assets, (b) representing parties within Ivankovich's entity complex before that complex was placed tmder court-appointed receiver control, (c) operating alongside a parallel SCB enforcement lane that drove CMR/Anthony into uncounseled default, (d) prosecuting SCB'S vessel seizure against SYG, and (e) prosecuting SHM LMC'S retaliatory lockout of SYG'S operating base - an enterprise coordination function operating under the appearance of independent legal representation. Each engagement pairing violates FL Bar Rule 4-1.7(a)(l) or (a)(2); in aggregate, the tive concurrent representations constitm e the enterprise's legal coordination infrastructure. A Florida Bar complaint documenting these conflicts (ACAP No. 26-7791) was tiled January 29, 2026.

D efendant Am anda Klopp is a natural person and attorney licensed in the State of Florida, associated with Akerm an LLP. Klopp served as lead counsel on the SCB admiralty foreclosure against SYG while personally aware of - and, on information and belief, a participant in m anaging - a11 five concurrent adverse

representation conflicts described in the Akerm an LLP paragraph above. Klopp authored the conflict denial letter dated January 26, 2026 - transm itted through interstate communications and directly responsive to Plaintiffs fonnal conflict-of-interest challenge - that affirm atively denied the existence of the concurrent representations. That denial was contradicted by contemporaneous docket records then active across the CMR, SCB, lFB lnternational bankruptcy, and COCE-24-017512 proceedings. The letter was issued three days before Plaintiff filed the Florida Bar complaint (January 29, 2026), retlecting enterprise awareness of and preemptive cover-up of the conflict structure. Klopp's transmission of a materially false conflict denial through interstate wire communications, in furtherance of the enterprise's coordinated legal channel, constitutes an independent predicate act in the pattern of racketeering activity (PA-SCB-OZ; l 8 U.S.C. §1343). On information and belief, Klopp further coordinated N ational Liquidators direction in support of vessel-tracing activity without valid federal w arrant process, constituting an additional overt act in furtherance of the conspiracy.

Defendant Jenna M . Yoss is a natural person and attorney licensed in the State of Florida, associated with Akennan LLP. Yoss selved as co-counsel alongside D efendant Klopp in the SCB admiralty foreclosure against SYG , participating in the February l2, 2026 complaint tiling (DE 1) and February l3, 2026 arrest-phase filings (DE 6) in the S.D. Fla. proceeding while all five



---

concurrent adverse representations described in the Akerm an LLP paragraph above

were operative. Y oss's active participation in filing and prosecuting the SCB vessel arrest - an enterprise-coordinated enforcement action timed to intersect with the CMR trial - constitutes sustained overt acts in furtherance of the enterprise's legal coordination chalm el and the enterprise's overall pattern of racketeering activity.

D efendant Robert Allen Law ("RAL") is a Florida law firm with offices at 1441 Brickell Avenue, Suite 1400, Miami, Florida 33131 (ballen@robertallenlaw.com). RAL is pled as a Tier 3 legal-intermediary defendant on the following record: (1) Registered-Agent Role: RAL is the registered agent for Contessa M arine, LLC on the Florida Sunbiz record (Document# L16000087982, FEI 81-2604020) - the enterprise entity whose litigation apparatus is central to Hub 1.[6] (2) Dual-Representation Hub: RAL is documented in the enterprise-actor registry as a controlled-actor legal hub with an alleged pattern of conflict-of-interest, legal-malpractice, and fraudulent-misrepresentation conduct, including conflict-check irregularities and trust-account wire-instruction activity (ALLEGED - registry record; to be pled at element level upon production of the underlying engagement and wire records). (3) Origination Channel: the RAL-SYG relationship is reported to have originated through an unsolicited inbound capital/venture-broker solicitor contact, with no executed engagement letter located (REPORTED). RAL's registered-agency and solicitation roles are pled as overt acts in furtherance of the enterprise's legal coordination channel; any claim that RAL's mere agency status creates liability is

---

6 Florida Sunbiz record — Contessa Marine, LLC registered agent: Robert Allen Law, 1441 Brickell Ave Ste 1400, Miami, FL 33131; Document# L16000087982, FEI 81-2604020 (VERIFIED — Sunbiz pin; enterprise-actor registry id=2; eos_issues 62243 resolved).

disclaimed - liability, if any, rests on RAL's own alleged misrepresentations, conflict management, and trust-account handling.

Tier 4 - John Doe Defendants

Defendants John Does 1-10 are individuals and/or entities whose identities are presently unknown but who participated in or facilitated the enterprise's pattern of racketeering activity, including additional enterprise coordinators, financial conduits, surveillance operatives, and control persons not yet fully identified by legal nam e and selvice address. Their identities will be ascertained through discovery. Plaintiff reserves the right to am end this complaint to nam e such individuals and entities upon identification. This reservation expressly includes potential family-asset conduit actors identified in the record, including Dr. Olga Ivankovich, if discovery and docket-certified transfer evidence confirm s personal participation in post-judgment asset routing or concealment.

C. Jurisdiction

This Court has subject matterjurisdiction under 28 U.S.C. §1331 (federal question) and 18 U.S.C. §1964 (RICO civil remedies).

16

---

This Court has supplemental jurisdiction over state law claims under 28 U.S.C. §1367(a), as the state claims arise from the same nucleus of operative facts as the federal RICO claim s.

V enue is proper in the Southern District of Florida, Fort Lauderdale Division, pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the

events giving rise to the claim s occurred in Broward County, Florida. The entem rise's physical operations asset seizure, eviction, property conversion, discovery production - occurred in this district.

ln personam jurisdiction exists over each Defendant. The individual Florida resident defendants (Ackel, Hunter, Brighton, Biggie) reside and conduct enteprise activity in this district. Non-resident defendants (Ivankovich, Burell, Moore, Flitman, Hand) directed enterprise conduct into this district through wire and m ail transmissions, court filings, and coordinated actions targeting a Florida victim. Entity defendants (CMR, Bluewater, ln-visions, National Liquidators, SHM LMC, Moore & Company, Highland Hill, Sinclair, Nexus) are organized in, conduct business in, and/or directed collection and litigation conduct into Florida. Blackstone Group Inc. is subject to jurisdiction under Florida's long-arm statute, Fla. Stat. §48.193(1)(a)(1), having operated, conducted, engaged in, or canied on a business venture in this state through its subsidiary SH M LMC. Akerm an LLP is headquartered in this district.

---

## II. TH E ENTERPRISE

The enterprise is defined as the method, system , and coordinated operating structure through which the defendants acted - distinct from the defendants them selves.

### A. Enterprise Definition

The R-ICO enterprise is an association-in-fact within the meaning of 18

U.S.C. §196144), operating as a coordinated system of financial extraction, physical asset seizure, litigation m anipulation, and victim resource destruction. The enterprise operates through a dual-hub command structure with shared intelligence channels, legal coordination intermediaries, and synchronized timing mechanisms. The enterprise is an ongoing organizational system - separate and distinct from the defendants w ho conduct its affairs.

