GAG_ATLAS_1743

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on February 21, 2025, a true and correct copy of the foregoing *Notice of Rule 2004 Examination* was served via ECF on all parties who receive service in this Bankruptcy Case via electronic case filing.

*/s/ Steven J. Brotman*
Steven J. Brotman

# PLAINTIFF'S EXHIBIT 3

Atty No. 26828

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

| | | |
|---|---|---|
| IN RE: MARRIAGE OF<br><br>JEANETTE IVANKOVICH,<br><br>Petitioner<br><br>and<br><br>STEVEN IVANKOVICH<br><br>Respondent<br><br>ANTHONY IVANKOVICH, et al.<br>Third-Party Respondents. | ) | No. 21 D 9220 |

ENTERED
May. 13, 2025
Mariyana T. Spyropoulos
Clerk of the Circuit Court
of Cook County, IL
DEPUTY CLERK ______________

**ORDER APPOINTING NEAL H LEVIN, ESQ. AS RECEIVER, GRANTING INJUNCTIVE RELIEF AGAINST FURTHER DISPOSITION OF ASSETS, AND OTHER RELIEF**

THIS CAUSE came before the Court on Petitioner's Emergency *Ex Parte* Petition for the Appointment of a Receiver and/or Sequestrator, filed on May 12, 2025 (the "***Petition***"), the Court having carefully considered the Motion, the history of this proceeding and the applicable law, and here finding good cause to grant the relief requested in the Motion:

**FINDINGS OF FACT**

Initially, the Court makes the following Findings of Fact:

A. This matter is an emergency based on the facts set forth in the Petition and for the reasons set forth on the record.

B. This matter should be treated as an *ex parte* emergency petition for the reasons enumerated in the petition and stated on the record. Notice to Steven and/or any third party would allow for the disposition of further assets and obstruct this court's ability to adjudicate the matter.

C. All findings of fact relevant to the appointment of the Receiver are set forth in the record and

are hereby incorporated by reference in this Order.

## CONCLUSIONS OF LAW

D. The factors outlined in Sections 501 and 503 of the Illinois Marriage and Dissolution of Marriage Act ("IMDMA") (750 ILCS 5/501and 5/503) are met, and the appointment of a Receiver is in the best interest of the parties' marital estate and minor children.

E. The factors outlined in Section 2-415 of the Illinois Code of Civil Procedure are met, and the appointment of a Receiver is in the best interest of the parties' marital estate and minor children. Petitioner has demonstrated good cause to waive the bond requirements.

**IT IS HEREBY ORDERED:**

1. The Respondent's Motion is GRANTED.

2. **APPOINTMENT OF RECEIVER:** The Court hereby appoints Neal H Levin, Esq. as Receiver (the "Receiver") over the Estate of Steven Ivankovich, the Respondent, located in any jurisdiction, ("Ivankovich"), including all assets, legal or equitable interest in any real or personal property, funds (held as fiat currencies or cryptocurrencies), accounts receivable, income and/or profits of, and any and all money due, or to become due to Ivankovich, to claims, rights, causes of action, including fraudulent transfers, affiliated entities, including management of affiliated entities for which Ivankovich is an officer, manager or custodian (collectively, the "***Assets***").

3. **POWERS AND DUTIES OF RECEIVER:** The Receiver is directed and authorized to take exclusive control and possession of the Assets for the benefit of the marital estate, to be allocated by the Court by future Order, including allocation to the Receiver and his professionals for fees and costs of the Receivership. The Receiver shall also take control of any affiliated entity over which Ivankovich currently exercises management or control including, but

not limited to, Contessa Martine Research LLC, P2 Portfolio Managing Member LLC, Old Town Property Ventures LLC, Overlook Managing Member LLC, Downtown Property Ventures LLC, IMG Marine, Ivanmorr, Atlas Apartment Homes LLC, Glencoe Family Dwelling LLC, North American Property Ventures Ltd., any other LLCs later discovered and any LLCs deemed by this Court to be the alter egos of Ivankovich. The Receiver shall ***not*** take control or possession of any asset that has filed for bankruptcy in the Southern District of Florida including Ivankovich Family LLC, A&O Family LLC (Florida), and A&O Family LLC (Illinois).

4. **ASSETS AND ACCOUNTS:** The Receiver shall have exclusive ownership, control, and possession of, and access to, the Assets, including all bank, brokerage, investment and other accounts wherever located (collectively, the "***Accounts***"), and shall become a signatory on all such Accounts and have the exclusive authority to make all decisions regarding those Assets and Accounts, including without limitation making deposits to and disbursements from all Accounts consistent with the mandates of this Order.

5. **RECEIVERSHIP ACCOUNT:** The Receiver shall open a receivership account (the "***Receivership Account***") in the name of Neal H Levin, Esq., as Receiver of the Estate of Ivankovich, and shall deposit into such account all funds that he obtains or recovers in connection with fulfilling his duties under this Order. The Receiver shall be the sole signatory on this Receivership Account, which may be a checking account from which the Receiver may issue checks or otherwise make transfers consistent with this Order. The Receiver may utilize the funds in the Receivership Account to pay expenses of the Receivership Estate in the ordinary course of business and without further order of this Court, provided that such payments are consistent with this Order and subject to review and final Order of the Court. The Receiver may employ or engage fiduciary support services to open and manage any Receivership Account consistent with this

Order.

6. **FREEZE ORDER:** All Assets and Accounts are hereby frozen, subject to the aforementioned exclusive ownership, control, possession, and access of the Receiver, who is exempt from the freeze and may control, possess, access, and use such Assets and Accounts consistent with this Order.

7. **INJUNCTION, TRANSFERS PROHIBITED, AVOIDABLE TRANSFERS:** With this Order, and for good cause shown, including the potential for irreparable harm, the Court imposes the following injunctive and other relief:

(i) During this Receivership, without the express written consent of the Receiver, Ivankovich is prohibited from transferring, accessing, using, or otherwise negatively affecting any of his Assets or Accounts.

(ii) Ivankovich and all other persons, businesses, financial institutions, and entities with direct or indirect control over any Receivership Assets, other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, withdrawing, setting off, receiving, changing, selling, pledging, assigning, liquidating, encumbering, or otherwise disposing of or withdrawing such assets.

(iii) Ivankovich is further enjoined from interfering with the Receiver or his professionals in the exercise of their powers and duties established by this Order.

(iv) The Receiver may initiative avoidance actions against Third-Parties, in any jurisdiction, to the extent the Receiver believes that any Assets or Accounts have been transferred by Ivankovich to said Third-Party in exchange for no consideration or less than reasonably equivalent value, whether such transfer was prior or subsequent to the appointment of the Receiver.

(v) It shall be direct criminal contempt should Ivankovich transfer or attempt to transfer any Assets or Accounts subsequent to the entry of this Order.

8. **FINANCIAL DISCLOSURES AND SWORN ACCOUNTING:** Ivankovich shall ***immediately*** disclose to the Receiver all of his Assets and Accounts, including the names of any and all entities over which Ivankovich, his mother, his father, and/or any business affiliate,

accounted for or paid. The pattern of receiving income, intentionally not filing tax returns, and never paying any income tax on income or real estate sale profits was and is a continuing pattern of fraud and income tax evasion by Steven Ivankovich. It has been estimated by CPA Andy Hamm that Steven Ivankovich, the person who received the proceeds from the sale of the four apartment complexes owned by P-2 and P-5, has a pass-through unpaid income tax liability on $57,000,000 arising from the sales of the P-2 and P-5 properties.

62 Plaintiff was the contact person for the chapter 11 board of directors, consisting of Dr. Olga Ivankovich, Nanny Webber, and Mark Brown. Plaintiff was tasked with coordinating the flow of information required by CR to prepare the tracing report.

**Description and History of the Debtors' Businesses, Assets and Sources of Plan Funding and Plan Guarantors Steven Ivankovich creation of North American Ventures Ltd a company organized under the law of Grand Cayman to defraud his parents, Plaintiff and his creditors. Background of pattern of fraud, and criminal activity to steal sale proceeds of $89.000,000, defraud Plaintiff, and other creditors, to evade income taxes, make fraudulent conveyances; obstruct justice; launder money; and extort Plaintiff**

63 Prior to the Petition Date, debtors were all directly or indirectly engaged in the investment business as part of a family office founded by Drs. Anthony and Olga Ivankovich, who are the managers of Debtor A&O Family (FL).

64 Steven Ivankovich, the son of Drs. Anthony and Olga Ivankovich, was the manager of Debtors Atlas P2, Ivankovich Family LLC, and A&O Family (IL). Drs. Anthony and Olga Ivankovich, individually and through their trusts, own 99.25% of A&O Family (FL). Dr. Anthony Ivankovich indirectly owns 80% of Debtor Atlas P2. Debtor Ivankovich Family LLC and A&O Family (IL) are owned by North American Property Ventures Ltd., a Grand Cayman Company ("North American")

digital accounts, including but not limited to any digital portal, wallet or cloud storage site, or utility.

11. **TURNOVER AND COOPERATION (NON-PARTIES):** All non-parties, including banks and other financial institutions, to whom or which the Receiver shall serve this Order, and who or which are in the possession or control of, or with access to, any Assets, Accounts, books and records of Ivankovich, and/or the Transferred Assets, shall ***immediately*** turn them over to the Receiver upon request by the Receiver, and shall provide their complete cooperation to, and expeditiously respond to inquiries and discovery requests by, the Receiver to comply with the provisions and directives of this Order.

12. **SALE OF PERSONAL PROPERTY:** To the extent necessary to satisfy the Judgment amount plus all accrued interest, the Receiver is authorized, ***without further Order of this Court***, to sell or otherwise liquidate all personal property of Ivankovich through public auction or private sale in accordance with the Receiver's business judgment, provided that the property is sold for no less than 2/3 of the fair market value as determined by the Receiver.

13. **SALE OF REAL PROPERTY:** The Receiver shall seek and obtain this Court's prior approval before he may sell the Real Property. In any sale motion the Receiver may file, the Receiver may propose to utilize a real estate broker of the Receiver's choosing provided that the property is marketed through the Multiple Listing Service and is sold for no less than 2/3 of the fair market value as determined by the Receiver and the broker he engages. If this Court authorizes the Receiver to sell any real property, the proceeds of the sale shall be deposited in the Receivership Account and remitted to the Judgment Creditor up to the amount owned under the Judgment.

14. **BREAK ORDER:** The Receiver shall have the right to break any locks necessary

#11181927v1

to gain access to any real property of Ivankovich, and the local police department in the jurisdiction in which the property is located shall cooperate with and assist the Receiver to gain entry to such property.

15. **STAY OF LITIGATION, PROCESS, AND EXECUTION:** A stay is hereby imposed against, and all persons and entities are hereby enjoined and prohibited from, executing, garnishing, attaching, levying, and/or encumbering, or commencing or continuing any litigation affecting (i) any and all Assets, Accounts, accounts receivable, profits and income of Ivankovich, or (ii) any and all of the Transferred Assets and/or any Accounts in which they are maintained.

16. **RETENTION OF PROFESSIONALS:** The Receiver may hire, engage, retain and employ any attorney, accountant, investigator or other professionals to represent and/or provide support to the Receiver or to provide services consistent with the Receiver's duties pursuant to this Order.

17. **RECEIVER'S REPORTS TO THE COURT:** Within thirty (30) days after each calendar quarter, the Receiver shall file with the Court a report (the "***Report***") of the status of his efforts to fulfill his duties under this Order during the three months comprising the previous calendar quarter (the "***Reporting Period***"). The Report shall include an accounting of the receipts and disbursements of the funds in the Receivership Account, shall specify the amount that was recovered for the benefit of the Receivership Estate, shall propose an amount to be remitted to Judgment Creditor, and shall propose the amount of the partial payment of the fee to be paid to the Receiver and his professionals, to be calculated as set forth in Paragraph 18 below.

18. **FEES AND COSTS OF THE RECEIVER AND HIS PROFESSIONALS:** As compensation for the work that the Receiver and his professionals perform and the services they render for the benefit of the Receivership Estate, the Receiver and his professionals shall be

#11181927v1

entitled to their regular hourly rates based on time expended (the "*Fee*") for the work performed and services rendered, or the reasonable fee as otherwise negotiated by the Receiver, including contingency fees as appropriate. The Receiver's rate of $1,100/hr is approved as reasonable in light of his expertise, experience and prevailing rates for similar services.

The Receiver is authorized to make a partial payment of the Fee within five (5) business days after the Receiver has filed a quarterly Report with the Court, which (i) reports that there was a recovery during the Reporting Period, and (ii) proposes a partial payment of the Fee. Within five (5) business days after the filing of the Report, the Receiver shall pay the Fee from the Receivership Account. With respect to the expenses that the Receiver and his professionals incur in connection with fulfilling the Receiver's duties under this Order, the Receiver, without further order of this Court, is authorized to pay all such expenses from funds held in the Receivership Account on a monthly basis [illegible]. The claims for fees and expenses of the Receiver and his professionals shall [illegible] priority claim [illegible] the Assets of the Receivership Estate [illegible], and all funds in the Receivership Account [illegible] claimants and creditors, whether secured or unsecured [illegible].

The Court [illegible] initial [illegible] 00,000.00, which shall be paid to the [illegible].

19. LIMITATION OF LIABILITY: The Receiver and his professionals shall not have any personal or professional liability for any of their acts or omissions in connection with this Receivership, except for any wilful and wanton acts and omissions that they may commit. The Receiver and his professionals shall be held harmless from and relieved of any and all liabilities associated with the activities of the Receivership.

20. BOND: The Receiver shall serve without bond.

21. NOTICE: Respondent's counsel or the Receiver shall personally serve a copy of

this Order upon Ivankovich as soon as practicable.

22. **MODIFICATION OF THIS ORDER:** The Receiver may seek leave of this Court to modify this Order to provide additional powers and authority to the Receiver as it deems necessary and appropriate to fulfill his duties under this Order.

**DONE** and **SO ORDERED** in on this _____ day of May, 2025:

William Stewart Boyd #1760
Judge

# PLAINTIFF'S EXHIBIT 4

**i. Reasonable inquiry would have unveiled Steven's conduct subjecting him to Illinois jurisdiction and Steven's doppelganger theory were not well grounded in fact.**

Beermann's conduct related to the jurisdiction argument is sanctionable because they asserted in Steven's *Motion to Quash and Dismiss* several claims that would not have survived reasonable inquiry. This is true even if Beermann attorneys honestly believed Steven's claims were well grounded in fact or law.