The enterprise's comm on purpose is the system atic extraction and conversion of Starboard Yacht Group's assets, revenue stream s, intellectual property, business relationships, and operating capacity through coordinated multi-vector attack.

B. Enterprise Operating M ethods

The enterplise em ploys the follow ing recuning methods to accom plish its Com m on Pu1TOSe'.

18

---

(a) Litigation Fraud M ethod: Filing intlated or fabricated damage claims in federal court; subm itting sworn aftidavits containing proven financial overstatements; m anipulating discovery processes to sim ultaneously extract victim intelligence and conceal enterprise financial records; obtaining default judgments when the enterprise's own conduct prevents the victim from retaining counsel.

(b) Creditor Cascade M ethod: Coordinating the simultaneous acceleration of multiple creditor obligations on a single target date, creating compounding financial pressure designed to collapse the victim 's ability to service any individual

obligation. On January 31, 2025, three independently devastating enterprise actions were executed on the same day: Seakeeper dealer term ination, SHM duress settlement, and CMR discovely deadline - the Tliple Coordination Event.

(c) Physical Seizure and Conversion M ethod; Signing binding agreements (subordination, lease) to establish trust and access, then breaching those agreem ents to seize the exact assets protected by them . Deploying enterprise actors (Hunter for service of process, Biggie for pre-seizure intelligence, Brighton for proceeds collection, Pineiro for asset receipt) in a sequential chain.

(d) Counsel Prevention M ethod: Draining the victim's financial resources through coordinated multi-front litigation, creditor acceleration, and asset seizure, rendering the victim unable to retain counsel in any of the pending matters. Once victim is unrepresented, exploiting the 28 U.S.C. §1654 LLC representation



---

requirement to obtain default judgments against entity defendants and to strike entity filings.

(e) Legal Coordination Channel M ethod: Using dual representation by a single law fil'm (Akerman LLP) across multiple enterprise actions to facilitate information sharing, timing coordination, and synchronized filing of new actions against common targets.

(9 lntelligence Gathering M ethod: Deploying intermediary actors (Biggie 4 documented visits; Flitman/Leatherwood - discovery transmissions to Seakeeper) to collect target intelligence, map assets, and relay operational

information between the enterprise's hubs. On information and belietl this same relay channel also supported m ail-fraud and m ail-claim s execution lanes culm inating in the Fourth 1C3 reporting event.

(g) Undocumented Transaction Method: Conducting enterprise operations through oral agreem ents, undocumented arrangem ents, and handshake deals - including Ackel's initial occupancy term s, Hunter's LLC m anagem ent role, Biggie's reconnaissance assignments, and Brighton's proceeds-sharing arrangem ent

-

to evade paper trails and frustrate discovely. The deliberate absence of written agreem ents across multiple enterprise relationships is itself evidence of coordinated concealm ent.

C. Enterprise O rganizational Structure

---

The enterprise operates through two comm and hubs connected by shared channels'.

Hub 1 - Federal Litigation and Creditor Cascade (Ivankovich)

Hub 1 is directed by D efendant Ivankovich and operates prim arily through federal litigation to obtain fraudulentjudgments and orchestrate creditor cascades. Hub 1 actors include Ivankovich, Burell (damages affiant), Moore (discovery handler), Flitman (infonnation channel actor), Hand (coordination actor), Moore & Company, P.A. (professional association channel), and CMR LLC (litigation vehicle). Hub 1's methods include litigation fraud, discovery weaponization, creditor cascade orchestration, and receiver circumvention.

Hub 2 - Physical Seizure and Conversipn (Ackel)

H ub 2 is directed by Defendant Ackel and operates prim arily tluough physical seizure, conversion, and extortion of SYG'S assets and operating base. Hub 2 actors include Ackel, Hunter (LLC manager/void service executor), Brighton (co-manager/proceeds receiver), Pineiro (asset receiver), and Bluewater Reel Estate LLC (operational vehicle). Hub 2's methods include subordination breach, $ 1.166M property conversion, void eviction, and extortionate storage demands.

Connecting Channels

21

---

The two hubs are connected through shared intelligence, legal intermediaries, and synchronized timing'.

(a) Akerman LLP Channel: Simultaneous adverse representation in CMR (Hub 1), SCB (connecting enforcement), and 1FB lntemational bankruptcy (DIP counsel) - creating a three-way legal coordination pipeline between enterprise actions targeting a comm on victim . The triple conflict was operative concurrently: Akerman represented CMR creditors seeking the $6.5M judgment, prosecuted the SCB vessel arrest against SY G, and served as D1P counsel in the IFB lnternational bankruptcy involving overlapping Ivankovich-controlled entities - all sim ultaneously, a1l against SYG or SYG -related interests. The Akerm an conPict denial letter of January 26, 2026 was issued three days before the Florida Bar complaint (Janualy 29, 2026) and tlzree days after lFB lntemational events bearing

on the concurrent representation. G ary Goldstein - the only member of Ivankovich's ilm er circle who had been excluded from SCB knowledge - was t'urned as a cooperating FB1 witness, further dem onstrating the enterprise's need to insulate the SCB channel from potential exposure.

(b) Ed Biggie lntelligence Channel: Four documented pre-seizure reconnaissance visits to SYG'S facility (August-october 2025), providing Hub 2 with target intelligence informed by Hub 1's discovery extractions.

---

(c) Timing Synchronization: Enterprise actions across hubs demonstrate coordinated timing that cannot reasonably be attributed to coincidence - including the January 3 1, 2025 Triple Coordination Event and the February 12, 2026 SCB filing exactly 1 1 days before the CMR trial.

D. Enterprise Continuity

The entelplise has operated continuously from at least M ay 2022 (Ivankovich corporate communications regarding Seakeeper) through the present date, with no natural endpoint. This satisfies both closed-ended continuity - 45+ m onths of coordinated activity far exceeding the Eleventh Circuit's nine-m onth floor in Jackson v. Bellsouth Telecommunications, lnc., 372 F.3d 1250 (1 1th Cir. 2004) - and open-ended continuity, as new predicate acts occurred in 2026 with no indication of cessation.

E. Enterprise Distinctness

The enterprise is distinct f'rom the defendants. lt is the coordinated system of methods, channels, and timing mechanisms described above - not m erely the sum

of the defendants. Individual defendants may be replaced without destroying the enterprise's operating structure. The hubs, channels, and methods have existed and operated independently of any single defendant's participation in any single action, as evidenced by the enterprise's continued expansion into new venues (SCB



---

foreclosure), new shell entities (National Liquidators), and new enforcement methods (garnishment via V1V) even as individual components (CMR under receiver control) undergo structural changes.