First, Steven asserts, "Jeanette cannot credibly allege that the parties' 'matrimonial domicile' was in this state at the time the cause of action arose because their matrimonial domicile is indisputably in Florida." Mot. Quash Dismiss at 11. Another claim was that "Steven was living in Florida at the time the cause of action arose." *Id.* Most surprisingly, Beermann's attorneys certified the statement that "Steven has done nothing which would subject him to the personal jurisdiction of this Court." *Id.* at 14. At the time Beermann signed and filed this motion, it was unreasonable to believe that any of these statements were true. Had Beermann engaged in a reasonable inquiry before filing the *Motion to Quash and Dismiss*, it would have been revealed that Steven had several residences at the time the cause of action arose, the parties were living separate and apart, and Steven engaged in multiple acts subjecting him to Illinois jurisdiction.

Steven admits that at some point in October 2021, "Jeanette unilaterally took the parties' children to a short term AirBNB they had rented in Illinois for the period of September 1, 2021 – December 18, 2021 which lease later extended through March 31, 2022." Mot. Quash Dismiss at 3. On December 16, 2021 Steven signed a lease for a fully furnished apartment located at 920 W. George St. Chicago, IL 60657. Ex. M1 – Resp. Mot. Quash. This all took place at least four months before Beermann certified and filed the *Motion to Quash and Dismiss* for Steven on April 15, 2022. Had Beermann conducted any investigation, this conflicting information would have been unveiled since Jeanette's counsel was able to find this information and turn it over to Beermann

as soon as they discovered it. It is clear Beermann either failed to conduct any inquiry into the certified statement, or Beermann knew Steven had signed this lease and still proceeded with their argument through hearings. Taking either scenario as true, this conduct is sanctionable pursuant to Rule 137.

The most concerning of Beermann's certifications is that Steven has done "nothing" which would subject him to the jurisdiction of Illinois. Even a minimal reasonable inquiry would have revealed that Steven conducts business through multiple Illinois LLCs and owns real estate in Illinois. A simple name search of Steven Ivankovich in Enterprise Justice (formerly Odyssey) and Pacer[2], in other words a reasonable inquiry, would have revealed a number of cases in the Circuit Court of Cook County and the United States District Court for the Northern District of Illinois that Steven or one of his many LLCs is a party to.[3] The pleading stating Steven has done "nothing" which would subject him to personal jurisdiction of this Court is unfounded and untrue, and the pleading was certified without any reasonable inquiry as required by Rule 137.

Beermann argues this portion of the pleading was well-grounded in fact and just because contradictory evidence exists rebutting their argument they should not be punished. The existence of some facts provided by Steven—a Florida driver's license, a Florida voter registration, and Steven's oral assertions about paying taxes in Florida -- does not mean that these claims were well-grounded in fact, much less indisputable.

In fact, it was unreasonable for Beermann attorneys to rely solely on Steven's recitation of facts. When there are no alternative avenues to pursue reasonable inquiry, it may be reasonable for an attorney to rely on their client's recitation of facts. In [illegible], the plaintiff's attorney relied

---

[2] Enterprise Justice (formerly Odyssey) is the Circuit Court of Cook County Clerk's Office filing and record keeping system. Pacer is the Federal [illegible] filing and record keeping system.
[3] + section B(3)(a)(iii) of this Opinion and Order.

heavily on her client's recitation of facts about the defendant breaching an oral agreement that took place with no witnesses. *See Couri v. Korn*, 202 Ill. App. 3d 848, 856 (1990). The plaintiff was the only person who could provide the facts, so the attorney met their duty of reasonable inquiry under Rule 137. *Id.* The instant case is distinguishable from *Couri* because Beermann attorneys had avenues other than Steven's recitation of facts through which to pursue reasonable inquiry, such as Steven's LLC business records, personal and business leases, property records, court records, the school registration of his children, and so on. Most importantly, Beermann could have simply searched their client's name and the search would have uncovered the same chancery case and federal district case Jeanette found and gave to Beermann, in which Steven admitted to being an Illinois resident and having a *vacation* home in Florida.

Moreover, throughout these proceedings, Jeanette provided Steven with information disputing Steven's doppelganger theory. Jeanette provided pictures of Oscar Mouton that displayed Oscar's multiple arm tattoos. To dispute the doppelganger theory she provided pictures of Steven, taken by Walter B[illegible]er at the time he served Steven, revealing Steven's inkless arms. Yet, Beermann and Steven still proceeded with the doppelganger defense theory.

As noted above, on November [illegible]7, 2025, Steven was properly impeached regarding his tattoos. Steven gave conflicting testimony about his tattoos and the coloring of them. When asked about Oscar's tattoos it became clear Steven's alleged tattoos were not even in the same location as Oscar's.

These facts indicate Beermann failed to perform a reasonable conflict check or due diligence when vetting Steven as a new client. Beermann failed to perform due diligence while preparing their pleadings and petitions for this case. Beermann merely relied on their client's recitation of facts and failed to perform any independent inquiry of said facts before presenting

them to this Court. The falsity of the statements certified by Beermann could have been uncovered through reasonable inquiry and proper due diligence. It was not reasonable for Beermann to believe the facts set forth in the *Motion to Quash and Dismiss* were well grounded in fact at the time they certified the pleading.

**ii. Steven and Beermann should have withdrawn the *Motion to Quash and Dismiss* prior to their March 7, 2022 attempt**

As more and more uncontroverted evidence was unveiled, defeating Steven's arguments, Beermann should have withdrawn the *Motion to Quash and Dismiss* to prevent either party from incurring needless fees and prevent further delay. As noted above, on June 7, 2022, when Jeanette filed her response to the *Motion to Quash and Dismiss*, she provided information that directly contradicted Steven's arguments that he had done "nothing" to avail himself to Illinois jurisdiction and that it was Oscar Mouton who was served.

Jeanette provided Beermann and Steven with information regarding multiple court cases in Illinois where Steven claimed to have a home in Illinois and only a vacation home in Florida. This evidence was presented to Steven and Beermann on June 7, 2022 in Jeanette's Reply to *Motion to Quash and Dismiss*. In sum, by June 7, 2022 Jeanette's counsel had provided the following information to Steven and Beermann (1) Steven's October 28, 2020 testimony stating he resided in Illinois and had a *vacation* home in Florida from case1:20-cv-04985 (2); Steven's signed affidavit stating he resided in Illinois in October 2021 from case 2019CH14866; and (3) a 2021 lease for an apartment in Chicago, IL signed by Steven as a representative of Atlas, LLC. Rather than withdrawing the *Motion to Quash and Dismiss*, Steven and Beermann proceeded to argue Steven resided in Florida from 2019-2021 and had done "nothing" to avail himself to Illinois jurisdiction.

not limited to, Contessa Marine Research LLC, P2 Portfolio Managing Member LLC, Old Town Property Ventures LLC, Overlook Managing Member LLC, Downtown Property Ventures LLC, IMG Marine, Ivanmor, Atlas Apartment Homes LLC, Glencoe Family Dwelling LLC, North American Property Ventures Ltd., any other LLCs later discovered and any LLCs deemed by this Court to be the alter egos of Ivankovich. The Receiver shall *not* take control or possession of any asset that has filed for bankruptcy in the Southern District of Florida including Ivankovich Family LLC, A&O Family LLC (Florida), and A&O Family LLC (Illinois).

4. **ASSETS AND ACCOUNTS:** The Receiver shall have exclusive ownership, control, and possession of, and access to, the Assets, including all bank, brokerage, investment and other accounts wherever located (collectively, the "*Accounts*") and shall become a signatory on all such Accounts and have the exclusive authority to make all decisions regarding those Assets and Accounts, including without limitation making deposits to and disbursements from all Accounts consistent with the mandates of this Order.

5. **RECEIVERSHIP ACCOUNT:** The Receiver shall open a receivership account (the "***Receivership Account***") in the name of Neil M. Levin, Esq., as Receiver of the Estate of Ivankovich, and shall deposit into such account all funds that he obtains or recovers in connection with fulfilling his duties under this Order. The Receiver shall be the sole signatory on this Receivership Account, which may be a checking account from which the Receiver may issue checks or otherwise make transfers consistent with this Order. The Receiver may utilize the funds in the Receivership Account to pay expenses of the Receivership Estate in the ordinary course of business and without further order of this Court, provided that such payments are consistent with this Order and subject to review and final Order of the Court. The Receiver may employ or engage fiduciary support services to open and manage any Receivership Account consistent with this

Steven has been evasive throughout the litigation before this Court. The responsibility bestowed by Rule 137 must fall on his shoulders as much as that of his attorneys. Steven advanced arguments about service and jurisdiction based on two frivolous theories, first his doppelganger and second his residency. Both arguments were unsubstantiated and unreasonable at the time of filing.

First, Rule 137 sanctions are appropriate because Steven's claims about his doppelganger were unreasonable at the time of filing. Steven states, in writing, that "[a]s set forth on the attached affidavits of both Steven, Mr. Mouton, and Joseph Seinitz, Jeanette has indisputably failed to personally serve Steven….Service on Steven's doppelganger is not, as a matter of law, a valid substitute for service on him." Mot. Quash. Dismiss at 6. This Court found that the theory was "incredible, unpersuasive, and not supported by law or fact." Order at 6, March 24, 2023.

Second, it was unreasonable for Steven to claim he had no contacts with Illinois at the time of filing[4]. Steven's *Motion to Quash and Dismiss* states that:

> "Steven has taken no acts in Illinois which affect interests located in Illinois. He does not live here, he does not work here, and has done nothing to purposefully avail himself of the benefits and protections of Illinois' laws and simply does not have the requisite level of contacts required which would require him to defend himself in an Illinois courtroom."

Mot. Quash Dismiss at 14. In response, this Court [illegible] "it would be far-fetched to conclude that Steven did not commit any act in Illinois giving rise to Jeanette's filing for dissolution of marriage under the Long Arm Statute." Order at 14, March 24, 2023.

[4] Steven has raised jurisdictional issues in at least three cases: [illegible] dissolution matter, the 20[illegible]CH14866 matter, and a matter in federal court [illegible] before this dissolution matter was filed. In this federal matter, Steven attempted to excuse his absence from [illegible] by claiming [illegible] residence in Chicago that his Florida dwelling was a "vacation home". Hr'g, July 10, 2024; Zan Zhai Holdings, LTD v. Steven Ivankovich, 1:20-cv-4985 (N. D. Ill. 2021).

Mr. Lynch had actual knowledge when he filed the complaint signed under the penalties of perjury by Nancy Webber, as Manager of Tyle Atlas LLC, that Nancy Webber was not a manager or member of Tyler Atlas LLC. Mr. Lynch nevertheless permitted and filed the perjurious complaint and perjurious affidavit. Mr. Lynch, when informed Nancy Webber had filed perjurious affidavits refused to withdraw the complaint "doubled down" by filing an unauthorized American Arbitration Association ("AAA") claim, and a second Tyler Atlas complaint against Plaintiff alleging Plaintiff committed malpractice by failing to take an appeal for Tyler Atlas. Mr. Lynch filed the malpractice complaint notwithstanding that Mr. Lynch knew then and there in truth and fact, Plaintiff had no authority to represent Tyler Atlas and that Mr. Lynch had actual knowledge that the Plaintiff was not counsel in the Tyler Atlas case upon which Mr. Lynch sued. Mr. Lynch knew, then and there Tyler Atlas was represented by counsel of record other than Plaintiff, but nonetheless, Mr. Lynch's conduct was done intentionally, willfully, and with malicious intent not to preserve and protect his alleged client, Tyler Atlas. Instead Mr. Lynch's conduct was willfully and knowingly done to unlawfully target Plaintiff, and for his real client Steven Ivankovich, as set forth herein, for the purpose(s) to obstruct justice, aid abet Steven Ivankovich's fraud, aid and abet Steven Ivankovich to circumvent existing injunctions, and to extort Plaintiff to be complicit in the torts and crimes being committed by Steven Ivankovich.[1]

19 Venue is proper in Palm Beach County, Florida. Plaintiff is a resident of Palm Beach County, Florida. The engagement agreement was executed in Palm Bech County Florida, and the payments required were to be made to Plaintiff in Palm Beach County, Florida.

---

[1] Mr. Lynch's tortious actions are not protected by the "Litigation privilege" doctrine

false pleadings. Beermann failed to do any investigation to determine if their pleadings were well grounded in fact, as required by Rule 137. Once presented with evidence that their motion was not well grounded in fact, Steven and Beermann continued to proceed on the falsely plead motion.

Therefore, this Court finds it is appropriate to sanction Steven and Beermann each $10,000.00 for each day of hearing their falsely plead and uninvestigated *Motion Quash and Dismiss* precipitated. The falsely plead and uninvestigated *Motion to Quash and Dismiss* and failure to withdraw the same resulted in seven (7) days of unwarranted hearings. Thus, Steven and Beermann shall each be sanctioned $70,000.00.

**7. Beermann violated Circuit Court Rule 13.11 when they made an oral argument about service that misrepresented Illinois statute.**

Jeanette calls for sanctions against Beermann under Circuit Court of Cook County Rule 13.11, which reads as follows: "lawyers shall not knowingly misrepresent, mischaracterize, misquote or miscite facts or authorities in any oral or written communication to the court." Ill. R. Cir. Ct. Cook Cnty. 13.11.

**a. Beermann misquoted and misrepresented a statute in violation of Local Rule 13.11.**

During the January [illegible], 2025 hearing on Steven's *Motion to Quash and Dismiss*, Attorney Field of Beermann improperly relied on part of the Illinois process of service statute, 735 ILCS 5/2-202 and [illegible] of the Illinois Code of Civil Procedure. During oral arguments, Attorney Field omitted the relevant section about out-of-state service, which is 735 ILCS 5/2-208(b).

The matter at issue was the validity of the service of process on Steven in the State of Florida. Attorney Field argued that service was invalid in part because the server's agency was defunct and he was not appointed as an individual server. It is of note that Beermann failed to include this argument in any document filed regarding the *Motion to Quash and Dismiss*.

The relevant portion of the hearing is as follows:

THE COURT: Right. But what why does that -- because then the next step is that why does that render his service not valid?
MR. FIELD: Because the agency was appointed, he wasn't.
THE COURT: Do you have case law to support that?
MR. FIELD: The statute [5/2-202 and 203] says it.
THE COURT: Okay. I just want to make sure if that's what you're relying upon. Okay.

Tr. 115:24-116:8, Jan. 11, 2023.

In a previous order this Court "[found] there to be a lack of law and fact to support Steven's claim that Butler [the process server] did not have the proper authority and licensing to properly effectuate service on Steven." Order at 9, March 24, 2023. Beermann did not cite appropriate law to show that the process server did not have the authority and licensing, and they misrepresented the statute as applying to out-of-state service. Thus, they violated Circuit Court of Cook County Local Rule 13.11.

b. **Beermann cannot be sanctioned by this Court under Circuit Court of Cook County Local Rule 13.11**

The Court cannot issue a sanction under Rule 13.11 due to the existing regulatory schemes in Illinois. Rule 13.11 closely tracks Illinois Supreme Court Rule 3.3 in the Rules of Professional Conduct:

> (a) A lawyer shall not knowingly:
> (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
> (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.
> Ill. Sup. Ct. R. Prof'l Conduct 3.3.