## 111. FAC TUAL BA CK G RO UND AND TIM ELINE

This section sets forth the factual chronology of the enterprise's operations in sufficient detail to satisfy Rule 9(b)'s particularity requirement for fraud-based predicates.

### A. Pre-Enterprise Foundation (2008-2021)

ln 2008, Stratmann founded SYG with $10,000 in personal savings and a $20,000 personal loan. Over fourteen years, Stratmann built SYG into a $7.68 m illion annual-revenue m arine engineering operation em ploying approxim ately 30 full-time workers with benefits.

By 2021, SYG held the Seakeeper "Dealer of the Y ear" designation and m aintained daily average Bank of Am erica operating balances exceeding $1,000,000.

SYG invested over $9 million of its own capital in Seakeeper and Humphree dealerships, demo vessels, sodium-ion battery development (Salty M arine Batteries

LLC), and proprietaly marine engineering lP.

---

B. Enterprise Initiation (2022)

On Janualy 3, 2022, Stratmann m et Steven Ivankovich aboard M /V Octopussy and shared SYG 'S post-COVlD vision, including SYG 'S ElDL-funded capital position.

On April 8, 2022, the first Ivankovich wire - $12,862.00 from Glencoe Fam ily Dwelling - was received by SYG.7 This amount represented approxim ately 1.2% to 1.3% of SY G'S combined operating cash at that time.

The subsequent business relationship resulted in $4,504,641.18 received from four Ivankovich-controlled entities, all accounted for in the l sl-page CFO Declaration (DE 237 in Case No. 0:23-cv-61696-AHS), certified as showing $0.00 unaccounted.8

C. Enterprise Operations - Hub 1 (2022-2026)

The detailed chronology of CMR litigation fraud, discovery m anipulation, damages inflation, creditor cascade events, and the resulting default judgment is set forth in the predicate acts in Sections IV .A and IV .B below and the supporting exhibits referenced therein. The chronology includes, without lim itation: the filing of an intlated damages affidavit containing a $758,000+ proven overstatement; a

7 Wire record — $12,862.00, April 8, 2022, Glencoe Family Dwelling LLC (VERIFIED — bank/wire production; exhibit pin pending).

8 1st-page CFO Declaration, DE 237, Starboard Yacht Group, LLC v. Contessa Marine Research, LLC, No. 0:23-cv-61696-AHS (S.D. Fla.) — certified $0.00 unaccounted across $4,504,641.18 received from four Ivankovich-controlled entities (VERIFIED — native docket pin).

material divergence between Burell's preliminary report (D-48/DE 314-5) and the later sworn affidavit used for default relief;9 the use of redacted and incom plete tile

---

productions and withholding of responsive evidence during the pretrial discovery lane; the m anipulation of discovery deadlines while concealing entem rise financial records; the orchestration of the January 31, 2025 Triple Coordination Event; and the exploitation of SYG'S inability to retain counsel to obtain the $6,524,783.18 default judgment.

D. Enterprise Operations - Hub 2 (2024-2026)

On May 30, 2024, Ackel signed a subordination agreem ent acknowledging and subordinating Bluewater's lien position to SY G'S SBA loans. Ackel confirm ed the agreem ent via email the same day - establishing actual knowledge of the subordination obligations and destroying any future ignorance defense.10

The H ub 2 chronology includes, without lim itation: the breach of the subordination agreement, the November 10-13, 2025 seizure of $1,166,000 in SYG collateral, the execution of void service of process by Hunter on behalf of his own company, the imposition of extortionate storage demands, the unauthorized sale of SK35 gyroscopic marine stabilizer equipment for $309,000, and transclipt-confirm ed adm issions by Ivankovich that he hired a private investigator and knew

9 Burell preliminary report D-48/DE 314-5 vs. later sworn affidavit — $758,000+ overstatement is ALLEGED pending independent recomputation against native DE 288/269-1/270/314-5 pins; figure stated as plaintiff's computation, not adjudicated fact.

10 Ackel subordination agreement executed May 30, 2024, with same-day email confirmation (VERIFIED — native email pin pending hash).

SK 35's location.11

D .1. Federal Lending Structure and Post-N otice Conversion

43a. SBA EIDL Loan and Lien Pliority Stack. The SBA holds EIDL Loan No. 561 1798202 (original amount: $1,915,000) secured by a perfected UCC-I

26

---

filing encumbering all assets of SYG

a first-position security interest with

priority over all subsequent liens. Locality Bank holds a Section 7(a) SBA-guaranteed loan in a subordinate second-position lien. The subordination agreem ent signed by D efendant Ackel on May 30, 2024 explicitly acknowledged and subordinated Bluewater's interests to the SBA lending position. The lien priority stack is:

(i) First Position: United States (SBA) - EIDL Loan No. 561 1798202, $1,915,000, UCC-I all-assets, perfected;

(ii) Second Position: Locality Bank Section 7(a) SBA-guaranteed loan, subordinate to EIDL;

(iii) Subordinated: Bluewater Reel Estate LLC - per Ackel subordination agreem ent, May 30, 2024,.

(iv) Unsectlred: All other creditors, including enterprise-produced judgments.

---

11 Transcript-confirmed admission that Ivankovich hired a private investigator and knew SK35's location (VERIFIED — trial transcript pin; CMR 61696 bench trial 2/23/2026).

43b. The Sm oking-Gun Em ail and Post-Notice Conversion Sequence. On November 5, 2025, Defendant Ackel sent an electronic communication to the SBA inquiring: "Can we auction everything off and not pay the SBA anything?" The SBA responded on the same date, through N akayam a B. A bouem , confinning: "The U CC-I is perfected... does not disclaim ... lien and priority interest remains."12

---

N ancy Chamides was carbon-copied on this communication chain. The post-notice conversion sequence is:

(i) Pre-November 5, 2025: SBA UCC-I filed and perfected. Enterprise actors aw are of SBA lending relationship through subordination agreem ent and SYG records;

(ii) November 5, 2025: Ackel transmits electronic inquiry to SBA asking whether SBA collateral can be excluded from auction proceeds. This communication establishes actual knowledge of the SBA lien AND deliberate inquiry regarding circumvention;

(iii) November 5, 2025: SBA confirms perfected lien status in writing. Enterprise actors now have acm al, confirm ed, written notice that the SBA 'S security interest is perfected and not disclaim ed;

(iv) Post-November 5, 2025: Enterprise actors proceed to dispose of, divert, and convert SBA-encumbered collateral - the Novem ber 10-13, 2025 seizure of $1,166,000 in SYG collateral occurs five to eight days after Ackel's inquiry and the

12 Ackel-to-SBA email chain, November 5, 2025 — inquiry whether collateral could be excluded from auction proceeds; SBA response same date via Nakayama Abouem confirming perfected, non-disclaimed lien; Nancy Chamides cc'd (VERIFIED — mailbox native; sha256 pin pending).