"The power to discipline matrimonial lawyers is vested with the ARDC [Attorney Registration and Disciplinary Commission] and the Supreme Court, not the trial court." *In re Est. of Weber*, 2021 IL App [illegible] ¶ [illegible] (citing *In re Marriage of Landfield*, 209 Ill. App. 3d 678, 705 (1991)); *see also People ex rel. Brazen v. Finley*, 146 Ill. App. 3d [illegible], 754 (1986), *aff'd*

(explaining that Circuit Courts cannot enforce disciplinary rules because the supreme court established a scheme for investigating and disciplining attorneys through the ARDC). Therefore, the Court may not sanction Beermann for violating Local Rule 13.11.

**c. Beermann can be held in contempt of court pursuant to Local Rule 13.11.**

Even still, this Court "is vested with inherent power to enforce its orders and preserve its dignity by the use of contempt proceedings." *People v. Warren*, 173 Ill. 2d 348, 368 (1996). Direct contempt of court is defined as "conduct calculated to embarrass, hinder or obstruct the court in its administration of justice or to derogate from its authority or dignity or bring the administration of law into disrepute." *People v. Halprin*, 119 Ill. App. 3d 922, 928 (1983). In one divorce case, the First District Court of Appeals upheld a circuit court's contempt order against attorneys who violated the Illinois Rules of Professional Conduct. *See In re Marriage of Newton*, 2011 IL App (1st) 090683, ¶ 4. Beermann violated Local Rule 13.11 when they misrepresented 735 ILCS 5/2-202, 203, and 208 and could be held in contempt because it obstructed this Court's pursuit of justice. While Beermann engaged in sanctionable conduct and violated local county rule, Rule 13.11, at this time, this Court chooses not to find Mr. Field and/or the Beermann firm in contempt of court *sua sponte*.

This Court strongly advises Mr. Field and the attorneys at Beermann who assisted Mr. Field in researching, drafting, and appearing in court in this matter to reconsider the oath they took before being authorized to practice law in Illinois. This Court finds Beermann has not faithfully discharged their duties as Steven's attorneys, nor have they done so to the best of their ability. Time and time again in this case Beermann contends they are merely zealous advocates for their client; however, there is a stark difference between zealous advocacy and blatant disregard of the law.

EXHIBIT C

GAG_ATLAS_1341

**Based on the** above analysis, IT IS HEREBY ORDERED:

A. **Steven** shall pay **$350,000.00 in** attorney's fees to **Jeanette as sanctions for his improper** conduct **pursuant to 750** ILCS 5/508(b).

   a. Judgment is entered in favor Jeanette Ivankovich against Steven Ivankovich for the amount of $350,000.00. Steven shall pay this amount to Jeanette's attorney of record within thirty (30) days from the date of entry of this Order.

B. **Beermann** shall pay **$70,000.00** in Rule 137 **sanctions to Jeanette as penalty for the violation** of Rule 137 as it relates to the *Motion to Quash and Dismiss*. **In accordance with** Rule 137, the attorney who signed the pleading **shall be liable for the sanction. Therefore**, attorney Thomas Field (attorney Number 20095) **shall pay the $70,000.00 in** sanctions.

   a. Judgment is entered in favor Jeanette Ivankovich against Thomas Field for the amount of $70,000.00. Attorney Field shall pay this amount to Jeanette within thirty (30) days from the date of entry of this Order.

C. **Steven** shall pay $70,000.00 in fines for Rule 137 sanctions to **Jeanette for the violation of Rule** 137 [illegible]

   a. Judgment is entered in favor Jeanette Ivankovich against Steven Ivankovich for the amount of $70,000.00. Steven shall pay this amount to Jeanette's within thirty (30) [illegible]

DATED: 12/16/2024

*[signature] L. Flannigan #1929*

Honorable [illegible] Flannigan

# PLAINTIFF'S EXHIBIT 5

Atty. No. 26828

**IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS**
**COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| | ) | |
| JEANETTE IVANKOVICH | ) | |
| Petitioner, | ) | |
| | ) | No. 2021 D 9220 |
| and | ) | |
| | ) | |
| STEVEN IVANKOVICH, | ) | |
| Respondent. | ) | |

**ORDER**

This matter coming on to be heard on the Petitioner's, Jeanette Ivankovich ("Jeanette"), verified Ex-Parte Emergency Petition for Turnover of Funds, *Instanter* and for Temporary Restraining Order and/or Preliminary Injunction, supported by Jeanette's affidavit, Jeanette appearing personally and through counsel, the Court having heard the evidence, the Court having jurisdiction and being advised in the premises;

**THIS COURT HEREBY FINDS:**

A. [illegible] is an emergency based upon the [illegible] testimony of Jeanette Ivankovich and submitted affidavit and corresponding Emergency Petition.

B. Jeanette has established that she has an interest that is in need of protection.

C. [illegible] Dissolution of Marriage, which requests that an equitable portion of the marital estate be allocated to her and that she be awarded temporary and final support.

D. [illegible] sequester or dispose of marital funds and [illegible] if he is not enjoined.

E. [illegible] be immediately and irreparably damaged if Steven is not enjoined from dissipating and tra[illegible] not limitation, Steven has:



#10111818v1

i. Transferred in excess of $10,000,000 from accounts #[redacted], [redacted], and [redacted] to international locations in between January 1, 2023 and January 31, 2024;

ii. Paid no less than $859,000 to Allison Rub-Rodriguez, PA, Gary Goldstein, Chuhak & Tescon P.C., Katz & Stefani LLC, and Beermann LLP from accounts #6357, #7298, #8267 between January 3 2023 and January 30, 2024; and

iii. Paid approximately $543,000 from account #[illegible] as and for credit card payments between January 1, 2021 through December 31, 2021.

F. Jeanette has no adequate remedy at law to protect her interests if Steven is not restrained from removing, transferring, or using more marital funds, reducing the marital estate, concealing assets, dissipating assets, and depriving Jeanette of her rightful share of them.

G. Jeanette has proven the material allegations to establish her right to a mandatory injunction to compel Steven to restore all of the funds he has taken from the marital accounts, even if not in the parties' names.

H. A temporary restraining order should issue without notice to Steven, in as much as it clearly appears from Steven's conduct that notice will cause Steven to take actions to sequester, transfer, and use marital funds that will irreparably damage the marital estate before the time for responding as elapsed and before the injunction can issue.

I. Damage to Steven as the result of this injunction is unlikely.

J. Bond is waived.

K. The entry of a temporary restraining order will preserve the *status quo* until the hearing on the motion for a preliminary injunction.

L. This motion should be heard as an ex-parte emergency petition for the reasons previously stated, and because, if Steven is not immediately enjoined from the described actions that reduce and dissipate the marital estate and immediately compelled to return assets and funds that he has taken, Jeanette will be deprived of an equitable portion of the marital estate, and the support of Jeanette will be jeopardized.



#10111818v1

Notice to Steven will only cause Steven to accelerate his activities in placing marital property beyond the reach of Jeanette and this Court.

M. JP Morgan Chase Bank, N.A. should be joined pursuant to 735 ILCS 5/2-405, 406 and 750 ILCS 5/403 as a necessary party as the Bank is in possession holding the funds at issue and has an interest in the lawful disposition of the funds. In addition, the Bank is a necessary party that should be joined to allow for the complete determination of the question before this Court, namely the preservation of the assets it holds. JPMorgan [illegible] is a necessary party to this action to enforce this Order and for Jeanette to obtain necessary [illegible] from the Bank.

N. [illegible] accounts #0157, #0259, #0953, #0958, [illegible], #2119, #2529, #2532, #2333, [illegible], #3927, #3935, #3968, #5221, #5720, #5825, #5830, [illegible], #7209, #7225, #7266, 7298, #7313, [illegible], #8738, #8755, #9165, #9652, [illegible] 1402 and are, therefore, subject to his creditors, [illegible].

O. [illegible] from various LLC accounts at JPMorgan [illegible] paying personal expenses from these accounts, [illegible] this Court, [illegible] paying approximately $224,000.00 to Beermann LLP to [illegible].

P. [illegible] Court that Steven has no authority to [illegible] out of these accounts [illegible] for his personal expenses. However, based on the pleadings [illegible] this hearing, the Court finds this is not accurate and Steven has interests in the LLCs and [illegible].

Q. [illegible]

IT IS HEREBY [illegible]

1. JP Morgan Chase Bank, N.A. is joined as a third-party defendant for the purpose of



#10111818v1

enforcement of this Order;

2. Except as otherwise provided, JP Morgan Chase Bank, N.A. is enjoined and restrained from transferring any and all funds from accounts: #0157, #0259, #0953, #0958, #1122, #1157, #1268, #1275, #1363, #1371, [illegible], #1602, #2008, #2119, #2529, #2532, #2538, #2568, #2752, #2833, #3095, #3395, #3598, [illegible], #5221, [illegible], #5830, [illegible], #6166, #6182, #6287, #6357, [illegible], #7191, #7209, [illegible], 7298, #7313, #7321, #7515, #7568, #7720, 7866, [illegible], #8592, #8662, #8693, [illegible], #9662, [illegible] and/or any and all other accounts in which Steven Ivankovich is an authorized user or has signatory authority, to ensure the status quo;

3. [illegible] acting at his direction is enjoined [illegible] disposing of any and all funds from accounts [illegible], #1268, #1275, #1363, #1371, #1380, #1398, #1602, [illegible], #3598, #3681, #3927, #3935, [illegible], #6357, #6379, #6930, [illegible], #7225, #7266, 7298, [illegible], #7568, #7720, 7866, #8105, #8261, #8592, [illegible] and/or any and all other accounts in which Steven Ivankovich is an authorized user or has signatory authority to ensure the status quo;

4. [illegible] is enjoined from transferring, [illegible] disposing of marital funds or assets, pending [illegible] in this case;

5. [illegible] this Order.

6. [illegible] a.m. and shall expire on April [illegible] p.m. unless extended by the Court; and

7. [illegible] Injunction is set for April 8, 2024 at [illegible]

ENTER:



#10111818v1

Ivankovich to marital property arising from Steven Ivankocivh's ownership of the property.

H. Such other and further relief as the nature of Plaintiffs relief may require.

## JURY TRIAL ELECTION

Plaintiff elects to have this case tried by a Jury.

Plaintiff reserves all his rights to supplement or amend his Initial Complaint as permitted by Florida Rules of Civil Procedure, and any other applicable Orders of this Honorable Court.

GERSHMAN & GERSHMAN
2160 W. Atlantic Avenue, Second Floor
Delray Beach, FL 33445
Desk Telephone: (561) 684-3898
[illegible]
S/ Robert Gershman
ROBERT [illegible] GERSHMAN
Fla. Bar No. [illegible]

PLAINTIFF'S EXHIBIT 6

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

| | | |
|---|---|---|
| IN RE: MARRIAGE OF | ) | |
| | ) | |
| JEANETTE IVANKOVICH, | ) | |
| Petitioner, | ) | |
| | ) | |
| and | ) | No. 2021 D 9220 |
| | ) | Cal. E |
| STEVEN IVANKOVICH, | ) | |
| Respondent. | ) | |

**<u>THIRD PARTY LLCs' VERIFIED EMERGENCY MOTION</u>**
**<u>FOR STAY OF PRELIMINARY INJUNCTION ENTERED ON MAY 23, 2024</u>**
**<u>DUE TO PENDING APPEAL</u>**

NOW COME P2 Portfolio Managing Member LLC, Ivankovich Family LLC, and A & O Family LLC (collectively "LLCs"), by and through their attorneys, and for their Emergency Motion for Stay of Preliminary Injunction Order entered on May 23, 2024 Due to Pending Appeal, pursuant to Illinois Supreme Court Rule 30[illegible], state as follows:

Emergency Basis

1. This matter is an emergency because the LLCs are currently subject to a court order that would cause them millions of dollars in [illegible] process or proper legal grounds. Particularly, after [illegible] of waiting and numerous [illegible] intervening filings, this Court entered a preliminary injunction [illegible] morning, May 23, 2024 ordering turnover and control of the LLCs' assets to Jeanette and the Schiller firm [illegible] complied with within two (2) days (not business days). See [illegible] verification [illegible] Such a turnover of the LLCs' assets and accounts would [illegible] irreparable damage [illegible] and their property, which would be liquidated. To protect its rights, the LLCs [illegible] filed [illegible] appeal of the preliminary injunction. Now, this Court should grant a stay of the injunction to preserve the *status quo* and allow the appellate court to rule. Jeanette will not be prejudiced because she has other remedies.

2. The LLCs were unable to give 24 hours' notice to counsel of record, but did provide notice shortly after filing this motion, because the preliminary injunction was entered just this morning, on a Thursday before a holiday weekend, allowing for the order to take effect during that time.

**<u>Relief Requested</u>**

3. On August [illegible], 2023, Jeanette [illegible] ("Jeanette") filed her Emergency Petition for a Temporary Restraining Order and/or Preliminary Injunction and for Other Relief ("Celadon Petition").

4. On September 5, 2023, Jeanette filed her *Ex Parte* Emergency Supplement to Emergency Petition for a Temporary Restraining Order and/or Preliminary Injunction and for other Relief).

5. On September [illegible], 2023, this Court entered a temporary restraining order as to the Celadon Petition ("Sept. 2023 Order"). A true and correct copy of the Sept. 2023 Order is attached hereto as **<u>Exhibit A</u>**.

6. The Sept. 2023 Order found in pertinent part that it does not have jurisdiction over the LLCs. *See* Ex. A.

7. On September 22, 2023, this Court heard the Celadon Petition as to Jeanette's request for a preliminary injunction and continued the Celadon Petition to October 13, 2023. An order was later entered on or about September [illegible], 2023, reflecting the September 22, 2023, hearing.

8. On October 13, 2023, the Court again heard the Celadon Petition as to Jeanette's request for a preliminary injunction and continued the Celadon Petition to November 3, 2023.

9. On November 3, 2023, the Court again heard the Celadon Petition and Jeanette rested her case as to the Celadon Petition. No order was entered ruling on the Celadon Petition until May 23, 2024.

10. Occasionally, the LLCs have been forced to file combined motions to dismiss and quash, as Jeanette has sought turnover the LLCs' assets and/or sensitive financial information held by other third parties.

11. On May 23, 2024, this Court entered an order titled "Preliminary Injunction," which in pertinent part ordered:

> [illegible] Pursuant to Sections 501 and [illegible] of the Illinois Marriage and Dissolution of Marriage Act, [illegible] in any combination of the Celadon Accounts shall be wired to Schiller DuCanto & Fleck for payment of Jeanette's interim attorneys' fees and experts' fees in the amount of $425,000 in accordance with this Court's May 18, 2023 Interim Fee Award and ~~in the amount of $1,529,280.17~~[2] [illegible] 2023. Celadon shall release said funds directly to Schiller DuCanto & Fleck by wire transfer within two (2) days of entry of this Order.