SBA'S confirm ation;

(v) Continuing: Entemrise continues to hold, conceal, and dispose of SBA-encumbered assets without SBA authorization or court order.

E. Connecting Channel Operations (2025-2026)

---

The Akerm an dual representation timeline spans from initial CMR representation through the SCB vessel arrest tiling on February 13, 2026, including the January 26, 2026 conflict denial letter contradicted by concurrent docket records and the Florida Bar complaint filed January 29, 2026.13

The communications chronology corroborates that channel structure: settlement and lockout pressure communications in 2023-2025 (including SHM no-trespass and settlement-enforcement exchanges), the June 2025 Akerman conflict inquiry and dismissive response, SCB demand/acceleration correspondence in January 2026, service packages for objections and disqualification m otions in February 2026, and April 2026 default/strike service activity in the SCB foreclosure lane. Taken together, those dated transmissions show a repeatable legal-coordination pattem in which Akerman lawyers (primarily KloppW oss) and parallel service-recipient counsel channels (including Stroup-related service threads) were used to synclaronize pressure, presenre adverse positioning, and escalate enforcement against SYG across related matters.

The Biggie intelligence chalm el com prises four documented reconnaissance

13 Florida Bar complaint filed January 29, 2026 re Akerman LLP conflict; January 26, 2026 conflict-denial letter contradicted by concurrent docket records (VERIFIED — bar complaint + docket pins pending hash).

visits between August and October 2025, each providing Hub 2 with target intelligence on SYG 'S asset positions, operational vulnerabilities, and physical layout.

29

---

Tim ing coordination evidence includes the January 31, 2025 Triple Coordination Event (three independent devastating actions on one day), the February 12, 2026 SCB tiling exactly 1 1 days before CMR trial, and the synchronized acceleration of M CA and creditor obligations.

47a. Plaintiff also relies on testimony and records from form er CMR G eneral M anager Joe Seinitz, who has direct historical fam iliarity with Ivankovich and the CMR operating structure predating his CMR role. Seinitz has represented that he is prepared to execute an updated sw orn affidavit addressing enterprise motive, operational compartm entalization, and information-control methods, including statements by Ivankovich that SY G would be loaded with enterprise-controlled business to create dependency and restriction from other work.

47b. On information and belief, Seinitz will further attest that after SY G vessel arrest actions, Ivankovich reduced Seinitz's access while elevating Hand in intelligence-routing functions, consistent with a compartm entalized enterprise model in which different actors receive different narratives and are discouraged from cross-communication.

47c. Plaintiff intends to authenticate Seinitz-linked historical communications through m etadata and chain-of-custody records, including

date/time headers, sender-recipient routing, and device/account provenance, and to use that authentication to conoborate intent evidence, including Ivankovich email

30

---

adm issions concerning plans and resources directed at disabling SYG 'S operating continuity.

F. Enterprise-produced Judgments and Enforcement (2026)

On February 20, 2026, this Court entered a $6,524,783.18 tinal default judgment against SYG in Case No. 0:23-cv-6l696-AHS (DE 299/300). The Court sua sponte identified potential First Degree Grand Theft of $362,072.20 in Footnote 3, refening the matter for appropriate criminal action under FL j 812.014(2).

The default judgment was entered after SYG'S opposition (DE 290) was stricken because SY G could not retain counsel - the direct result of the enterprise's coordinated financial destruction of SYG'S resources, creating a 28 U.S.C. §1654 procedural trap.

1V. PREDICA TE A CTS

Predicates are organized by independent fraud elem ent, not by filing/service mechanics. Each predicate identifies: (a) the actorts), (b) the specific conduct, (c) the date and location, (d) the applicable statute, and (e) the source evidence - satisfying Rule 9(b). Routine litigation filings without independent fraud elements and senice of process m echanics are contextual evidence of enterprise pattern, not standalone predicates.

---

A . H ub 1 Predicates - Litigation Fraud and Creditor Cascade

Predicates supported by independent fraud elements (fabrication, overstatement, concealment, unauthorized filing):

PA #

Actorts)

Conduct

Date

Statute

Evidence Ref

PA -CMR-OI

Ivankovich, Burell

Filing of Burell Affidavit containing $758K+ proven overstatement of damages, after coercive replacement of preliminary report components reSected in D-48/DE 314-5 (preliminary findings; $4,504,641.18 money in; $ 1,491,348.48 vendor payments; $1,590,770.78 SYG audit-file paid total), and use of redacted/incom plete productions and withheld underlying records before trial to obstruct veritication

On or about the date of filing (exact date to be confirmed through discovery)

18 U.S.C. §j 1343, 1623 (wire fraud and false declaration via CM/ECF)

---

DE 288 Objection; DE 237 CFO Declaration; DE 314-5 (D-48 preliminary report, M ar. 4, 2024 findings letter); pretrial production logs and redacted-file

productions

PA-CMR-OZ

Ivankovich, CMR

Filing of DE 287 damages m otion without proven Receiver authorization, constituting ultra vires action

On or about the date of filing (exact date to be confirmed through discovery)

18 U.S.C. §1343

DE 287; Cook County Receiver appointm ent order

PA-CMR-O3

Ivankovich

N am e fraud: "CHARI,ES JAKE" used in filings instead of "Charles Jacob"

On or about the date of filing (exact date to be confirmed through discovery)

18 U.S.C. §1343

CMR docket entries

PA -CMR-O4

Moore

Discovery weaponization - combined communications (SYG006686-SYG007040) channeled through enterprise, including communications introducing

---

Moore as "our team's attom ey" and advising that it was "bad business" to include

M atthew Valcourt

2022 through 2024 (Bates-stamped records SYG006686-SYG007040)

18 U.S.C. §1343

Bates-stamped discovery records; Exhibit PILLER communications (Steve-to-plaintiff attorney-introduction + Moore advisory message)

PA -CMR-OS

Ivankovich, Flitman

Privileged litigation infonuation (mechanic lien filings) transmitted to Seakeeper in November 2024

Nov 2024

18 U.S.C. §1341 (mail fraud)

Flitman email records

PA -CMR-O6

Ivankovich, Leatherwood

D iscovery w eapons channeling - "need to involve SeaK eeper directly in dissatisfaction" email July 6, 2023, coupled with transcript testimony that Seakeeper reported litigation threats and that "ultimately, through counsel" vendor communications were forced open to obtain desired information (Feb. 23, 2026 Tr. pp. 86, 88-89)

---

Jul 6, 2023

18 U.S.C. §1343

Leatherwood email to Seakeeper', Feb. 23, 2026 Bench Trial Transcript (pp. 86, 88-89)

B. H ub 1 Predicates - C reditor Cascade and Business D estruction

PA #

Actorts)

Conduct

Date

Statute

Evidence Ref

PA -SKR-OI

Ivankovich, Seakeeper

Dealer termination destroying $72.5M value, effective Jan 31, 2025 - same day as Triple Coordination Event

Dec 2, 2024 (notice) / Jan 31, 2025 (effective)

18 U.S.C. §1343,. tortious interference

Termination letter; dealer agreem ent

PA-SHM -OI

SHM LMC, LLC; Blackstone Group lnc.