5. Pursuant to Sections 501, 504, and 505 of the Illinois Marriage and Dissolution of Marriage Act, the cash held in any combination of the Celadon Accounts shall be wired to Jeanette in the amount of $651,446.38 as and for the satisfaction of this Court's child support and spousal support judgments entered on November 1, 2023, November 6, 2023, December 1, 2023, January 1, 2024, February 1, 2024, March 1, 2024, and April 1, 2024. Celadon shall release said funds directly to Jeanette within two (2) days of entry of this Order.

6. In the event the cash in the Celadon Accounts is insufficient to pay both obligations set forth in paragraphs 4 and 5 above, Celadon shall apply the cash available and continue to pay the cash [illegible] both amounts [illegible] are fully transferred to Schiller DuCanto & Fleck and Jeanette. The Court reserves jurisdiction to [illegible] pending further information on the cash availability of the accounts.

7. Pursuant to Sections 102, 501, 503(g), [illegible] and 505, in addition to the obligations [illegible] paragraphs 4 and 5 above, Celadon [illegible] to Schiller DuCanto & Fleck [illegible] to be disbursed to either of the parties upon Court Order [illegible]

[illegible]

("Preliminary Injunction"). A true and correct copy of the Preliminary Injunction is attached hereto as **Exhibit B**.

12. Also on May 23, 2024, the LLCs filed their Notice of Appeal of the Preliminary Injunction ("Appeal"). A true and correct copy of the Notice of Appeal is attached hereto as **Exhibit C**.

13. Illinois Supreme Court Rule 305(b) states in pertinent part:

> **(b) Stays of Enforcements of Nonmoney Judgments and Other Appealable Orders.**
> Except in cases provided for in paragraph (a) of this rule, on notice and motion, [illegible] to be heard, the court may also stay the enforcement of any judgment, other than [illegible] the enforcement, force and effect of appealable interlocutory orders or any other appealable [illegible] order. The stay

> shall be conditioned upon such terms as are just. A bond or other form of security may be required in any case, and shall be required to protect an appellee's interest in property.

14. In light of the appeal, the LLCs request that enforcement of the Preliminary Injunction, particularly of paragraphs 1-5 and 12-1[illegible] be stayed pursuant to Ill. Sup. Ct. R. 305(b).

15. The balance of the equitable factors weighs in favor of granting the stay, and further, the LLCs have a substantial case on the merits with respect to appeal of the Preliminary Injunction. *See Stacke v. Bates*, 138 Ill. 2d 295, 304-05 (1990). There are no specific factors to be considered, but the [illegible] has wide degree of latitude when exercising its discretion. *Id; see also Tirio v. Dalton*, [illegible]

16. One relevant factor is whether a stay is necessary to secure the fruits of appeal in the event the movant [illegible]. *Id.* Here, if the LLCs' funds are turned over to the Schiller firm or Jeanette, and their accounts controlled as ordered in the Preliminary Injunction, the funds will be lost, the LLCs [illegible] be destroyed. The LLCs are likely not to be reimbursed and moreover have [illegible] to suffer, continuing and irreparable harm in the form of reputational [illegible] damages. [illegible] stay of the Preliminary Injunction is necessary to secure the fruits of the LLCs' appeal (a [illegible] control and retention of their own funds and right [illegible] stay will not prejudice Jeanette, because the LLCs' funds are also subject to Jeanette's [illegible] being litigated before this court.

17. [illegible] the LLCs will suffer hardship. *Id.* at 307. It is obvious that [illegible] of the LLCs' [illegible] hardship for the LLCs as noted above.

18. If the Preliminary Injunction is not stayed, the status quo will be disturbed, as the LLCs' funds and [illegible] will be altered. Moreover, the Preliminary

Injunction as written orders that the LLCs' funds be used to pay the Schiller firm, not be frozen, which does not "preserve the Celadon assets" as the Preliminary Injunction purports to do. The *status quo* to be preserved by a preliminary injunction is the last, actual, peaceable, uncontested status which preceded the pending controversy. *In re Marriage of Slomka & Lenehan-Slomka*, 397 Ill. App. 3d 137, 144 (1st Dist. 2009). Preliminary injunctions are improper where they tend to change the *status quo* of the parties rather than preserve it. *In re Marriage of Slomka & Lenehan-Slomka*, 397 Ill. App. 3d 137, 144 (1st Dist. 2009).

19. As to the merits, the LLCs have a substantial case as the Preliminary Injunction was, respectfully, entered in error. [illegible]

20. In considering a preliminary injunction, courts do not determine any disputed questions of fact or law [illegible] the merits. [illegible] *Vill. of Hoffman Estates*, 2023 IL App (1st) 211536, ¶ [illegible]. However, in determining the Celadon Petition and entering the Preliminary Injunction, the Court [illegible] disputed questions of fact (*e.g.*, that the LLCs' assets are actually Steven's), [illegible] which has not even yet been brought (*e.g.*, reverse veil piercing action), and to change the *status quo* of the parties [illegible] destroying the LLCs' business operations, which [illegible] operating [illegible] effectively handing Jeanette the keys to the LLCs. Further and respectfully, the Court [illegible] granting turnover of the LLCs' property granted based on [illegible] ~~after~~ [illegible]

21. Further, Jeanette failed to establish that [illegible] has a clearly ascertained right in property of limited liability [illegible] Preliminary Injunction's contradictory findings that Jeanette [illegible] right in "Steven's interest in the LLC [sic]" (par. [illegible]) [illegible] Steven is not a 100% member of the all the LLCs; Jeanette has not established that [illegible] suffer irreparable harm without the

preliminary injunction, as there are no continuing transgressions being committed by the LLCs who have used their own assets in the ordinary course of their business and any alleged injury to Jeanette regarding the LLCs' assets could be remedied by legal relief (i.e., claims against the LLCs for money damages). Finally, Jeanette has always had an adequate remedy at law (*e.g.*, actions against the LLCs, citations to discover assets).

22. Finally, no bond should be required for the stay to take effect, because Jeanette's interests in the LLCs' assets are currently protected by her citations (despite the LLCs' assertions that they must be dismissed).

WHEREFORE, the LLCs request that the Court stay enforcement of the Preliminary Injunction, in full, or alternatively, paragraphs 1-9 and 12-14, pending further order of the appellate court.

Michael Debre (IL Bar No. [illegible])
C. Cy Porras (IL Bar No. [illegible])
CHUHAK & TECSON, P.C.
120 S. Riverside Plaza, Suite [illegible]
Chicago, IL 606[illegible]
(312) 844-[illegible]
mdebre@chuhak.com
cporras@chuhak.com

Respectfully submitted,

/s/ C. Cy Porras
[illegible]

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

/s/ C. Cy Porras
C. Cy Porras

# EXHIBIT A

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF | ) | |
| | ) | |
| JEANETTE IVANKOVICH, | ) | No. 2021 D 9220 |
| Petitioner, | ) | |
| | ) | Cal. E |
| and | | |
| | | |
| STEVEN IVANKOVICH, | | |
| Respondent. | | |

ENTERED
Judge Patrick Powers-2179
SEP 14 2023
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

**ORDER**

This cause coming before the Court for hearing on Jeanette's Emergency Petition for a Temporary Restraining Order and/or Preliminary Injunction and Other Relief and *Ex Parte* Supplement thereto (collectively "Emergency Petition for TRO"), and for presentment of non-parties, Olga and Anthony Ivankovich's Motion to Quash, counsel for (i) Jeanette Ivankovich; (ii) Steven Ivankovich; (iii) Anthony and Olga Ivankovich; (iv) Pami Grand Tex LLC, and (v) P2 Portfolio Managing Member LLC, Ivankovich Family LLC and A & O Family LLC all appearing, Steven Ivankovich not appearing, Jeanette appearing personally, the Court hearing argument of counsel and being fully advised in the premises, THE COURT HEREBY FINDS AS FOLLOWS:

A. This matter is an emergency based upon Mr. Ivankovich's current circumstances;

B. At present, the Court does not have jurisdiction over P2 Portfolio Managing Member LLC, Ivankovich Family LLC or A & O Family LLC;

C. The Court possesses personal jurisdiction over Mr. Ivankovich and with respect to the aforementioned limited liability companies, including to curtail his activities with respect to the pending proceedings;

D. Jeanette has shown that she has a clearly ascertainable right in need of protection;

E. Jeanette has shown that there is a fair likelihood that she will succeed on the merits;

F. Jeanette has shown that she will suffer irreparable harm if an injunction does not issue;

G. Jeanette [illegible]

H. The issue of whether Jeanette is required to post a bond was not addressed at the September 11, 2023 hearing and is reserved for further argument and ruling at the September 28, 2023 hearing date.

**IT IS HEREBY ORDERED THAT:**

1. A temporary restraining order is issued against Mr. Ivankovich, and anyone acting at his direction, enjoining him from dissipating, destroying, transferring, encumbering, concealing or otherwise disposing of the assets of F3 [illegible] Managing Member LLC, Ivankovich Family LLC, and A & O Family LLC held at Celadon except in the usual course of business, provided that [illegible] is required to notify Jeanette (through counsel) in writing of any intended transactions from the Celadon accounts at least 48 hours in advance of same.

2. This temporary restraining order shall remain in full force and effect until September 2[illegible], 2023 at 5:00 p.m., or any date to which the hearing on Jeanette's request for a preliminary injunction is continued, unless sooner modified or dissolved.

3. An evidentiary hearing on Jeanette's request for a preliminary injunction shall occur on September 22, 2023 starting at 1:30 p.m. and concluding at 4:00 p.m. Each party shall have one hour and 15 minutes to present his or her case at said hearing. Both parties shall appear in court in person for the hearing.

4. In the event Petitioner fails to appear at said hearing, the Court may dismiss the preliminary injunction request for want of prosecution.

5. In the event Respondent fails to appear at said hearing, the Court may enter an order of default against Respondent.

6. [illegible] and Olga Ivankovich are granted leave to file documents under seal to protect sensitive information relating to [illegible]

7. Over Petitioner's objection, both Olga and Anthony Ivankovich shall be [illegible] September 22, 2023 preliminary injunction [illegible] served upon Anthony and Olga [illegible]

8. By virtue of this order, Olga and Anthony's Motion to Quash is resolved, without [illegible] motion relating to [illegible]

Dated: [illegible]

ENTER: [illegible]

JUDGE [illegible]

**Order** Prepared by: [illegible]
BEERMANN LLP

Copies to:
[illegible]@[illegible]law.com

00201545.1

161 North Clark Street [illegible]
Chicago, Illinois 60601
312.621.9700
Firm No. 80095
mdelster@beermannlaw.com

[illegible]@gozdel.com
[illegible]as@chuhak.com
[illegible]@childadvocatelawgroup.com
[illegible]@beermannlaw.com
jkrawetz@beermannlaw.com
[illegible]law.com

# EXHIBIT B

numerous meetings with the members and officers for many of the defendants in Palm Beach County, Florida.

2 The defendant "LLCs" are organized and incorporated limited liability companies in Delaware, Illinois, and Florida. Many of the defendants collectively are part of a Family Office known as the Atlas Group. The Atlas Group makes investments in single purpose LLCs that owns real estate, investment accounts, and personal property such as boats yachts, and boat manufacturing.

3 Pilgrim Caribbean Isle LLC; Pilgrim Forest Park LLCLLC; Pilgrim Windtree LLC; Pilgrim Coulter LLC; Pilgrim Warwick LLC; Pilgrim Coulter Owner LLC; Pilgrim Warwick Owner LLC; Pilgrim Windtree Owner LLC, hereinafter referred to collectively as ("Pilgrim" or "P-5") regularly do business in Florida, and have owned during the period covered in this complaint apartment projects in Broward County, Florida, and Orlando, Florida, and through their managers and members, regularly do business in Palm Beach County, Florida.

4 Overlook Managing Member LLC ("Overlook") is a Delaware organized limited liability entity that regularly does business in Florida. It's former Manager, Steven Ivankovich, is a Florida resident, and resides in Miami Dade County, Florida. It is the owner of the membership interests of the P-5 LLC's and regularly does business in Palm Beach County, Florida. Its current manager is Mark Brown, who had numerous meetings with Plaintiff, lender representatives and borrowers in Palm Beach County, Florida.

5 Portfolio 2 Managing Member 2 LLC is a Delaware organized limited liability entity that regularly does business in Florida. It is a wholly owned subsidiary of P 2 Managing

debtor asset to be used by Steven Ivankovich to support his lavish lifestyle. The funds and asset of P-2, or the non-debtor Portfolio 2 Managing Member LLC, should have been available to pay claims, or pay the outstanding fees. The escrow was known to exist when the bankruptcy schedules were filed and intentionally not disclosed.

123. Plaintiff, Mark Brown, and David Rosendorf (chapter 11 counsel for Drs. Ivankovich) met with Dr. Olga Ivankovich to educate her on the many business interests, and companies being operated by Steven Ivankovich, the assets of those companies and her knowledge of the existence of the companies, their assets, and the source of the funds used to acquire and maintain those assets.

124. Although Dr. Olga Ivankovich tried to take control back from Steven Ivankovich, he eventually dominated his mother, and he made all decisions, including continuing to access his parents' personal investment accounts.

125. Steven Ivankovich's control caused the false abusive Tyler Atlas litigation to be filed. This was his retribution for Plaintiff's refusal to wire the Tyler Atlas settlement proceeds to his secret bank account.

126. Steven Ivankovich has a pattern of using frivolous litigation and reporting "crimes" to extort funds or to compel people to take action that he directs. These matters include having his wife Jeanette arrested; filing a false criminal complaint concerning alleging stolen marine equipment and demanding that Joe Seintz file a criminal complaint arising from the alleged "stealing" of charter payments for chartering the yacht known as "Octopussy". This pattern included Steven Ivankovich forging his former attorney's name to a lease, forging his former security person's name to an affidavit, conspiring to have himself and Jeanette sued in a phony eviction case. It includes a malicious

authorized principal to transfer assets in and out of accounts x1441, x1442, and x1443 (Exhibit 5, 7, 9). Steven is an authorized principal to transfer assets in and out of account [redacted] along with his parents, Anthony and Olga Ivankovich. (ROP 9/22/23, p. 12-15).

J. Steven has authorized every transfer of funds out of the accounts between August 1, 2022 and September 5, 2023 (Group Exhibit 16).

K. Between August 1, 2022 and September 5, 2023, a total of $64,008,739.58 has been transferred out of the accounts (Group Exhibit 16 and Exhibits 7-10).

L. The value of A&O account x1441 was $2,288,571.90 as of August 31, 2023 (Exhibit 7). The value of Ivankovich Family account x1442 was $2,259,001.80 as of August 31, 2023 (Exhibit 8). The value of P2 account [redacted] was $3,972,791.57 as of August 31, 2023 (Exhibit 9). The value of A&O account x1444 was $17,104,236.06 as of August 31, 2023 (Exhibit 10).