---

W orkspace lockout creating duress conditions during CMR discovery period, resulting in $238K coerced settlement

D ec 2024 - Jan 31, 2025

18 U.S.C. §1951 (extortion)

Settlem ent agreem ent; lockout evidence

PA -SHM -OZ

SH M LMC, LLC

Customer contract destmction: A1l Speed Fins ($1 .5M ), Quad Humphree

($ 1.0M)

December 2024 - January 2025

18 U.S.C. §1343

Custom er correspondence; contract records

PA-M CA -OI

Highland Hill

Refused SY G payment Feb 3, 2025 despite borrow er ability to pay -

m anufactured default

Feb 3, 2025

18 U.S.C. §1343

Paym ent records; refusal documentation

PA -M CA-OZ

---

H ighland Hill, Sinclair, Nexus

BofA account freeze (May 28, 2025) blocking payroll tax deposits, forcing

IRS/FL RT-6 delinquencies

M ay 28, 2025

18 U.S.C. §1343

BofA records; lRS notices

C . H ub 2 Predicates - Physical Seizure and Conversion

PA #

Actorts)

Conduct

Date

Statute

Evidence Ref

PA-LOC-OI

Ackel

Signed subordination agreem ent subordinating Bluewater lien to SBA loan, with specific intent to later breach

May 30, 2024

18 U.S.C. §1343

Subordination agreem ent; Ackel confirmation email

---

PA -LOC-02

Ackel, Hunter, Brighton

Conversion of $1,166,000 in SYG collateral, Nov 10-13, 2025

N ov 10-13, 2025

FL §812.014(2) (grand theft); 18 U.S.C. §1343

FLPD Case #34-2512-209096

PA -LOC-03

Ackel, Hunter, Brighton

Felony finding entered D ec 9, 2025 - establishing probable cause for First Degree Grand Theft

Dec 9, 2025

FL §812.014(2); FL §772.1 1

Felony tinding order

PA -LOC-04

Hunter

Void service of process: Hunter served process for Bluewater - his ow n company - rendering C050-25-053444 default judgment void ab initio

On or about the date of service (exact date to be confirmed through discovery)

Procedural fraud

---

Service records; Sunbiz records; Broward County Case N o. COCE-24-017512 docket packettFiling #194561390,#194597881, #195238536, #196307292, #199371645)

PA-LOC-05

Ackel

Extortionate storage fees: $135/day imposed on seized inventory as leverage

N ov 2025 - present

18 U.S.C. §1951 (extortion)

D em and communications

PA-LOC-06

Hunter

Lowball offer: $70K-$l00K for $1.166M in seized property, November 22, 2025 phone call

N ov 22, 2025

18 U.S.C. §1951

Call records

PA -LOC-07

Brighton

SK35 gyroscopic marine stabilizer equipment sold for $309,000 on

December 5, 2025,. proceeds retained by enterprise actors

---

D ec 5, 2025

FL §812.014

Sale records

PA -LOC-08

Pineiro

SK 26 gyroscopic m arine stabilizer equipm ent possessed via Ares M arine

without court authorization

on or about November 2025

18 U.S.C. §1343

B SO/FLPD records

PA -LOC-09

ln-visions LLC, Hunter

Facilitated relocation and conceallegation of seized SYG property through ln-

V isions' operational infrastructure, including storage coordination with third-party

locations and asset transport logistics directed by Hunter in his dual capacity as

Bluewater LLC M anager and ln-v isions principal

N ov 2025 - present

18 U.S.C. §1343; FL §812.014 (accessory)

Property location records; Sunbiz cross-reference

D. Connecting Channel Predicates

40

---

PA #

?tctorts)

Conduct

Date

Statute

Evidence Ref

PA -SCB-OI

Akerm an, Klopp

SCB vessel arrest (DE 6) filed Feb 13, 2026 - 10 days before CMR tlial;

timing coordination through dual representation and the January-Febnmry 2026

demand/service sequence that positioned SYG for default-pressure litigation

Feb 13, 2026

18 U.S.C. §1343

SCB docket; CMR docket; January 2026 demand and senrice-transm ittal

chronology

PA-SCB-OZ

Klopp, Akerm an LLP

Coniict-knowledge timeline: June 2025 conflict inquiry and response comm unications, follow ed by Klopp's Jan 26, 2026 conflict denial letter

41

---

contradicted by concurrent dockets showing Akerm an representing adverse parties in CMR and SCB simultaneously

Jan 26, 2026

18 U.S.C. §1343

June 2025 conflict inquiry/response emails; Jan 26 denial letter; PA CER records

PA -SCB-O3

National Liquidators LLC

Unauthorized vessel location operation: agents dispatched to SYG 'S know n m arina locations on February 12, 2026 to photograph and catalog vessel positions without court authorization, providing actionable intelligence for the SCB vessel arrest tiled the follow ing day; colw borated by transcript testimony adm itting private-investigator retention and 5K 35 location know ledge and by related pre-arrest pressure communications in the no-trespass/settlement lane

Feb 12, 2026

18 U.S.C. §1343

Deploym ent records; m arina witness statements; SCB DE 6 timing; hearing transcript admission (private-investigator retention/sK3s locationl; no-trespass/settlement correspondence timeline

PA-SCB-O4

42

---

Klopp, Yoss, coordinated service-recipient channel participants

Post-filing default and strike escalation activity in April 2026: coordinated service/email transm ittals and docket steps used to press uncontested foreclosure posture after conflict objections were raised, consistent with the enterprise's counsel-prevention and pressure-channel methods

Apr 2026

18 U.S.C. §1343

SCB docket default/strike sequence; service transm ittal emails; prior conflict correspondence timeline

PA-M AIL-OI

Enterprise actors (access via 545 NE 17th Ave)

V isa gift cards intercepted Jan 29, 2026 constituting access device fraud

Jan 29, 2026

18 U.S.C. §1029

U SPS lnspector report; FLPD ; FBl lC3

PA -NEW -OI

Klopp, Akerm an LLP

D em and letter sent to SY G on January 6, 2026 on behalf of SCB while Akerman sim ultaneously represented CMR creditors in federal court and served as lFB lnternational D1P counsel - triple concurrent conflict of interest violating FL

Bar Rule 4- 1.7(a). The demand was transmitted by wire (email) and constituted a material step in the enterprise's coordinated legal extraction using conflicted counsel.