M. Steven testified in Case Number 20 CV 4985 in the Northern District of Illinois that he has the ability to move money in and out of LLCs freely, including for his own purpose. Steven further testified that he could populate an entity with the signing of a pen and a phone call in a matter of minutes. (Exhibit 2, pages 2, 6 and 53).

N. On August 31, 2022, Steven testified in Case Number 20 CV 4985 in the Northern District of Illinois that his net worth of as of 2020 was $55 million dollars but was utilized between 2020-2022 (during the pendency of these proceedings) to pay obligations and expenses of LLCs in which Steven had an interest (Exhibit 1, pages 23 and 57).

O. Steven, or someone on Steven's behalf, tendered the Ivankovich Family LLC Amended and Restated Limited Liability Agreement dated February 22, 2022, A&O Family LLC Operating Agreement dated December 27, 2021, and the P2 Portfolio Managing Member LLC Operating Agreement dated October 10, 2014 to Celadon Financial Group in connection with the opening of the accounts. (ROP 10/13/23, 20-23).

P. Sections 5.01 and 5.02 of the Ivankovich Family LLC agreement dated February 22, 2022 states that 100% of profits, losses, income, and deductions shall be allocated to Steven.

Ivankovich Family LLC may make distributions to its members from time to time in its discretion. (Exhibit 13).

Q. Steven has never identified any business purpose for the LLCs. The stated purpose of the LLCs is "investing" per the account application filled out by Steven at Celadon. (Exhibit 5, Exhibit 7, and Exhibit 9).

R. Some of the only liquid marital assets known at this time are the LLCs' accounts at Celadon.

S. Steven called Celadon one day after the filing of Jeanette's *Ex-Parte* Emergency Supplement to Emergency Petition for a Temporary Restraining Order and/or Preliminary Injunction and for Other Relief and made a withdrawal in the amount of $250,000 from Ivankovich Family LLC's Celadon account. (Exhibit 6). Steven did not provide any tracing or business purpose for the transfer.

T. Anthony Ivankovich's counsel represented that Anthony suffers from aphasia and provided a letter which purported to be from a physician in support thereof. (ROP 9/22/23, p.8-10)

U. Anthony Ivankovich was unable to answer the questions posed by Jeanette's counsel and spoke almost exclusively in Yugoslavian. (ROP 11/3/23, p. 19). Anthony was not a credible witness.

V. Jeanette's testimony was credible.

W. Steven, or parties acting at Steven's direction, have taken affirmative steps to deprive Jeanette and the parties' children of all financial resources including their housing, transportation, food, credit card, and money for basic living expenses.

X. The parties' marital residence, located at 235 West Menomonee and 234 West Willow, Chicago Illinois, is marital property titled in both parties' names. (ROP 10/13/23, p. 60).

Y. Jeanette and the children moved into the coach house at the marital residence on May 22, 2023. On May 25, 2023, Steven put bolts around the front gate of the coach house and then put Krazy Glue and drilled into the locks so that they could not be used. (ROP 10/13.23, p. 56, 57).

Z. G2M LLC filed a lawsuit in the Chancery Division of the Circuit Court of Cook County, Illinois, alleging that Steven entered into a lease with G2M LLC for which G2M LLC paid Steven $50,0000. The manager of the LLC is Greg Menning who worked as security for the Ivankovich family and who is personally known to Jeanette. The G2M lawsuit sought to evict Jeanette and the children from the coach house. (Exhibit 69).

AA. Steven did not disclose the alleged G2M LLC lease with Jeanette.

BB. If Jeanette and the children are evicted from the coach house they will have nowhere to go and will have no money for housing. (ROP 10/13/23, p. 63).

CC. Jeanette has received no benefit of any the $60,000,000+ funds transferred by Steven out of the Celadon accounts. (ROP 10/13/23, p. 67).

DD. Steven has not accounted for any of the funds transferred from the Celadon accounts.

EE. Someone acting on Olga Ivankovich's behalf removed the car Jeanette was using from her driveway on September 2, 2023 and it has not been returned to her. (ROP 10/13/23, p. 63-65; ROP 11/2/23 p. 46)

FF. Paul Waldman credibly testified that:

i. Celadon never received documents showing a modification of Steven's membership in Ivankovich Family LLC, P2 Portfolio Managing Member LLC, and A&O Family LLC. (ROP 9/22/23, p.66; 10/13/23, p. 19).

ii. Other individuals who have trading authority do not have the authority to withdraw funds from the accounts. (ROP 9/22/23, p. 65,66).

iii. On October 2, 2023, Anthony Ivankovich transferred $6,000,000 from account x1444. Paul Waldman spoke to a man who identified himself as Anthony Ivankovich on the telephone to verify this transaction. (ROP 10/13/23, p.25, 26).

iv. The Ivankovich Family LLC statements are addressed to the attention of Steven Ivankovich. (ROP 9/22/23, p. 101).

v. On September 11, 2023, Anthony Ivankovich signed an account application for Consilient Holdings LLC as the account owner. (ROP 9/22/23, p. 105).

vi. Steven is Vice President and Secretary of Consilient Holdings LLC (ROP 9/22/23, p. 105).

vii. Once funds are transferred from Celadon, Celadon has no records of how they were used or spent. (ROP 9/22/23, p. 76).

viii. All transfer requests between August 2022 and September 2023 (when the Temporary Restraining Order was issued) were effectuated and requested by Steven. Celadon keeps records in the ordinary course of business verifying the transactions which were entered into evidence as Group Exhibit 16.

ix. According to Celadon's records, Steven is the sole managing member of Ivankovich Family LLC. Steven requested a transfer be made from the Ivankovich Family LLC account at Celadon for $250,000 on September 5, 2023. This was after Jeanette filed her Emergency Petition for TRO on August 28, 2023. (ROP 9/22/23, p. 75).

x. The $250,000 transfer from Ivankovich Family on September 5, 2023 was in cash. (ROP 9/22/23, p. 76).

GG. Olga Ivankovich's testimony was not credible at times, for example contending that Steven did not receive any funds from the LLCs and was not employed by the LLCs. (ROP 11/3/23, p. 53,54).

HH. Steven has many interests in various LLCs including but not limited to, Ivankovich Family LLC, A&O Family LLC, and P2 Portfolio Managing Member LLC. Steven claims that his parents own and operate the various businesses but based upon the testimony of Anthony Ivankovich and Olga Ivankovich, Anthony and Olga do not have the physical and/or mental capacity to operate any LLCs. Based upon the testimony of the witnesses, the LLCs are being controlled and operated by Steven Ivankovich and not his parents. After a thorough review of all of the evidence, this Court believes that Steven holds this purse strings to these LLCs (and will continue to do so) and has transferred various monies from the LLCs to allow Steven to fund his lavish lifestyle.

II. Based upon the testimony from all the witnesses and the documentation from Celadon, the LLCs are Steven's alter ego. *People ex rel. Hartigan v. Organization Services Corp.*, 147 Ill. App. 3d 826, 831 (1st Dist. 1986).

JJ. Steven did not disclose the $50,000 he was purportedly paid by G2M LLC for the fraudulent lease of the parties' marital residence located at 235 West Menomonee Street, Chicago, Illinois and 234 West Willow Street, Chicago Illinois nor did he provide Jeanette with any of the funds (ROP 10/13/23, p. 62).

KK. Steven has failed and refused to adequately support Jeanette and the parties' minor children throughout this litigation. *See* Order entered November 6, 2023.

LL. Steven's interests in the LLC are in the nature of personal property and is presumed to be marital property under the IMDMA, Section 503, and Steven has provided no evidence to support a position that these interests are non-marital.

MM. Steven offered no testimony, evidence or witnesses to refute or contradict any of the witnesses, testimony or evidence presented in Jeanette's case.

NN. On November 3, 2023, the LLCs submitted themselves to the Jurisdiction of Illinois by filing Case Number 2023 CH 09243 in the Chancery Division of the Circuit Court of Cook County, Illinois. The filing of this lawsuit is public record and occurred on the last day of testimony in this preliminary injunction matter, as soon as proofs closed. The LLCs filed an action against Jeanette, Schiller DuCanto & Fleck, Celadon, Chase and Stifel. Steven manages all of those Plaintiff LLCs.

OO. The Illinois Marriage and Dissolution of Marriage Act, shall "be liberally construed and applied to promote its underlying purposes, which are to:

***

> (4) ***mitigate the potential harm to spouses and their children*** caused by the process of an action brought under this Act, and protect children from exposure to conflict and violence;
>
> ***
>
> (8) ***make reasonable provision for support during and after an underlying dissolution of marriage***, legal separation, parentage, or parental responsibility allocation action, including provision for timely advances of interim fees and costs to all attorneys, experts, and opinion witnesses including guardians ad litem and children's representatives, ***to achieve substantial parity in parties' access to funds for pre-judgment litigation costs*** in an action for dissolution of marriage or legal separation;
>
> ***
>
> (10) ***make provision for the preservation and conservation of marital assets during the litigation.***" 750 ILCS 5/102 (emphasis added)

PP. Properties purchased after the marriage using the distributions from a spouse's interest in a corporation is marital property, as they are considered to be purchased with marital income. *In re Marriage of Schmitt*, 391 Ill. App. 3d 1010 (2d Dist. 2009).

QQ. Per the court's September 29, 2023 Order Steven was defaulted for his failure to appear in-person for hearing on Jeanette's Emergency Petition for TRO in violation of the court orders entered on September 6, 2023 and September 14, 2023. Steven was barred from putting on his own case-in-

chief, and offered no testimony, witnesses, or evidence to refute any testimony or evidence presented by Jeanette. Steven was permitted to cross examine witnesses and make opening and closing statements. The Court has considered all evidence, exhibits and opening and closing statements in this matter.

RR. When appropriate, this court has drawn an adverse inference based on Steven's failure to testify in this proceeding. "In a civil proceeding, unlike a criminal proceeding, a party is required to testify or suffer the consequences; namely, that a trier of fact may draw adverse inference if a party refuses to testify. Nasrallah v. Davilla, 326 Ill. App. 3d 1036, 1044 (2001). An unfavorable evidentiary presumption also arises if a party, without reasonable excuse, fails to produce evidence under his or her control. In re Marriage of Leff, 148 Ill. App. 3d 792, 803 (1986); Dollison v. Chicago, Rock Island & Pacific Railroad Co., 42 Ill. App. 3d 267, 277 (1976)."

SS. Section 501 of the IMDMA states in relevant part as follows: In all proceedings under this Act, temporary relief shall be as follows:

(a) Either party may petition or move for:

> (2) a temporary restraining order or preliminary injunction, accompanied by affidavit showing a factual basis for any of the following relief:
>
> > (i) restraining any person from transferring, encumbering, concealing or otherwise disposing of any property except in the usual course of business or for the necessities of life, and, if so restrained, requiring him to notify the moving party and his attorney of any proposed extraordinary expenditures made after the order is issued; ***however, an order need not include an exception for transferring, encumbering, or otherwise disposing of property in the usual course of business or for the necessities of life if the court enters appropriate orders that enable the parties to pay their necessary personal and business expenses*** including, but not limited to, appropriate professionals to assist the court pursuant to subsection (*l*) of Section 503 to administer the payment and accounting of such living and business expenses
> >
> > ...
> >
> > (iv) providing other injunctive relief proper in the circumstances; or
>
> (3) ***other appropriate temporary relief including, in the discretion of the court, ordering the purchase or sale of assets and requiring that a party or parties borrow funds in the appropriate circumstances.***

750 ILCS 5/501 (emphasis added).

TT. Illinois "law is clear that an injunction may be binding on a nonparty." *In re Marriage of Winter*, 387 Ill. App. 3d 21, 29 (1st Dist. 2008). Therefore, Celadon may be ordered to comply with this Court's preliminary injunction.

**IT IS HEREBY ORDERED:**

1. A preliminary injunction is hereby entered against Steven Ivankovich, his officers, agents, employees, attorneys, family, business partners and anyone acting in active concert with him at his direction, enjoining him from dissipating, destroying, transferring, encumbering, concealing or otherwise disposing of the assets of P2 Portfolio Managing Member LLC, Ivankovich Family LLC, and A & O Family LLC ("Celadon Accounts") held at Celadon until further order.

2. Steven has access to funds for his ordinary life and business purposes and therefore Steven, his officers, agents, employees, attorneys and anyone acting in concert with him is completely prohibited and enjoined from transferring any funds of P2 Portfolio Managing Member LLC, Ivankovich Family LLC, and A&O Family LLC held at Celadon, until further order of Court.

3. Jeanette is not required to post bond, and bond is waived for good cause shown.

4. Pursuant to Sections 501 and 508 of the Illinois Marriage and Dissolution of Marriage Act, the cash held in any combination of the Celadon Accounts shall be wired to Schiller DuCanto & Fleck for payment of Jeanette's interim attorneys' fees and experts' fees in the amount of $425,000 in accordance with this Court's May 18, 2023 Interim Fee Award ~~and in the amount of $1,529,280.17[2] pursuant to her pending Second Verified Petition for Interim and Prospective Attorneys' Fees and Costs filed on December 14, 2023.~~ Celadon shall release said funds directly to Schiller DuCanto & Fleck by wire transfer within two (2) days of entry of this Order. PTP

[2] Interim attorneys' fees and costs in the amount of $1,029,280.17 and $500,000 in prospective attorneys' fees and costs.

5. Pursuant to Sections 501, 504, and 505 of the Illinois Marriage and Dissolution of Marriage Act, the cash held in any combination of the Celadon Accounts shall be wired to Jeanette in the amount of $651,446.38 as and for the satisfaction of this Court's child support and spousal support judgments entered on November 1, 2023, November 6, 2023, December 1, 2023, January 1, 2024, February 1, 2024, March 1, 2024, and April 1, 2024. Celadon shall release said funds directly to Jeanette within two (2) days of entry of this Order.

6. In the event the cash in the Celadon Accounts is insufficient to pay both obligations set forth in paragraphs 4 and 5 above, Celadon shall apply the cash available and continue to pay the cash as instructed above, as bonds in the Celadon Accounts mature, until both amounts ~~(totaling $2,605,726.55)~~ are fully transferred to Schiller DuCanto & Fleck and Jeanette. The Court reserves jurisdiction to instruct Celadon to liquidate any investments (bonds or securities) pending further information as the cash availability of the accounts.

7. Pursuant to Sections 102, 501, 503(g), 504, and 505, in addition to the obligations as set forth in paragraphs 4 and 5 above, Celadon shall release all available cash to Schiller DuCanto & Fleck LLP, as it becomes available, by wire transfer within two (2) days of its availability to be held in Schiller DuCanto & Fleck LLP's escrow account to be disbursed to either of the parties upon Court Order, including but not limited to Jeanette for ongoing monthly child support and maintenance and prospective attorney fees.