Jan 6, 2026

18 U.S.C. §1343 (wire fraud)

Demand letter; FL Bar complaint (Jan 29, 2026); CMR docket; lFB International docket; Akerman conflict denial letter (Jan 26, 2026)

PA-N EW -OZ

Klopp, Yoss, Akerm an LLP

SCB admiralty complaint and vessel arrest petition filed via CW ECF on February 12-13, 2026 while Akennan m aintained active representation of CMR creditors (Hub 1) and lFB International DIP interests an affirmative litigation act prosecuted through a triple-conflicted law firm , timed to coincide with National Liquidators' vessel location operation (PA-SCB-O3) and to land 10 days before the CMR tlial.

Feb 12-13, 2026

18 U.S.C. §1343 (wire fraud via CM/ECF)

SCB docket (Case No. 0:26-cv-60289-W PD); CMR docket; 1FB lnternational bankruptcy docket; Akerman LLP 51-111 records

E. Federal Secured C reditor Predicates

PA #

Actorts)

Conduct

Date

Statute

Evidence Ref

PA -FED -OI

Ackel (primary sender), Chamides (CC'd)

Post-notice electronic inquiry to SBA : "Can we auction everything off and not pay the SBA anything?" - representing deliberate intent to deprive federal secured creditor of perfected lien recovery. SBA responded same day through N akayam a B. Abouem confirm ing UCC-I perfected and priority interest not disclaim ed. The inquiry itself is evidence of fraudulent intent: Ackel sought confirm ation that the SBA could be excluded from asset distlibution BEFORE proceeding with conversion.

N ov 5, 2025

18 U.S.C. §1343 (wire fraud email transmission)

Smoking-gun email chain; Ackel --> SBA @ ov 5, 2025),. SBA response (Nakayama B. Abouem, same datel; CC: Nancy Chamides; Subordination agreement (May 30, 2024)

---

PA -FED -OZ

Ackel, Bluewater, coordinating enterprise actors

Post-notice conversion and conceallegation of SBA-encumbered assets, commencing 5-8 days after Ackel's N ov 5 inquiry and SBA 'S same-day confirmation of perfected lien. The seizure of $1,166,000 in SYG collateral14 on November 10-13, 2025 occurred with actual know ledge that every asset seized was subject to a perfected SBA tirst-position lien.

Nov 10-13, 2025 (seizure), continuing

18 U.S.C. §1343 (wire fraud); FL §812.014 (conversion of federally secured collateral)

Transaction records; FLPD Case #34-2512-209096,. Nov 5 email chain establishing actual knowledge timeline

PA-FED-O3

Enterprise actors (coordinated)

Ongoing collateral diversion im pairing SBA tirst-position security interest

-

including unauthorized sale of 5K 35 gyroscopic m arine stabilizer equipm ent ($309,000 on Dec 5, 2025), possession of 5K26 gyroscopic marine stabilizer equipment via Ares Marine, and extortionate storage demands ($ 135/day) on federally secured assets

D ec 5, 2025/continuing

46

---

14 November 10-13, 2025 seizure of $1,166,000 in SYG collateral — five to eight days after the November 5 notice sequence (ALLEGED as to enterprise coordination; seizure fact VERIFIED — record pin pending).

18 U.S.C. §1343; 18 U.S.C. §1962(d) (conspiracy to convert secured collateral)

SBA servicing records; 51Q35 model stabilizer sale documentation; SK26 model stabilizer possession records; storage demand communications

PA -FED -O4

Enterprise actors (through default cascade)

Secondary lien impairment - Locality Bank 7(a) SBA-guaranteed loan forced into default through enterprise-driven creditor cascade, M CA acceleration, and BofA account freeze. The Locality Bank loan guarantee creates additional federal program loss because the SBA m ust cover the guaranteed portion upon Locality Bank default.

2025-ongoing

18 U.S.C. §1343

Locality Bank records; SBA guarantee documentation', M CA acceleration records; BofA freeze records

F. Enterprise-produced Judgm ent Enforcement Predicates

PA #

ytctorts)

Conduct

Date

---

Statm e

Evidence Ref

PA -VIV-OI

Vivifi M edical / Valcourt entities

Garnishment of Plaintift's personal Chase bank account in excess of $85,000 pursuant to enterprise-produced default judgment obtained through coordinated creditor cascade, without valid basis to pierce individual liability

2025-2026

18 U.S.C. §1343 (wire fraud electronic gamishment)

Chase garnishm ent records; VIV docket

PA-V1V -02

V ivifi M edical / Valcourt entities

Obtained default judgment against SYG without proper serdce upon M anaging Member, in coordination with enterprise timing designed to prevent CCSPOnSC

On or about the date of judgment entry (exact date to be confirmed through discovery)

18 U.S.C. §1343

VlV docket; service records

V. IN JURY AND CAUSATIO N

48

## Post-Filing Corroborating Developments

**[X]. Post-Filing Corroborating Developments.** Since the filing of the original Complaint, proceedings in three independent forums have produced record facts consistent with the

enterprise pattern alleged herein. Plaintiff cites these records as public docket facts, not as proof of the allegations they contain:

- **a. (RECORD-FACT)** On October 23, 2026, a complaint captioned *Gary A. Goldstein v. Pilgrim Caribbean Isle LLC, et al.* was filed in the Circuit Court of the 15th Judicial Circuit, Palm Beach County, Florida, Case No. 502026CA012065, Division AD (Judge Jaimie R. Goodman; e-filing #259927682), by Gary A. Goldstein — the attorney of record for the Ivankovich Family bankruptcy proceedings. The complaint, a matter of public record, names Defendant Steven Ivankovich and Dr. Olga Ivankovich individually alongside twenty-two enterprise entities including Yacht Daddy LLC, Turtle Way LLC, North American Venture LTD (Cayman), Downtown Property Ventures LLC, and Tyler Atlas LLC, and alleges civil fraud, extortion, obstruction of justice, conspiracy, aiding and abetting fraud, and fraudulent conveyance — entities and patterns overlapping those alleged in this action. (ALLEGED as to that complaint's contents; VERIFIED as to its filing and caption.)
- **b. (VERIFIED)** In *In re: Estate of Anthony D. Ivankovich*, No. 2026-003865-CP-02 (11th Jud. Cir., Miami-Dade), Dr. Olga Ivankovich has been appointed Personal Representative and Letters issued, and Seacoast National Bank has filed a Statement of Claim asserting a debt of approximately $1.49 million (DIN 26) — placing the decedent's estate within the creditor-map of the enterprise alleged herein.
- **c. (VERIFIED)** In *Zhu Zhai Holdings Ltd. v. Ivankovich*, No. 1:20-cv-04985 (N.D. Ill.), the United States Court of Appeals for the Seventh Circuit has stayed disbursement of a $1,494,619.10 registry fund (docket entry 435) pending appeals Nos. 25-2561, 25-2585, 25-2649, and 25-3185 — freezing the same-scale fund at the center of the disputed asset narrative.
- **d. (ANALYSIS — label required)** The convergence of an insider-pleaded enterprise structure (a), an administered estate receiving a major bank claim (b), and a judicially frozen fund of matching scale (c) is consistent with the asset-concealment and diversion pattern alleged in this action.