8. Pursuant to Sections 501 and 503, the Court reserves the right to determine if the use of the cash funds from the Celadon Accounts account is considered a loan, employment income (as a member or officer) or membership distribution to Steven.

9. Within 30 days of entry of this Order, Steven shall disclose the title and account number of all account(s) into which approximately $54,000,000 million in funds transferred from the Celadon accounts in 2022 and 2023 were placed. If said funds are no longer in the accounts, Steven shall provide a complete and full accounting of the subsequent transfer and/or use of all such funds. Steven shall

provide all records substantiating the accounting, including but not limited to account statements, checks, and wire transfer confirmations.

10. The Land Rover used by Jeanette shall be returned in working and good condition to the coach house driveway within two (2) days of entry of this Order. Steven shall also pay the automobile insurance and all reasonable expenses associated with the repair and maintenance of same.

11. Steven, and any of his agents or anyone acting on his behalf, shall be prohibited and restrained from taking any action whatsoever to remove or interfere with Jeanette and the minor children from peacefully residing at 235 West Menomonee Street, Chicago, Illinois and 234 West Willow Street, Chicago, Illinois and shall cease and desist from any further actions to deprive Jeanette and their children from maintaining their housing.

12. Jeanette shall be granted leave to file her Petition for Attorney Fees and Costs related to this injunctive matter and hearing on said request shall be non-evidentiary, in light of the substantial evidence already taken in this matter. The Court shall consider applying the funds in the Celadon accounts toward said fees at the hearing.

13. Within three business day of entry of this Order, Celadon shall send Jeanette's attorneys via email all account statements from September 1, 2023 to present and shall continue to do so each month as the account statements are issued for the LLC accounts.

14. This order is entered without prejudice to the rights or ~~claims of either~~ party.

Dated: March 12, 2024

JUDGE

ENTERED
Judge Patrick Powers-2179

CLERK OF THE CIRCUIT COURT
OF COOK COUNTY

**Order Prepared by:**
Schiller DuCanto & Fleck LLP
Attorneys for Petitioner
(312) 641-5560
Chicagoservice@sdflaw.com

**RETURN ORDER TO:**
ttfield@beermannlaw.com
jkrawetz@beermannlaw.com
mdelster@beermannlaw.com
chicagoservice@sdflaw.com
marcellus@childadvocatelawgroup.com
Jeffery.Heftman@sfbbg.com
CPorras@chuhak.com
rlehmanlaw@gmail.com
dmorriss@hinshawlaw.com

# EXHIBIT C

**This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Appellate Courts.**

**Instructions ▾**

Check the box to the right if your case involves parental responsibility or parenting time (custody/visitation rights) or relocation of a child.

☐ **THIS APPEAL INVOLVES A MATTER SUBJECT TO EXPEDITED DISPOSITION UNDER RULE 311(a).**

Just below "Appeal to the Appellate Court of Illinois," enter the number of the appellate district that will hear the appeal and the county of the trial court.

## APPEAL TO THE APPELLATE COURT OF ILLINOIS

FIRST **District**

**from the Circuit Court of**

Cook **County**

If the case name in the trial court began with "In re" (for example, "In re Marriage of Jones"), enter that name. Below that, enter the names of the parties in the trial court, and check the correct boxes to show which party is filing the appeal ("appellant") and which party is responding to the appeal ("appellee").

**In re** MARRIAGE OF

JEANETTE IVANKOVICH,

**Plaintiffs/Petitioners** *(First, middle, last names)*

☐ **Appellants** ☑ **Appellees**

V.

STEVEN IVANKOVICH et al.,

**Defendants/Respondents** *(First, middle, last names)*

☑ **Appellants** ☐ **Appellees**

To the far right, enter the trial court case number, the trial judge's name, and the Supreme Court Rule that allows the appellate court to hear the appeal.

**Trial Court Case No.:** 2021 D 9220

**Honorable** PATRICK J. POWERS

**Judge, Presiding**

**Supreme Court Rule:** 307(a)

## NOTICE OF APPEAL (CIVIL)

In **1**, check the type of appeal.
For more information on choosing a type of appeal, see *How to File a Notice of Appeal.*

**1. Type of Appeal:**

- ☐ Appeal
- ☑ Interlocutory Appeal
- ☐ Joining Prior Appeal
- ☐ Separate Appeal
- ☐ Cross Appeal

In **2**, list the name of each person filing the appeal and check the proper box for each person.

**2. Name of Each Person Appealing:**

Name: P2 PORTFOLIO MANAGING MEMBER LLC, IVANKOVICH FAMILY LLC,

*First* *Middle* *Last*

☐ Plaintiff-Appellant ☐ Petitioner-Appellant

**OR**

☐ Defendant-Appellant ☑ Respondent-Appellant

Name: and A&O FAMILY LLC
First Middle Last

☐ Plaintiff-Appellant ☐ Petitioner-Appellant

OR

☐ Defendant-Appellant ☑ Respondent-Appellant

In 3, identify every order or judgment you want to appeal by listing the date the trial court entered it.

**3. List the date of every order or judgment you want to appeal:**

Preliminary Injunction entered on 5/23/24, attached hereto as Ex. 1, which is incorrectly stamped as 3/12/24 (as confirmed on the record on 5/23/24).

Date

Date

In 4, state what you want the appellate court to do. You may check as many boxes as apply.

**4. State your relief:**

☐ reverse the trial court's judgment *(change the judgment in favor of the other party into a judgment in your favor)* and ☐ send the case back to the trial court for any hearings that are still required;

☑ vacate the trial court's judgment *(erase the judgment in favor of the other party)* and ☑ send the case back to the trial court for a new hearing and a new judgment;

☐ change the trial court's judgment to say: ______

☐ order the trial court to: ______

☐ other: ______

and grant any other relief that the court finds appropriate.

If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign by hand and print your name. Fill in your address, telephone number, and email address, if you have one.

/s/ Michael W. Debre, Chuhak & Tecson, PC
*Your Signature*

120 S. Riverside Plaza, Suite 1700
*Street Address*

Michael W. Debre
*Your Name*

Chicago, IL 60606
*City, State, ZIP*

mdebre@chuhak.com
*Email*

(312) 855-4603
*Telephone*

70693
*Attorney # (if any)*

All appellants must sign this form. Have each additional appellant sign the form here and enter their complete name, address, telephone number, and email address, if they have one.

**Additional Appellant Signature**

/s/
*Signature*

*Street Address*

*Name*

*City, State, ZIP*

*Email*

*Telephone*

*Attorney # (if any)*

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

**PROOF OF SERVICE** *(You must serve the other party and complete this section)*

| |
|---|
| In **1a**, enter the name, mailing address, and email address of the party or lawyer to whom you sent the document. |
| In **1b**, check the box to show how you sent the document, and fill in any other information required on the blank lines. |
| In **1b**, check the box to show how you are sending the document. **CAUTION:** If you and the person you are sending the document to have an email address, you **must** use one of the first two options. Otherwise, you may use one of the other options. |

1. I sent this document:
   a. To:
   Name: SEE ATTACHED SERVICE LIST
   *First* *Middle* *Last*
   Address: ____________________
   *Street, Apt #* *City* *State* *ZIP*
   Email address: ____________________

   b. By:
   ☐ An approved electronic filing service provider (EFSP)
   ☑ Email *(not through an EFSP)*
   *Only use one of the methods below if you do not have an email address, or the person you are sending the document to does not have an email address.*
   ☐ Personal hand delivery to:
   ☐ The party
   ☐ The party's family member who is 13 or older, at the party's residence
   ☐ The party's lawyer
   ☐ The party's lawyer's office
   ☐ Mail or third-party carrier

| |
|---|
| In **c**, fill in the date and time that you sent the document. |

   c. On: 6/25/24
   *Date*
   At: 5:00 ☐ a.m. ☑ p.m.
   *Time*

| |
|---|
| In **2**, if you sent the document to more than 1 party or lawyer, fill in **a**, **b**, and **c**. Otherwise leave **2** blank. |

2. I sent this document:
   a. To:
   Name ____________________
   *First* *Middle* *Last*
   Address: ____________________
   *Street, Apt #* *City* *State* *ZIP*
   Email address: ____________________

   b. By:
   ☐ An approved electronic filing service provider (EFSP)
   ☐ Email *(not through an EFSP)*
   *Only use one of the methods below if you do not have an email address, or the person you are sending the document to does not have an email address.*
   ☐ Personal hand delivery to:
   ☐ The party
   ☐ The party's family member who is 13 or older, at the party's residence
   ☐ The party's lawyer
   ☐ The party's lawyer's office
   ☐ Mail or third-party carrier

   c. On: ____________________
   *Date*
   At: ____________________ ☐ a.m. ☐ p.m.
   *Time*

**In 3, if you sent the document to more than 1 party or lawyer, fill in a, b, and c. Otherwise leave 2 blank.**

3. I sent this document:

a. To:

Name: ______________________________
*First* *Middle* *Last*

Address: ______________________________
*Street, Apt #* *City* *State* *ZIP*

Email address: ______________________________

b. By:

☐ An approved electronic filing service provider (EFSP)

☐ Email *(not through an EFSP)*

*Only use one of the methods below if you do not have an email address, or the person you are sending the document to does not have an email address.*

☐ Personal hand delivery to:

☐ The party

☐ The party's family member who is 13 or older, at the party's residence

☐ The party's lawyer

☐ The party's lawyer's office

☐ Mail or third-party carrier

c. On: ______________________
*Date*

at: ______________ ☐ a.m. ☐ p.m.
*Time*

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

**I certify that everything in the Proof of Service is true and correct. I understand that making a false statement on this form is perjury and has penalties provided by law under 735 ILCS 5/1-109.**

/s/ Michael W. Lebre
*Your Signature*

Michael W. Lebre
*Print Your Name*

70693
*Attorney # (if any)*

If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign by hand and print your name.

**SERVICE LIST**

Schiller DuCanto &Fleck, LLP
321 N Clark St., 12th Floor
Chicago, IL 60654
chicagoservice@sdflaw.com
TStanish@sdflaw.com
JInterlandi@sdflaw.com
mhandwerker@sdflaw.com
bmaul@sdflaw.com

Beermann LLP
161 N Clark St, Suite 3000
Chicago, IL 60601
ttfield@beermannlaw.com
jkrawetz@beermannlaw.com
mdelster@beermannlaw.com
ABallouta@beermannlaw.com

Mr. Jeffrey M. Heftman
Schoenberg Finkel Beederman Bell Glazer, LLC
jeffery.heftman@sfbbg.com

Celadon Financial Group, LLC
c/o Jim Kopecky and Howard Rosenburg
Kopecky Schumacher Rosenburg LLC
jkopecky@ksrlaw.com
hrosenburg@ksrlaw.com

Wedbush Securities Inc.
c/o Randy Rock
Randolph.Rock@wedbush.com

RBC Capital Markets, LLC
c/o Martin S. Kedziora and Blake Altman
kedzioram@gtlaw.com
Blake.Altman@gtlaw.com

# EXHIBIT C

**From:** Julliann Z. Caraher (Circuit Court) <jzcaraher@cookcountycourt.com>
**Sent:** Thursday, May 23, 2024 9:46 AM
**To:** Chicago Service <chicagoservice@sdflaw.com>; ttfield@beermannlaw.com; Marcellus Moore <marcellus@childadvocatelawgroup.com>; jeffrey.heftman@sfbbg.com; Cecilio I. Porras <CPorras@chuhak.com>; rlehmanlaw@gmail.com; dmorris@hinshawlaw.com
**Cc:** CCC DomRelCR1603 (Chief Judge's Office) <Ccc.Domrelcr1603@cookcountyil.gov>
**Subject:** Re: J. Ivankovich vs. G. Ivankovich (2021 D 9220)

Please find attached order.

Regards,
Court Clerk

Atty No. 26828

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

| | | |
|---|---|---|
| IN RE: MARRIAGE OF | ) | |
| | ) | |
| JEANETTE IVANKOVICH, | ) | |
| Petitioner, | ) | |
| | ) | |
| and | ) | No. 2021 D 9220 |
| | ) | Cal. E |
| STEVEN IVANKOVICH, | ) | |
| Respondent. | ) | |

**PRELIMINARY INJUNCTION**

This cause coming before the Court for evidentiary hearing on Jeanette's Emergency Petition for a Temporary Restraining Order and/or Preliminary Injunction and Other Relief and *Ex Parte* Supplement thereto (collectively "Emergency Petition for TRO"), counsel for (i) Jeanette Ivankovich; (ii) Steven Ivankovich; (iii) Anthony and Olga Ivankovich; (iv) Atlas Apartment Homes LLC; and (v) P2 Portfolio Managing Member LLC, Ivankovich Family LLC, and A & O Family LLC appearing, Steven Ivankovich failing to personally appear, Jeanette appearing personally (except for the hearing date of November 3, 2023 where she was excused by the Court from appearing due to a previous commitment), the Court considering all the evidence and testimony and having heard the closing arguments, and being fully advised in the premises, THE COURT FINDS:

A. That Jeanette has a clear and protectable right in the assets held by P2 Portfolio Managing Member LLC, Ivankovich Family LLC, and A&O Family LLC (collectively "LLCs") at Celadon Financial Group ("Celadon") as the parties' marital property; that she has just cause and reason to believe that unless enjoined and restrained from so doing, Steven will sell, assign, transfer, pledge, mortgage, hypothecate, conceal, sequester, squander, liquidate, dissipate or otherwise deal with or transact in the property or assets in his possession or under his control to such end that Jeanette will be irreparably harmed, damaged and prejudiced in that the marital property of the parties will, at the

conclusion of this litigation, no longer be available for equitable distribution to Jeanette by order of this Court and no adequate remedy at law will be available to her.

B. That Jeanette has described precisely the injury that will occur if Steven is not enjoined from further liquidation and transfer of the assets held at Celadon by the LLCs.

C. That Jeanette has shown that she has a great likelihood of success on the merits.

D. That failure of this Court to act to preserve assets for support, fees, and distribution upon the entry of final judgment will cause disproportionately greater harm to Jeanette than an injunctive order would cause to Steven.

E. That Jeanette lacks sufficient funds for the posting of a bond for the issuance of a preliminary injunction.

F. That a preliminary injunction would preserve the Celadon assets under Steven's exclusive possession and control and prevent further liquidation or diminution of assets in which Jeanette has a claim or interest.

G. Steven is a 20% member of P2 Portfolio Managing Member LLC (Exhibit 2 and Exhibit 4). Steven is an 80% member of A&O Family LLC (Exhibit 10a)[1]. Steven is the sole (100%) member of Ivankovich Family LLC (Exhibit 13 and Exhibit 17).