## Counts

COUNT I — RICO: CONDUCT OF ENTERPRISE THROUGH PATTERN OF RACKETEERING ACTIVITY

(18 U.S.C. §1962(c)) - Against All Defendants

Plaintiff re-alleges and incorporates paragraphs 1 through 51 as if fully set forth herein.

---

A t all relevant times, the association-in-fact enterprise described in Section 11 existed and operated as a continuing unit with a common pum ose.

Each Defendant conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeeling activity, within the meaning of 18 U.S.C. §1962(c), by committing the predicate acts set forth in Section lV .

The pattern of racketeering activity consisted of at least 32 predicate acts identified to date over a period of 47 months, demonstrating both relatedness (all acts share the common purpose of destroying SYG and extracting its assets) and continuity (both closed-ended and open-ended per H.J. lnc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 242 (1989)). Plaintiff resen'es the right to identify additional predicate acts through discovery.

Each Defendant's participation in the enterprise satisfies the Reves v. Ernst & Young, 507 U.S. 170, 179 (1993) operation or management test:

Ivankovich: Directed Hub 1 litigation strategy, authorized tilings, controlled CMR

Ackel: Directed Hub 2 physical operations, signed subordination, ordered

seimlre

H unter: Executed void service, managed Bluewater, conducted extortion calls, facilitated asset conversion through ln-visions LLC

60

---

Burell: Provided the intlation instrument (fraudulent aftidavit)

Brighton: M anaged Bluewater operations, received SK35 sale proceeds

Pineiro: Received/possessed stolen assets via A res M arine

Biggie: Conducted pre-seizure intelligence operations across hubs

Moore: Handled enterprise discovery weaponization comm unications

Flitman'. Participated in enterprise information channeling tied to discovery and Seakeeper-adjacent intelligence transmission

Hand: Participated in compartm entalized enterprise coordination and intelligence routing

Akennan LLP: Served as legal coordination channel through triple concurrent representation - CMR creditors (Hub 1), SCB vessel arrest (connecting chamzel), and lFB lnternational banknlptcy (DIP counsel) - a1 1 simultaneously targeting SYG or SY G-related interests. Prosecuted PA -N EW -OI (demand letter under conflict) and PA-NEW -OZ (SCB complaint under conflict).

Klopp: Prosecuted SCB foreclosure and sent demand letter (PA-NEW -OI) while actively concealing triple concurrent conflict; authored conflict denial letter (Jan 26, 2026) contradicted by concurrent docket records across three matters.

Yoss: Co-promoted SCB admiralty enforcement (PA-NEW -OZ) through

triple-conflicted firm .

---

CMR LLC: Litigation vehicle filing fraudulent damages claims (PA-CMR-01, PA-CMR-OZ)

Bluewater LLC: Physical seizure vehicle converting $1,166,000 in collateral (PA-LOC-OZ)

ln-v isions LLC: Bridge entity facilitating asset relocation and concealm ent (PA-LOC-09)

N ational Liquidators LLC: Deployed for unauthorized asset location operations (PA-SCB-O3)

Moore & Company, P.A.: Professional association channel through which enterprise discovery and intelligence handling functions were perform ed

H ighland Hill / Sinclair / Nexus: Financing-lane actors in coordinated default acceleration and bank-freeze pressure (PA-MCA-OI, PA-M CA-OZ)

As a direct and proxim ate result of Defendants' conduct, Plaintiffsuffered direct personal injuries to his business and property as set forth in Section V.A, including an actual personal-bank garnishment exceeding $85,000, personal credit im pairm ent, hom estead exposure, personally incurred litigation burden, and other personal losses to be proven at trial. The broader SYG entity-level injuly schedule is pleaded as enterprise background and preserved for later amendment or related relief, not as the present direct-damages demand in this pro se count.

62

---

Plaintiff is entitled to recover treble damages, reasonable attorney's fees, and costs of suit under 18 U.S.C. § 1964(c).

COUNT II — RICO CONSPIRACY

(18 U.S.C. §1962(d)) - Against All Defendants

Plaintiff re-alleges and incorporates paragraphs 1 through 58 as if fully set forth herein.

Each Defendant knowingly agreed to the overall objective of the entemrise and agreed that an act of racketeering would be com m itted by a member of the conspiracy in furtherance of that objective. Salinas v. United States, 522 U.S. 52, 63-66 (1997). A defendant need not have personally committed two predicate acts

-

or indeed any predicate act - to be liable under §1962(d); it is enough that the defendant "knew about and agreed to facilitate the schem e." ld. at 66.

The hub-and-spoke conspiracy structure is evidenced by:

(a) Hub 1 spoke agreements: Ivankovich directed Hub 1 actors (Burell, Moore, CMR) toward the shared objective of fnancial extraction through litigation fraud and creditor cascade. Each actor perform ed a role com prehensible only as part of a coordinated plan.

(b) Hub 2 spoke agreements: Ackel directed Hub 2 actors (Hunter, Brighton, Pineiro, Bluewater) toward the shared objective of physical asset seizure and conversion. The sequential chain - Biggie reconnaissance --> Hunter void service

---

• -+ Ackel seizure --+ Brighton proceeds collection --+ Pineiro asset receipt -

evidences coordinated agreem ent.

(c) Cross-hub rim connections'. The enterprise is not merely two independent spokes. The Akerm an LLP dual-representation channel, the Ed Biggie intelligence relay, and the synchronized timing (January 31, 2025 Triple Coordination Event; February 12-13, 2026 National Liquidators/scB sequence) connect the hubs into a unified conspiracy.

Each Defendant's agreem ent to the conspiracy is supported by:

D efendant

Evidence of Agreem ent

Ivankovich

D irected CMR litigation, controlled entity, authorized filings

Ackel

Signed subordination with intent to breach, orchestrated seizure

Hunter

Executed void service for own company, managed Bluewater, conducted extortion calls

Burell

Provided sworn false affidavit - requires coordination with Ivankovich

Brighton

64

---

Received proceeds from unauthorized SK35 sale - requires agreem ent with Ackel

Pineiro

Received/possessed 5K26 via Ares M arine - requires Hub 2 coordination

Biggie

4 reconnaissance visits spanning m onths - ongoing intelligence agreem ent

Moore

Handled discovery comm unications channeled through enterprise

Flitman

Participated in enterprise intelligence and communications channel functions linked to Seakeeper and CMR tracks

Hand

Participated in post-arrest compartmentalized information-control and routing functions within enterprise channels

Akerm an LLP

Triple concurrent representation (CMR + SCB + 1FB lnternational) creating information bridge - firm -level decision to m aintain conflicted representation across three enterprise-related matters; conflict denial letter issued three days before FL Bar complaint

Klopp

---

Filed conflict denial contradicted by docket - affirm ative conceallegation of triple conflict; continued prosecution of SCB and demand activities (PA-NEW -OI, PA-NEW -OZ) after awareness of conflict

Aross

Co-promoted SCB enforcement (PA-NEW -OZ) through triple-conflicted

51711 with knowledge of concurrent CMR representation

CMR LLC

Entity vehicle directed by Ivankovich for Hub 1 objectives

Bluewater LLC

Entity vehicle directed by Ackel for Hub 2 objectives

In-visions LLC

Bridge entity facilitating cross-hub asset operations

N ational Liquidators LLC

D eployed for unauthorized operations - requires com m issioning agreem ent

Moore & Company, P.A.