H. Steven failed to disclose his interests in any of the LLCs holding accounts at Celadon to Jeanette or her counsel; Jeanette only learned of the Celadon accounts, the LLCs, and Steven's sole authority to transfer funds by receiving responses to subpoenas she issued (ROP 10/13/23, p. 66, 67). Steven also did not disclose his interests in these entities in his income tax returns (Exhibits 11 and 12).

I. The LLCs have accounts at Celadon Financial Group comprised of various cash, bonds and investment assets (hereinafter collectively referred to as the "accounts"). The accounts are: x1441 (A&O), x1442 (Ivankovich Family), x1443 (P2), and x1444 (A&O) (Exhibits 5-9). Steven is the ***only***

---

[1] However, according to documents produced by JP Morgan Chase Bank N.A., Steven Ivankovich is the sole (100%) member of A&O Family LLC

authorized principal to transfer assets in and out of accounts x1441, x1442, and x1443 (Exhibit 5, 7, 9). Steven is an authorized principal to transfer assets in and out of account [redacted] along with his parents, Anthony and Olga Ivankovich. (ROP 9/22/23, p. 12-15).

J. Steven has authorized every transfer of funds out of the accounts between August 1, 2022 and September 5, 2023 (Group Exhibit 16).

K. Between August 1, 2022 and September 5, 2023, a total of $64,008,739.58 has been transferred out of the accounts (Group Exhibit 16 and Exhibits 7-10).

L. The value of A&O account x1441 was $2,288,571.90 as of August 31, 2023 (Exhibit 7). The value of Ivankovich Family account x1442 was $2,259,001.80 as of August 31, 2023 (Exhibit 8). The value of P2 account x1443 was $[illegible],791.57 as of August 31, 2023 (Exhibit 9). The value of A&O account x1444 was $17,104,236.06 as of August 31, 2023 (Exhibit 10).

M. Steven testified in Case Number 20 CV 4985 in the Northern District of Illinois that he has the ability to move money in and out of LLCs freely, including for his own purpose. Steven further testified that he could populate an entity with the signing of a pen and a phone call in a matter of minutes. (Exhibit 2, pages 2, 6 and 53).

N. On August 31, 2022 Steven testified in Case Number 20 CV 4985 in the Northern District of Illinois that his net worth of as of 2020 was $55 million dollars but was utilized between 2020-2022 (during the pendency of these proceedings) to pay obligations and expenses of LLCs in which Steven had an interest (Exhibit 1, pages 2[illegible] and 57).

O. Steven, or someone on Steven's behalf, tendered the Ivankovich Family LLC Amended and Restated Limited Liability Agreement dated February 22, 2022, A&O Family LLC Operating Agreement dated December 27, 2021, and the P2 Portfolio Managing Member LLC Operating Agreement dated October 16, 2014 to Celadon Financial Group in connection with the opening of the accounts. (ROP 10/13/23, 20-23).

P. Sections 5.01 and 5.02 of the Ivankovich Family LLC agreement dated February 22, 2022 states that 100% of profits, losses, income, and deductions shall be allocated to Steven.

Ivankovich Family LLC may make distributions to its members from time to time in its discretion. (Exhibit 13).

Q. Steven has never identified any business purpose for the LLCs. The stated purpose of the LLCs is "investing" per the account application filled out by Steven at Celadon. (Exhibit 5, Exhibit 7, and Exhibit 9).

R. Some of the only liquid marital assets known at this time are the LLCs' accounts at Celadon.

S. Steven called Celadon one day after the filing of Jeanette's *Ex-Parte* Emergency Supplement to Emergency Petition for a Temporary Restraining Order and/or Preliminary Injunction and for Other Relief and made a withdrawal in the amount of $250,000 from Ivankovich Family LLC's Celadon account. (Exhibit 6). Steven did not provide any tracing or business purpose for the transfer.

T. Anthony Ivankovich's counsel represented that Anthony suffers from aphasia and provided a letter which purported to be from a physician in support thereof. (ROP 9/22/23, p.8-10)

U. Anthony Ivankovich was unable to answer the questions posed by Jeanette's counsel and spoke almost exclusively in Yugoslavian. (ROP 11/3/23, p. 19). Anthony was not a credible witness.

V. Jeanette's testimony was credible.

W. Steven, or parties acting at Steven's direction, have taken affirmative steps to deprive Jeanette and the parties' children of all financial resources including their housing, transportation, food, credit card, and money for basic living expenses.

X. The parties' marital residence, located at 235 West Menomonee and 234 West Willow, Chicago Illinois, is marital property titled in both parties' names. (ROP 10/13/23, p. 60).

Y. Jeanette and the children moved into the coach house at the marital residence on May 22, 2023. On May 25, 2023, Steven put bolts around the front gate of the coach house and then put Krazy Glue and drilled into the locks so that they could not be used. (ROP 10/13.23, p. 56, 57).

Z. G2M LLC filed a lawsuit in the Chancery Division of the Circuit Court of Cook County, Illinois, alleging that Steven entered into a lease with G2M LLC for which G2M LLC paid Steven $50,0000. The manager of the LLC is Greg Menning who worked as security for the Ivankovich family and who is personally known to Jeanette. The G2M lawsuit sought to evict Jeanette and the children from the coach house. (Exhibit 69).

AA. Steven did not disclose the alleged G2M LLC lease with Jeanette.

BB. If Jeanette and the children are evicted from the coach house they will have nowhere to go and will have no money for housing. (ROP 10/13/23, p. 63).

CC. Jeanette has received no benefit of any the $60,000,000+ funds transferred by Steven out of the Celadon accounts. (ROP 10/13/23, p. 67).

DD. Steven has not accounted for any of the funds transferred from the Celadon accounts.

EE. Someone acting on Olga Ivankovich's behalf removed the car Jeanette was using from her driveway on September 2, 2023 and it has not been returned to her. (ROP 10/13/23, p. 63-65; ROP 11/2/23 p. 46)

FF. Paul Waisman credibly testified that:

i. Celadon never received documents showing a modification of Steven's membership in Ivankovich Family LLC, P2 Portfolio Managing Member LLC, and [illegible] Family LLC. (ROP 9/22/23, p. 66; 10/13/23, p. 19).

ii. [illegible] have trading authority do not have the authority to withdraw funds from the accounts. (ROP 9/22/23, p. 65,66).

iii. On [illegible] 2023, Anthony Ivankovich transferred $6,000,000 from account [illegible] Waisman spoke to a man who identified himself as Anthony [illegible] this transaction. (ROP 10/13/23, p.25, [illegible]

iv. The Ivankovich Family LLC statements are addressed to the attention of Steven Ivankovich. (ROP [illegible] p. 101)

v. [illegible] Ivankovich signed an account application for Consilient Holdings LLC [illegible]. (ROP 9/22/23, p. 105).

vi. [illegible] Vice President and Secretary of Consilient Holdings LLC (ROP [illegible]).

vii. Once funds [illegible] from Celadon, Celadon has no records of how they [illegible]

viii. [illegible] between [illegible] 2022 and September 2023 (when the Temporary [illegible] Order was issued) were effectuated and requested by [illegible] records in the ordinary course of business verifying the [illegible] into evidence as Group Exhibit 16.

Injunction as written orders that the LLCs' funds be used to pay the Schiller firm, not be frozen, which does not "preserve the Celadon assets" as the Preliminary Injunction purports to do. The *status quo* to be preserved by a preliminary injunction is the last, actual, peaceable, uncontested status which preceded the pending controversy. *In re Marriage of Slomka & Lenehan-Slomka*, 397 Ill. App. 3d 137, 144 (1st Dist. 2009). Preliminary injunctions are improper where they tend to change the *status quo* of the parties rather than preserve it. *In re Marriage of Slomka & Lenehan-Slomka*, 397 Ill. App. 3d 137, 144 (1st Dist. 2009).

19. As to the merits, the LLCs have a substantial case as the Preliminary Injunction was, respectfully, entered in error.

20. In considering a preliminary injunction, courts do not determine any disputed questions of fact or decide the case on the merits. *[illegible] v. Vill. of Hoffman Estates*, 2023 IL App (1st) 211580, ¶31. However, in determining the Celadon Petition and entering the Preliminary Injunction, the Court decided all types of disputed questions of fact (*e.g.*, that the LLCs' assets are actually Steven's), to decide a case which has not even yet been brought (*e.g.*, reverse veil piercing action), and to disrupt the *status quo* of the parties and nonparties by destroying the LLCs' business operations, which have been operating for years, and by effectively handing Jeanette the keys to the LLCs. Further and respectfully, the Court erred in granting turnover of the LLCs' property granted based on judgment [illegible] ruling after the hearing [illegible] same.

21. Further, Jeanette failed to establish that she has a clearly ascertained right in property of limited liability companies notwithstanding the Preliminary Injunctions contradictory findings that Jeanette has rights in the LLCs' assets (par. 4), vs. a right in "Steven's interest in the LLC [sic]" (par. LL). Moreover, even by Jeanette's own argument, Steven is not a 100% member of the all the LLCs; Jeanette has not established that she will suffer irreparable harm without the

LL. Steven's interests in the LLC are in the nature of personal property and is presumed to be marital property under the IMDMA, Section 503, and Steven has provided no evidence to support a position that these interests are non-marital.

MM. Steven offered no testimony, evidence or witnesses to refute or contradict any of the witnesses, testimony or evidence presented in Jeanette's case.

NN. On November 3, 2023, the LLCs submitted themselves to the Jurisdiction of Illinois by filing Case Number 2023 CH 09243 in the Chancery Division of the Circuit Court of Cook County, Illinois. The filing of this lawsuit is public record and occurred on the last day of testimony in this preliminary injunction matter, as soon as proofs closed. The LLCs filed an action against Jeanette, Schiller DuCanto & Fleck, Celadon, Chase and Stifel. Steven manages all of those Plaintiff LLCs.

OO. The Illinois Marriage and Dissolution of Marriage Act, shall "be liberally construed and applied to promote its underlying purposes, which are to:

***

> (4) ***mitigate the potential harm to spouses and their children*** caused by the process of an action brought under this Act, and protect children from exposure to conflict and violence;
>
> ***
>
> (8) ***make reasonable provision for support during and after an underlying dissolution*** of marriage, legal separation, parentage, or parental responsibility allocation action, including provision for timely advances of interim fees and costs to all attorneys, experts, and opinion witnesses including guardians ad litem and children's representatives, ***to achieve substantial parity in parties' access to funds for pre-judgment litigation*** costs in an action for dissolution of marriage or legal separation;
>
> ***
>
> (10) ***make provision for the preservation and conservation of marital assets during the litigation***." 750 ILCS 5/102 (emphasis added).

PP. [illegible] the distributions from a spouse's interest in a corporation is marital [illegible] purchased with marital income. *In re Marriage of Schmitt*, 391 Ill. App. 3d 1010 (2d Dist. 2009).

QQ. Per the court's September 29, 2023 Order Steven was defaulted for his failure to appear in-person for hearing on Jeanette's Emergency Petition for TRO in violation of the court orders entered on September 6, 2023 and September 14, 2023. Steven was barred from putting on his own case-in-

chief, and offered no testimony, witnesses, or evidence to refute any testimony or evidence presented by Jeanette. Steven was permitted to cross examine witnesses and make opening and closing statements. The Court has considered all evidence, exhibits and opening and closing statements in this matter.

RR. When appropriate, this court has drawn an adverse inference based on Steven's failure to testify in this proceeding. "In a civil proceeding, unlike a criminal proceeding, a party is required to testify or suffer the consequences; namely, that a trier of fact may draw adverse inference if a party refuses to testify. Nasrallah v. Davilla, 326 Ill. App. 3d 1036, 1044 (2001). An unfavorable evidentiary presumption also arises if a party, without reasonable excuse, fails to produce evidence under his or her control. In re Marriage of Leff, 148 Ill. App. 3d 792, 803 (1986); Dollison v. Chicago, Rock Island & Pacific Railroad Co., 42 Ill. App. 3d 267, 272 (1976)."

SS. Section 501 of the IMDMA states in relevant part as follows: In all proceedings under this Act, temporary relief shall be as follows:

(a) Either party may petition or move for:

(2) a temporary restraining order or preliminary injunction, accompanied by affidavit showing a factual basis for any of the following relief:

(i) restraining any person from transferring, encumbering, concealing or otherwise disposing of any property except in the usual course of business or for the necessities of life, and, if so restrained, requiring him to notify the moving party and his attorney of any proposed extraordinary expenditures made after the order is issued; ***however, an order need not include an exception for transferring, encumbering, or otherwise disposing of property in the usual course of business or for the necessities of life if the court enters [illegible] that enable the parties to pay their necessary personal and*** business expenses including, but not limited to, appropriate professionals to assist the court pursuant to subsection (l) of Section 503 to administer the payment and accounting of such living and business expenses

[illegible] providing other injunctive relief proper in the circumstances; or

(3) ***other appropriate temporary relief including, in the discretion of the court, ordering [illegible] requiring that a party or parties borrow funds [illegible]***

750 ILCS 5/501 (emphasis added).

TT. Illinois "law is clear that an injunction may be binding on a nonparty." *In re Marriage of Winter*, 387 Ill. App. 3d 21, 28 (1st Dist. 2008). Therefore, Celadon may be ordered to comply with this Court's preliminary injunction.

**IT IS HEREBY ORDERED:**

1. A preliminary injunction is hereby entered against Steven Ivankovich, his officers, agents, employees, attorneys, family, business partners and anyone acting in active concert with him at his direction, enjoining him from dissipating, destroying, transferring, encumbering, concealing or otherwise disposing of the assets of P2 Portfolio Managing Member LLC, Ivankovich Family LLC, and A & O Family LLC ("Celadon Accounts") held at Celadon until further order.

2. Steven has access to funds for his ordinary life and business purposes and therefore Steven, his officers, agents, employees, attorneys and anyone acting in concert with him is completely prohibited and enjoined from transferring any funds of P2 Portfolio Managing Member LLC, Ivankovich Family LLC, and A & O Family LLC held at Celadon, until further order of Court.

3. Jeanette is not required to post bond, and bond is waived for good cause shown.

4. Pursuant to Sections 501 and 508 of the Illinois Marriage and Dissolution of Marriage Act, the cash held in any combination of the Celadon Accounts shall be wired to Schiller DuCanto & Fleck for payment of Jeanette's interim attorneys' fees and experts' fees in the amount of $425,000 in accordance with this Court's [illegible] Interim Fee Award ~~and in the amount of $1,529,280.17~~[2] ~~pursuant to her pending [illegible] Interim and Prospective Attorneys' Fees and Costs filed on [illegible]~~. Celadon shall release said funds directly to Schiller DuCanto & Fleck by wire transfer within two (2) days of entry of this Order.

[2] Interim attorneys' fees and costs in the amount of [illegible] and [illegible] in prospective attorneys' fees and costs.