Instimtional channel for Moore/Flitman litigation-adjacent communications

and intelligence handling

H ighland Hill / Sinclair / Nexus

Coordinated M cA-default and bank-freeze pressure lane aligned with

enteprise timing and extraction objective

66

---

COUNT III — CIVIL THEFT

(FL §772.11) - Against Ackel, Hunter, Brighton, Pineiro, BlueWater Reel Estate LLC

Plaintiff re-alleges and incorporates paragraphs 1 through 62 as if fully set

forth herein.

Plaintiff asserts this count only to the extent the alleged theft and conversion

directly injured him individually, including by impairing collateral tied to obligations enforced against him personally, increasing personal collection pressure, and causing direct out-of-pocket and enforcement-related losses. To the extent any converted property belonged solely to SYG, those entity-level losses are preserved for amendment, substitution, or counsel-led pursuit and are not pleaded here as a standalone individual recovery theoly.

Defendants Ackel, Hunter, Brighton, and Pineiro, acting through Bluewater Reel Estate LLC, committed theft of $1,166,000 in SYG collateral as defined by FL §812.014.

On December 9, 2025, a court entered a felony finding establishing probable cause for First Degree Grand Theft under FL §8 12.014(2).

On December 5, 2025, vessel SK35 was sold for $309,000 without authorization and in violation of existing SBA and Locality Bank security interests.

67

---

The jurisdictional prerequisites of FL §772.1 1, including the statutory demand letter, have been satistied or are excused by the ongoing crim inal proceedings and the defendants' dem onstrated intent to conceal and dispose of assets.

Plaintiffseeks under this count only those damages directly suffered by him individually as a result of the theft and conversion sequence, in an amount to be proven at trial, together with any statutory relief available on that direct personal-injury theory.

COUNT IV — FRAUD

Against Ivankovich, Ackel, Burell, CMR

Plaintiff re-alleges and incorporates paragraphs 1 through 68 as if fully set forth herein.

Subordination Fraud (Acke1): Ackel signed the subordination agreement on May 30, 2024 with specific intent to later breach it by seizing the exact collateral he subordinated. The sm oking gun confirm ation email establishes know ledge and intent. Plaintiff relied on Ackel's com m itm ent to subordination w hen continuing to operate from the Bluewater location.

Damages Fraud (Ivankovich, Burell): Ivankovich directed Burell to submit a sworn affidavit containing a $758,000+ proven overstatement of damages. This Court relied on the affidavit in calculating the $6,524,783.18 default judgment. The

68

---

fraud produced a judgment that would not have been entered in that amount but for the false affidavit, and that intlated judgment was then used to intensify enforcement pressure, defense burden, and collection exposure against Plaintiff personally.

COUNT V — TORTIOUS INTERFERENCE WITH BUSINESS RELA TION SH IPS

Against Ivankovich, Ackel, H unter, SHM LMC, Blackstone Group

Plaintiff re-alleges and incorporates paragraphs 1 through 71 as if fully set forth herein.

Plaintiff maintained valid business relationships with Seakeeper (dealer agreement - $72.5M value), SBA (EIDL loan), marine customers (A11 Speed Fins, Quad Humphree), and insurance carriers.

Defendants had know ledge of those relationships.

Defendants intentionally and unjustifiably interfered through: dealer termination (Seakeeper), workspace lockout (SHM ), payment refusal then default acceleration (MCA), and collateral seizure (Ackel/Bluewater).

As a direct result, Plaintiff lost his personal compensation stream , professional goodw ill, business expectancy, insurance-backed operating continuity, and other direct personal economic interests tied to those relationships. Entity-level

69

---

contract and enterprise-value losses are preserved as background and for later amendment to the extent they exceed Plaintiffs current individual recovery theory.

V ll. PM

YER FOR RELIEF

W HEREFORE, Plaintiff respectfully requests that this Court:

A . M onetary Relief

**Prayer**

Enter judgment in Plaintiffs favor on Count I (RICO §1962(c)) for treble damages under 18 U.S.C. §1964(c) for Plaintiffs direct personal business-or-property injuries, including the personal-bank gamishment already suffered and additional direct personal losses proved at trial;

Enter judgment on Count 11 (RICO Conspiracy §1962(d)) jointly and severally against all Defendants;

Enter judgment on Count lll (Civil Theft FL §772.1 1) for those direct personal damages, statutory multiples, and related relief that Plaintiff proves were caused by the theft and conversion sequence as applied to him individually;

Enter judgment on Count IV (Fraud) for compensatory damages;

Enter judgment on Count V (Tortious Interference) for compensatory damages including Plaintiffs lost personal compensation, business expectancy, goodwill, and other direct personal economic harm ;

70

---

Award reasonable attorney's fees under 18 U.S.C. §1964(c) and FL j 772 . 1 1 ;

Award pre-judgment and post-judgment interest;

A ward costs of suit.

B. Equitable Relief

Enter a constructive trust over all SYG property and assets currently held by or under the control of any D efendant;

Order an accounting of all SYG assets seized, sold, transferred, or concealed by Defendants since May 30, 2024;

Enter a permanent injunction prohibiting Defendants from further disposing of, concealing, or encumbering any SYG property or assets;

Order disgorgement of all profits derived from the enterprise's racketeering

activity;

C . Ancillary Relief

Grant such other and further relief as this Court deems just and proper.

VIII. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

VERIFICATION

---

I, Charles Jacob Stratmann, pursuant to 28 U.S.C. §1746, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED this 9th day of November, 2026.

Respectfully submitted,

Executed on: November 9, 2026

Fort Lauderdale, Florida

/s/ ______________________

CHARLES JACOB STRATMANN

Pro Se Plaintiff

545 NE 17th Avenue

Fort Lauderdale, FL 33301

Telephone: (954) 873-8546

Email: jake@starboardyacht.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 9, 2026, a true and correct copy of the foregoing First Amended Complaint was served via the Court's CM/ECF system upon all counsel of record, including Bryan Thomas West, Esq. (Akerman LLP) and Jordan Marcus Brill, Esq., consistent

with the Court's October 23, 2026 paperless order (D.E. 36). Service of process on Defendants will be completed pursuant to the Court's January 12, 2027 deadline.

/s/ ________________________________

CHARLES JACOB STRATMANN