5. Pursuant to Sections 501, 504, and 505 of the Illinois Marriage and Dissolution of Marriage Act, the cash held in any combination of the Celadon Accounts shall be wired to Jeanette in the amount of $651,446.33 as and for the satisfaction of this Court's child support and spousal support judgments entered on November 1, 2023, November 6, 2023, December 1, 2023, January 1, 2024, February 1, 2024, March 1, 2024, and April 1, 2024. Celadon shall release said funds directly to Jeanette within two (2) days of entry of this Order

6. In the event the cash in the Celadon Accounts is insufficient to pay both obligations set forth in paragraphs 4 and 5 above, Celadon shall apply the cash available and continue to pay the cash as instructed above, as bonds in the Celadon Accounts mature, until both amounts (~~totaling $2,605,726.55~~) are fully transferred to Schiller DuCanto & Fleck and Jeanette. The Court reserves jurisdiction to instruct Celadon to liquidate any investments (bonds or securities) pending further information as the cash availability of the accounts.

7. Pursuant to Sections 102, 501, 503(g), 504, and 505, in addition to the obligations as set forth in paragraphs 4 and 5 above, Celadon shall release all available cash to Schiller DuCanto & Fleck LLP, as it becomes available, by wire transfer within two (2) days of its availability to be held in Schiller DuCanto & Fleck LLP's escrow account to be disbursed to either of the parties upon Court Order, including but not limited to Jeanette for ongoing monthly child support and maintenance and prospective attorney fees

8. Pursuant to Sections 503 and 504, the Court reserves the right to determine if the use of the cash funds from the [illegible] by [illegible] is considered a loan, employment income (as a member or officer) or [illegible] distribution to Steven.

9. Within 30 days of entry of this Order, Steven shall disclose the title and account number of all account(s) into which approximately $14,000,000 million in funds transferred from the Celadon accounts in 2022 and 2023 were placed. If said funds are no longer in the accounts, Steven shall provide a complete and full accounting of the subsequent transfer and/or use of all such funds. Steven shall

false pleadings. Beermann failed to do any investigation to determine if their pleadings were well grounded in fact, as required by Rule 137. Once presented with evidence that their motion was not well grounded in fact, Steven and Beermann continued to proceed on the falsely plead motion.

Therefore, this Court finds it is appropriate to sanction Steven and Beermann each $10,000.00 for each day of hearing their falsely plead and uninvestigated *Motion Quash and Dismiss* precipitated. The falsely plead and uninvestigated *Motion to Quash and Dismiss* and failure to withdraw the same resulted in seven (7) days of unwarranted hearings. Thus, Steven and Beermann shall each be sanctioned $70,000.00.

**7. Beermann violated Circuit Court Rule 13.11 when they made an oral argument about service that [illegible].**

Jeanette calls for sanctions against Beermann under Circuit Court of Cook County Rule 13.11, which reads as follows: "Attorneys shall not knowingly misrepresent, mischaracterize, misquote or miscite facts or authorities in any oral or written communication to the court." Ill. R. Cir. Ct. Cook Cnty. 13.11.

**a. Beermann misstated and misrepresented a statute in violation of Local Rule 13.11.**

During the January [illegible], 2025 hearing on Steven's *Motion to Quash and Dismiss*, Attorney Field of Beermann improperly relied on part of the Illinois process of service statute, 735 ILCS 5/2-202 and [illegible] of the Illinois Code of Civil Procedure. During oral arguments, Attorney Field omitted [illegible] out-of-state service, which is 735 ILCS 5/2-208(b).

The matter at issue was the validity of the service of process on Steven in the State of Florida. Attorney Field argued that service was invalid in part because the server's agency was defunct and he was not appointed [illegible]. [illegible] Beermann failed to include this argument in any document filed regarding the *Motion to Quash and Dismiss*.

**RETURN ORDER TO:**
ttfield@beermannlaw.com
jkrawetz@beermannlaw.com
mdelster@beermannlaw.com
chicagoservice@sdflaw.com
m[illegible]@[illegible]lawgroup.com
Jeffery.Heftman@sfbbg.com
CPorras@chuhak.com
rlehmanlaw@gmail.com
dmorriss@hinshawlaw.com

# PLAINTIFF'S EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br><br>IVANKOVICH FAMILY LLC<br>A&O FAMILY LLC,<br>A&O FAMILY LLC (Illinois),<br>ATLAS P2 MANAGING MEMBER, LLC,<br><br>Debtors.<br>_______________________________________/ | Chapter 11<br><br>Case No. 24-15755-LMI<br>(Jointly Administered)<br>24-15762- LMI<br>24-15767- LMI<br>24-15770- LMI |

**APPLICATION TO EMPLOY**
**GARY A. GOLDSTEIN, ESQ. AS CORPORATE COUNSEL**
**TO THE DEBTORS EFFECTIVE AS OF JUNE 10, 2024**

IVANKOVICH FAMILY LLC, A&O FAMILY LLC, A&O FAMILY LLC (ILLINOIS), ATLAS P2 MANAGING MEMBER, LLC (the "Debtors" and "Debtors-in-Possession"), by and through undersigned counsel, pursuant to 11 U.S.C §§ 105, 327(e), 328(a), 330, and 331, and Fed. R. Bankr. P. 2014 and 2016, as applicable as set forth herein, and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), moves to retain Gary A. Goldstein Esq., ("Goldstein") as corporate counsel for the Debtors effective as of the June 10, 2024 Petition Date when services were first rendered (the "Application"), and says:

**I. JURISDICTION**

1. This Court has jurisdiction over these cases pursuant to 28 U.S.C. 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. §1408. The statutory predicate for the relief requested herein is 11 U.S.C §§ 105, 327(e), 328(a), 330, and 331, and Fed. R. Bankr. P. 2014 and 2016.

## II. BACKGROUND AND BUSINESS OPERATIONS

2. On June 10, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11, title 11, United States Code, 11 U.S.C. § 101-1531 (the "Bankruptcy Code").

3. On June 20, 2024, this Court entered an order granting the joint administration of the Debtors Chapter 11 Bankruptcy Cases under the above styled lead case. See ECF No. 15.

4. The Debtors are operating their business and managing their affairs as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5. As of the date hereof, no trustee or examiner has been appointed in this case and no official committee has been appointed pursuant to Section 1102 of the United States Bankruptcy Code.

## III. [illegible]

6. By this Application and subject to the terms and conditions set forth below, the Debtors-in-Possession seek to employ and retain Gary Goldstein Esq. as corporate counsel to the Debtors.

7. The Debtors, as corporate entities, retain general corporate counsel to give advice on corporate governance, transactions, and any other general advice that arises in a corporate setting. As such, it is [illegible] to have legal counsel to advice on the day to day [illegible].

8. Also, the Debtors are currently involved in several litigation matters, either as plaintiffs or defendants [illegible] estate assets, which litigation was overseen and coordinated [illegible] litigation matters involving the Debtors, Goldstein [illegible] coordinate the Debtors' litigation strategy.

9. Goldstein's background, knowledge, and expertise in the area of commercial litigation and corporate law and firsthand knowledge of the pending litigation and financial affairs of the Debtors is critical to the Debtors' continued operations going forward, and ability to properly administer and defend the pending litigation.

10. Due to the special expertise and extensive amount of historical knowledge and information learned by Goldstein in the past, and [illegible] in overseeing the Debtors' past and current litigation and corporate matters, the Debtors submit that it would be more economical and efficient to retain Goldstein as the Debtors' corporate counsel instead of seeking new representation.

A. <u>Services to be Provided</u>

11. The services of Goldstein are critical to enable the Debtors' ability to properly execute their duties as debtors and debtors in possession. The Debtors wish to retain Goldstein to continue to render certain corporate legal services as requested by the Debtors including, but not limited to, strategic corporate and related advice regarding the pending litigation involving the Debtors or property of the estate. It will be important for the Debtors to coordinate the litigation, as many of the [illegible] knowledge of the Debtors' operations, knowledge which Goldstein already has.

12. Given the breadth of the litigation involving the Debtors, both in dollar amount and geographical location, which is [illegible] in other employment applications of attorneys which will be filed [illegible] with this application, the Debtors require several attorneys who [illegible] to that litigation. With cost minimization in mind, [illegible] continue to work closely with other counsel and the [illegible] the Debtors to ensure that each professional is assigned, works on, and [illegible] non-duplicative tasks. As the

person with the most extensive institutional knowledge of the Debtors, Goldstein is the best person to coordinate tasks in this case.

**B. Terms of Retention**

13. Goldstein intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in these Chapter 11 cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the orders of this Court. Goldstein will seek compensation for his services at the then-current rate charged for such services.

14. For the services set forth in this Application, including reasonable out of pocket expenses that would be required, the Debtors-in-Possession desire to pay Goldstein at the rate of $500.00 per hour.

15. Other than as set forth herein and in the Goldstein Affidavit (defined below), no arrangement is proposed between the Debtors-in-Possession and Goldstein for compensation to be paid in this case, and no agreement or understanding exists between Goldstein and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case.

16. No previous request for the relief sought in this Application has been made to this Court or any other Court.

**[illegible] BASIS FOR RELIEF REQUESTED**

17. Section 327(e) of the Bankruptcy Code authorizes the Debtors to employ corporate counsel if such employment is in the best interest of the estate, and if such attorney does not hold or represent any interest adverse to the Debtors or to the estate with respect to the matter on which such attorney is to be employed. 11 U.S.C. § 327(e).

numerous meetings with the members and officers for many of the defendants in Palm Beach County, Florida.

2 The defendant "LLCs" are organized and incorporated limited liability companies in Delaware, Illinois and Florida. Many of the defendants collectively are part of a Family Office known as the Atlas Group. The Atlas Group makes investments in single purpose LLCs that owns real estate, investment accounts, and personal property such as boats yachts, and boat manufacturing.

3 Pilgrim Caribbean Isle LLC; Pilgrim Forest Park LLCLLC; Pilgrim Windtree LLC; Pilgrim Coulter LLC; Pilgrim Warwick LLC; Pilgrim Coulter Owner LLC; Pilgrim Warwick Owner LLC; Pilgrim Windtree Owner LLC, hereinafter referred to collectively as ("Pilgrim" or "P-1") regularly do business in Florida and have owned during the period covered in this complaint apartment projects in Broward County, Florida, and Orlando, Florida and through their managers and members, regularly do business in Palm Beach County, Florida.

4 Overlook Managing Member LLC ("Overlook") is a Delaware organized limited liability entity that regularly does business in Florida. Its former Manager, Steven Ivankovich, is a Florida resident and resides in Miami Dade County, Florida. It is the owner of the membership interest of the P 2 LLC's and regularly does business in Palm Beach County, Florida. Its current manager is [illegible] who had numerous meetings with Plaintiff, lender representatives and borrowers in Palm Beach County, Florida.

5 Portfolio 2 Managing Member 2 LLC is a Delaware organized limited liability entity that regularly does business in Florida. It is a wholly owned subsidiary of P 2 Managing

upon the terms outlined in this Application and (ii) granting such other and further relief as is just and proper.

Dated: May 19, 2026

By: /s/ Eyal Berger

Eyal Berger, Esq.
Florida Bar No. [illegible]01106
eyal.berger@akerman.com
[illegible], Esq.
Florida Bar No. [illegible]94222
[illegible]@akerman.com
AKERMAN LLP
[illegible] Blvd., Suite 1800
[illegible], Florida 33301
[illegible] / Fax: (954) 463-2224

[illegible] for Debtors

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 19, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case.

By: */s/ Eyal Berger*
Eyal Berger, Esq.

# EXHIBIT A

**[Declaration]**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:

IVANKOVICH FAMILY LLC
A&O FAMILY LLC,
A&O FAMILY LLC (Illinois),
ATLAS P2 MANAGING MEMBER, LLC,

Debtors.
_______________________________________/

Chapter 11

Case No. 24-15755-LMI
(Jointly Administered)
24-15762- LMI
24-15767- LMI
24-15770- LMI

**DECLARATION OF GARY A. GOLDSTEIN, ESQ.**

Gary Goldtein. Esq. makes this Declaration pursuant to 28 U.S.C. § 1746, and states:

1. My name is Gary Goldstein. I am an attorney admitted to practice in the state of Maryland.

2. I have an office at 111 S Calvert St 27 Flr, Baltimore, MD 21201 and practice general corporate law as a sole practitioner. I currently reside at [illegible] Lands End Road Manalapan, FL. 33462 and conduct most of my practice from that location.

3. In support of the Application, I disclose the following: Unless it otherwise states, this Declaration is based upon facts of which I have personal knowledge. In preparing this Declaration, I have reviewed a list of the Debtors' secured creditor(s) and unsecured creditors. I compared this information with the information contained in my client and adverse party conflict check index system. The facts stated in this Declaration as to my relationship with the Debtors, the Debtors' creditors and the United States Trustee, and other persons employed by the Office of the United States Trustee, and those persons and entities who are defined as disinterested persons in Section 101(14) of the Bankruptcy Code are based on the results of my review of potential conflicts.

Specifically, I have conducted a search of my records and based upon my search, I do not represent any entity in any matter which would constitute a conflict of interest or otherwise impair my disinterestedness with respect to the matter on which I am to be employed.

4. I regularly maintain records in the course of my business. It reflects entries that are noted in the system at the time the information becomes known to me. I regularly use and rely upon the information [illegible] in the system in the performance of my duties and in my practice of law.

5. The professional fees and costs incurred by me in the course of my representation of the Debtors, shall be subject in all respects to the application and notice requirements of 11 U.S.C. § 330 and 331 and Rules 2014 and 2016 of Federal Rules of Bankruptcy Procedure.

6. My hourly [illegible] This rate is subject to adjustment, generally on an annual basis to reflect, among other things, experience and seniority.

7. To the best of my knowledge, I [illegible] represent any interest adverse to the bankruptcy estate, [illegible] in interest, the Debtors' respective attorneys and a[illegible] employed in the office of the U.S. Trustee other [illegible] direct or indirect claim or equity interest in the Debtors [illegible] such an interest.

8. Prepetition, [illegible] often appear along co-counsel in litigation [illegible] No amounts are owed to me by the Debtors [illegible] General Counsel Engagement Agreement on [illegible] individually and as Manager of multiple limited [illegible] Engagement Agreement established a baseline $25,00[illegible] hours per week time devoted to the

General Counsel legal services, to be adjusted as mutually agreed based upon time and results accomplished. I am also a party to a joint defense agreement among counsel relating to matters that arise in the pending Cook County, Illinois divorce proceeding between Jeanette Ivankovich and Steven Ivankovich.

9. To the best of my knowledge and belief, I do not hold any interest adverse to the Debtors or the estate with respect to the matters on which I am to be employed as required by 11 U.S.C. § § 327(e).

10. This concludes my declaration.

<u>28 U.S.C. § 1746 Declaration</u>

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 19, 2026

Gary A. Goldstein, Esq.
[illegible] 27 Flr
Baltimore, MD 21201
[illegible]
Email: [illegible].com
Mailing Address
[illegible]
[illegible]