Charles Jacob Stratmann
Plaintiff Pro Se
545 NE 17th Avenue
Fort Lauderdale, FL 33301
Telephone: (954) 873-8546
Email: jake@starboardyacht.com

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 0:26-cv-61150-PAB

Magistrate Judge Panayotta D. Augustin-Birch

CHARLES JACOB STRATMANN,

Plaintiff,

v.

STEVEN IVANKOVICH;
TOM ACKEL; DAVID HUNTER; NEIL BURELL;
SEAN BRIGHTON; RICK PINEIRO;
ED BIGGIE; MICHAEL MOORE; CAYCIE FLITMAN;
OLAFUR "OLI" HAND;
CONTESSA MARINE RESEARCH LLC;
BLUEWATER REEL ESTATE LLC;
IN-VISIONS LLC; NATIONAL LIQUIDATORS LLC;
SHM LMC, LLC, d/b/a LAUDERDALE MARINE CENTER;
BLACKSTONE GROUP INC.; MOORE & COMPANY, P.A.;
HIGHLAND HILL CAPITAL LLC;
SINCLAIR FUNDING GROUP INC.;
NEXUS CAPITAL FUNDING LLC;
ROBERT ALLEN LAW; AKERMAN LLP; AMANDA KLOPP;
JENNA M. YOSS; JOHN DOES 1-10,

Defendants.

______________________________________/

**FIRST AMENDED VERIFIED COMPLAINT FOR RICO VIOLATIONS, CIVIL THEFT, FRAUD, AND RELATED CLAIMS**

First Amended Verified RICO Civil Complaint

Stratmann v. Ivankovich et al., Case No. 0:26-cv-61150-PAB

Plaintiff Charles Jacob Stratmann ("Stratmann" or "Plaintiff"), appearing pro se in his individual capacity, files this Verified Complaint against the above-named Defendants and states:

I. PARTIES AND JURISDICTION

A. Plaintiff

Plaintiff Charles Jacob Stratmann is a natural person and citizen of the State of Florida, residing at 545 NE 17th Avenue, Fort Lauderdale, Florida 33301.

Stratmann is the founder, CEO, and Managing Member of Starboard Yacht Group LLC ("SYG"), a Florida limited liability company engaged in marine engineering, vessel service, and dealer operations since 2008.

Stratmann is also the Managing Member of Starboard Group Holdings LLC ("SGH"), the parent entity of SYG.

This complaint is filed in Plaintiff's individual capacity pursuant to 28 U.S.C. § 1654 and Rowland v. California Men's Colony, 506 U.S. 194, 201-02 (1993). Entity claims of SYG LLC and SGH LLC are preserved for amendment upon retention of counsel. Additional plaintiff classes — including family members with homestead property interests, employees with accrued wage claims, and federal secured creditors — are identified for potential joinder or amendment

upon completion of standing analysis.

1. To avoid standing confusion, Plaintiff expressly separates (i) business-to-business contractual dealings in which SYG was the operating counterparty from (ii) Plaintiff's personal injury lane. Allegations regarding SYG vendor, dealer, and customer relationships are pled as enterprise context, motive, pattern, and causation evidence; they are not pled as pro se prosecution of SYG's entity-owned claims. Plaintiff's individual standing in this Track 2 posture is grounded in direct personal injury to business or property, including personal guaranty exposure, personal liability pressure, personal reputational and earning-capacity harm, and out-of-pocket defense burden caused by the enterprise's conduct.

4a. The United States, through the Small Business Administration ("SBA"), holds a perfected first-position UCC-1 security interest in all assets of Starboard Yacht Group LLC by virtue of EIDL Loan No. 5611798202 in the original amount of $1,915,000. The SBA qualifies as a "person" under 18 U.S.C. § 1964(c) and has suffered direct injury to its business (federal lending program operations) and property (perfected lien impairment) as a proximate result of the enterprise's post-notice conversion conduct. This injury is direct — the SBA is the primary secured creditor whose first-position lien is impaired by enterprise actors who had actual knowledge of the perfected security interest — and is not derivative of SYG's injury. Standing analysis under Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992) and Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006) is satisfied because no intervening party stands between the enterprise's conduct and the SBA's lien impairment. Plaintiff preserves SBA's standing for potential joinder,

intervention, or amendment.

4b. This action also arises from the enterprise's use of trust-building commercial engagement as the opening phase of a larger extraction scheme. In May 2022, after a Seakeeper-related crisis involving Ivankovich's Cobia vessel, Plaintiff intervened, documented the defect condition, positioned the warranty and vendor-liability lane, and communicated that the unit would be resolved quickly and at no cost to Ivankovich. The resulting communications and subsequent litigation posture are part of the record summarized in Plaintiff's financial pillar materials and related exhibit packets.

4c. Within days of that resolution effort, Plaintiff introduced Ivankovich to Seakeeper refit sales representative Chase Russell for follow-on vessel work associated with M/V Octopussy. The relationship that followed gave Ivankovich access to Plaintiff's operating model, dealer channels, project management systems, and the financial strength SYG had built before the enterprise attack.

4d. Plaintiff alleges that this opening sequence is not a separate predicate act and is not pled as an independent count for relief. Rather, it is the origin narrative that explains why Plaintiff became the enterprise's target, how access and dependency were created, and why later non-payment, discovery weaponization, sanctions pressure, and coordinated revenue destruction were effective.

4e. A separate Seakeeper/Madison action addresses the distinct dealership-termination damages track arising from later events. That matter remains separate. This complaint references the Cobia-to-Octopussy origin sequence only as pattern and motive evidence for the enterprise conduct alleged here.

B. Defendants

Tier 1 — Individual Enterprise Actors

Defendant Steven Ivankovich (Hub 1 principal) is a living natural person and citizen of the State of Illinois. He is the son of Decedent Dr. Anthony D. Ivankovich (deceased May 25, 2026), whose formal probate administration was opened on September 3, 2026 in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Probate Division, styled In re: Estate of Anthony D. Ivankovich, Case No. 2026-003865-CP-02 (UCN 132026CP00386501GE02, DIN 1–17; see also In re Marriage of Ivankovich, No. 2021-D-9220 (Cir. Ct. Cook Cnty., Ill.), filed at D.E. 304-1 in Case No. 0:23-cv-61696-AHS). All references to "Dr. Anthony Ivankovich" or "Anthony Ivankovich" in the Seacoast / Contessa loan and enforcement narrative herein refer to Defendant Steven Ivankovich's deceased father as a distinct individual, not an alias of Defendant Steven Ivankovich. Ivankovich directed and managed the enterprise's federal litigation fraud, creditor cascade, and discovery weaponization operations from at least May 2022 through the present.

Cook County Receiver Neal Levin was appointed over Ivankovich's entity CMR in May 2025. As reflected in transcript testimony, Ivankovich admitted he knew the location of SK35 because he hired a private investigator, corroborating intentional asset-tracing conduct through enterprise intermediaries. In the February 23, 2026 bench trial transcript, Ivankovich further testified that Seakeeper reported being threatened with litigation if it spoke directly, and that "ultimately, through counsel and ongoing conversation" he was able to speak to vendors directly and obtain the information sought (Tr. pp. 86, 88-89).

Defendant Tom Ackel (Hub 2 principal) is a natural person and citizen of the State of Florida residing in Broward County. Ackel directed and managed the enterprise's physical seizure, conversion, and extortion operations, and signed a

subordination agreement on May 30, 2024 that he subsequently breached on November 10-13, 2025.

Defendant David Hunter is a natural person and citizen of the State of Florida. Hunter served as the LLC Manager of BlueWater Reel Estate LLC, executed void service of process on his own company's behalf in the eviction action, and maintained connections to both enterprise hubs through In-Visions LLC.

Defendant Neil Burell is a natural person whose address is known through the CMR docket. Burell provided a sworn affidavit containing a $758,000+ overstatement of damages that was submitted to this Court in support of CMR's default judgment application. On information and belief, Burell was coerced to execute the final affidavit version after preparing a materially different preliminary damages report (D-48, filed as DE 314-5 in CMR's proposed findings package), and the final sworn submission removed and/or recharacterized material components reflected in the preliminary work product. D-48's preliminary findings report states: money in to SYG of $4,504,641.18; third-party vendor payments of $1,491,348.48 (with SYG audit-file variance to $1,590,770.78); and Exhibit A amount-due calculations of $2,033,483.48 with internal discrepancies noted by the same report. Plaintiff further alleges a suppression-to-inflation chain in which earlier ZOMMA/Betty Martin audit work identifying materially lower substantiated amounts was displaced by later sworn figures; the final DE 314-5-to-DE 288-1 quantified inflation delta is designated for Rule 26(e) supplementation.

Defendant Sean Brighton is a natural person and citizen of the State of

Florida residing in Broward County. Brighton served as co-manager of BlueWater Reel Estate LLC and received proceeds from the unauthorized sale of SK35 gyroscopic marine stabilizer equipment.

Defendant Rick Pineiro (Rigoberto P. Pineiro, President and Registered Agent of Ares Marine Inc., Florida Profit Corporation Document No. P05000048648) is a natural person. Pineiro received and possessed

SK26 gyroscopic marine stabilizer equipment through Ares Marine without court authorization and in furtherance of the enterprise's asset conversion operations.

Defendant Ed Biggie is a natural person and citizen of the State of Florida. Biggie served as the intelligence channel between Hub 1 (CMR/Ivankovich) and Hub 2 (TBW/Ackel), conducting four documented pre-seizure reconnaissance visits to SYG's operating facility between August and October 2025.

Defendant Michael Moore (Moore & Co) is a natural person. Moore participated in the enterprise's discovery weaponization by handling combined communications (SYG006686-SYG007040) that were channeled through the enterprise, was introduced in enterprise communications as "our team's attorney," and provided legal-strategy messaging to Plaintiff including direction that it was "bad business" to include Matthew Valcourt. As documented in Bates-verified correspondence (I_11_SYG006666–006753, Dec. 14–15, 2022 TRIP Hotel meeting, and I_11_SYG006873–006919, March–April 2023 Octopussy lockout and accounting transition), Moore and Moore & Company, P.A. coordinated the transition of project records to Zooma / Betty and the lockout of SYG personnel from M/V Octopussy while billing/accounting records remained incomplete.

12a. Defendant Caycie Flitman is a natural person and attorney associated with Moore & Company, P.A. Flitman participated in the enterprise's information

channel operations by transmitting and coordinating litigation-adjacent intelligence used in the enterprise's pressure campaign against SYG.

12b. Defendant Olafur "Oli" Hand is a natural person who operated as an enterprise coordination actor in Seakeeper/CMR-adjacent channels. On information and belief, Hand assumed operational intelligence-routing functions after SYG's vessel arrest actions and participated in compartmentalized information control directed by Hub 1 leadership.

Tier 2 — Enterprise Entity Defendants

Defendant Contessa Marine Research LLC ("CMR") is a Florida limited liability company currently under Cook County Receiver Neal Levin. CMR served as the primary litigation vehicle for Hub 1's federal court fraud operations, obtaining a $6,524,783.18 default judgment against SYG through enterprise conduct.

Defendant BlueWater Reel Estate LLC is a Florida limited liability company. BlueWater served as the operational vehicle for Hub 2's eviction, seizure, and conversion operations against SYG's collateral and operating base.

Defendant In-Visions LLC is a Florida limited liability company controlled by Defendant Hunter. In-Visions served as the organizational bridge between Hub 2 (TBW/Ackel operations) and Seakeeper/SHM enterprise activities, and facilitated the conversion and relocation of seized SYG property through Hunter's dual role as In-Visions principal and BlueWater LLC Manager.

Defendant National Liquidators LLC is a Florida limited liability company deployed to conduct unauthorized vessel location and asset tracing operations

against SYG without court order, including sending agents to SYG's known marina locations on February 12, 2026 to photograph and document vessel positions in furtherance of the enterprise's asset search and seizure operations.

16a. Defendant SHM LMC, LLC, d/b/a Lauderdale Marine Center, is a limited liability company operating a marine facility at 2301 SE 17th Street, Fort Lauderdale, Florida 33316. SHM LMC served as the enterprise's facility-control weapon by executing a workspace lockout of SYG during the critical CMR discovery period (December 2024 – January 2025), creating duress conditions that coerced Plaintiff into a $238,000 settlement on January 31, 2025 — the same day as the Triple Coordination Event. SHM LMC further destroyed SYG customer contracts worth $2.5M+ (All Speed Fins, Quad Humphree) by denying access to vessels and work-in-progress. On information and belief, SHM LMC's pressure lane also overlaps with retaliatory escalation after Plaintiff's reporting activity, the misappropriation/misallocation of approximately $455,000 of SYG funds, and uncollected sales-tax exposure exceeding $60,000 tied to resale-certificate misuse. SHM LMC's eviction-pressure lane is further documented in Broward County Case No. COCE-24-017512, including the initial eviction complaint (Filing #194561390, Mar. 21, 2024), summons/appearance/counterclaim filings (Filing #194597881 and Filing #195238536), and later landlord motion practice with a joint stipulated possession filing (Filing #196307292 and Filing #199371645). SHM LMC was represented by Akerman LLP in the related CMR proceedings, reinforcing the concurrent-conflict channel.

16b. Defendant Blackstone Group Inc. is a Delaware corporation with

principal offices in New York, New York. Blackstone is the parent entity of Safe Harbor Marinas, which owns and operates SHM LMC. Blackstone acquired Safe Harbor Marinas for $5.7 billion, with the acquisition announced February 1, 2025 — one day after the coerced $238K settlement — and closing approximately February 24, 2025. Blackstone Senior Managing Director Frank Cohen serves on the Northwestern University Board of Trustees alongside Larry Gies, CEO of Madison Industries (Seakeeper's parent), establishing the coordination nexus between the SHM/Blackstone and Seakeeper/Madison enterprise tracks. Blackstone's corporate presence during the lockout period was leveraged to amplify the duress conditions imposed on Plaintiff.

16c. Defendant Moore & Company, P.A. is a professional association through which Defendant Michael Moore and associated personnel, including Flitman. conducted discovery and communications functions relevant to the enterprise's litigation and intelligence channels.

16d. Defendant Highland Hill Capital LLC is, on information and belief, a financing entity that participated in the coordinated MCA pressure lane, including refusal of payment and manufactured default conditions that aligned with enterprise timing.

16e. Defendant Sinclair Funding Group Inc. (formerly captioned as 'Sinclair Funding Group Inc.') is a Delaware corporation (registered with the New York Department of State under DOS ID 7696873, with registered agent for service of process Nugo Filings Corp., 200 Boulevard of the Americas, Suite 104B, Lakewood, New Jersey 08701) in the MCA acceleration lane that participated in coordinated collection pressure aligned with enterprise objectives.

16f. Defendant Nexus Capital Funding LLC is, on information and belief, a

financing entity in the MCA acceleration lane that participated in coordinated default escalation and pressure tactics against SYG.

Tier 3 — Legal Intermediary Defendants

Defendant Akerman LLP is a Florida limited liability partnership with offices at 201 E. Las Olas Blvd., Fort Lauderdale, FL 33301. Akerman served as the enterprise's principal legal coordination channel through a five-layer concurrent conflict structure that, in combination, constitutes the enterprise's most pervasive single-actor conflict pattern: (1) Asset Protection Retention: On information and belief, Akerman was retained to protect and insulate Ivankovich-controlled assets — including CMR-related interests — a representation in which Akerman's duty of loyalty ran directly to Ivankovich and his controlled entities. (2) Ivankovich-Versus-Ivankovich Inter-Party Proceedings: Simultaneously and in direct conflict with that asset-protection mandate, Akerman represented parties in internal Ivankovich/CMR inter-party proceedings; those proceedings are currently under the control of Cook County court-appointed Receiver Neal Levin (Case No. 21-D-9220), appointed May 2025 following enterprise abuse of court process — circumstances to which Akerman's continued adverse conduct contributed. (3) SCB Parallel Enforcement Against CMR/Anthony: In the separate Seacoast enforcement action against CMR and Dr. Anthony Ivankovich (Case No. 1:25-cv-25958-DPG, S.D. Fla.), Seacoast proceeded through non-Akerman counsel (McIntosh Schwartz) rather than Akerman LLP; after an initial Clerk's Default was entered (DE 7), counsel appeared for CMR and Anthony Ivankovich to vacate the default (DE 13) and subsequently filed a notice regarding Dr. Anthony Ivankovich's passing. That no-defense collapse is consistent with the enterprise's counsel-deprivation and default-cascade methods and separates that

lane from Akerman's direct role in the SCB-v.-SYG foreclosure lane. (4) SCB v. SYG Admiralty Foreclosure: Akerman currently represents Seacoast National Bank in its admiralty vessel foreclosure against SYG, filed by complaint on February 12, 2026 (DE 1) and prosecuted through vessel-arrest filings on February 13, 2026 (DE 6) by Defendants Klopp and Yoss — the enterprise's primary connecting enforcement channel linking Hub 1's judgment apparatus to Hub 2's physical-seizure operations, filed exactly ten days before the CMR trial date. (5) SHM LMC v. SYG Retaliatory Eviction and Lockout: Akerman represented SHM LMC in its retaliatory eviction and lockout action against SYG in Broward County Case No. COCE-24-017512 (initial complaint Filing #194561390, Mar. 21, 2024), culminating in a joint stipulated possession settlement (Filing #199371645) reflecting coerced resolution under enterprise-coordinated pressure following Plaintiff's reporting activity. The cumulative effect of representations (1) through (5) is a single law firm simultaneously (a) entrusted to protect Ivankovich assets, (b) representing parties within Ivankovich's entity complex before that complex was placed under court-appointed receiver control, (c) operating alongside a parallel SCB enforcement lane that drove CMR/Anthony into uncounseled default, (d) prosecuting SCB's vessel seizure against SYG, and (e) prosecuting SHM LMC's retaliatory lockout of SYG's operating base — an enterprise coordination function operating under the appearance of independent legal representation. Each engagement pairing violates FL Bar Rule 4-1.7(a)(1) or (a)(2); in aggregate, the five concurrent representations constitute the enterprise's legal coordination infrastructure. A Florida Bar complaint documenting these conflicts (ACAP No.

26-7791) was filed January 29, 2026.

Defendant Amanda Klopp is a natural person and attorney licensed in the State of Florida, associated with Akerman LLP. Klopp served as lead counsel on the SCB admiralty foreclosure against SYG while personally aware of — and, on information and belief, a participant in managing — all five concurrent adverse representation conflicts described in the Akerman LLP paragraph above. Klopp authored the conflict denial letter dated January 26, 2026 — transmitted through interstate communications and directly responsive to Plaintiff's formal conflict-of-interest challenge — that affirmatively denied the existence of the concurrent representations. That denial was contradicted by contemporaneous docket records then active across the CMR, SCB, IFB International bankruptcy, and COCE-24-017512 proceedings. The letter was issued three days before Plaintiff filed the Florida Bar complaint (January 29, 2026), reflecting enterprise awareness of and preemptive cover-up of the conflict structure. Klopp's transmission of a materially false conflict denial through interstate wire communications, in furtherance of the enterprise's coordinated legal channel, constitutes an independent predicate act in the pattern of racketeering activity (PA-SCB-02; 18 U.S.C. § 1343). On information and belief, Klopp further coordinated National Liquidators direction in support of vessel-tracing activity without valid federal warrant process, constituting an additional overt act in furtherance of the conspiracy.

Defendant Jenna M. Yoss is a natural person and attorney licensed in the State of Florida, associated with Akerman LLP. Yoss served as co-counsel alongside Defendant Klopp in the SCB admiralty foreclosure against SYG,

participating in the February 12, 2026 complaint filing (DE 1) and February 13, 2026 arrest-phase filings (DE 6) in the S.D. Fla. proceeding while all five concurrent adverse representations described in the Akerman LLP paragraph above were operative. Yoss's active participation in filing and prosecuting the SCB vessel arrest — an enterprise-coordinated enforcement action timed to intersect with the CMR trial — constitutes sustained overt acts in furtherance of the enterprise's legal coordination channel and the enterprise's overall pattern of racketeering activity.

Defendant Robert Allen Law ("RAL") is a Florida law firm with offices at 1441 Brickell Avenue, Suite 1400, Miami, Florida 33131 (ballen@robertallenlaw.com). RAL is pled as a Tier 3 legal-intermediary defendant on the following record: (1) Registered-Agent Role: RAL is the registered agent for Contessa Marine, LLC on the Florida Sunbiz record (Document# L16000087982, FEI 81-2604020) — the enterprise entity whose litigation apparatus is central to Hub 1. (2) Dual-Representation Hub:

On information and belief, RAL functioned as a legal hub for the enterprise, engaging in a pattern of conflict-of-interest,

legal-malpractice, and fraudulent-misrepresentation conduct, including conflict-check irregularities and trust-account wire-instruction activity. (3) Origination Channel: the

RAL–SYC relationship originated, upon information and belief, through an unsolicited inbound capital/venture-broker solicitor contact, and no executed engagement letter has been located. RAL's registered-agency and solicitation roles are pled as overt acts in furtherance of the

enterprise's legal coordination channel; any claim that RAL's mere agency status creates liability is disclaimed — liability, if any, rests on RAL's own alleged misrepresentations, conflict management, and trust-account handling.

Tier 4 — John Doe Defendants

Defendants John Does 1-10 are individuals and/or entities whose identities are presently unknown but who participated in or facilitated the enterprise's pattern of racketeering activity, including additional enterprise coordinators, financial conduits, surveillance operatives, and control persons not yet fully identified by legal name and service address. Their identities will be ascertained through discovery. Plaintiff reserves the right to amend this complaint to name such individuals and entities upon identification. This reservation expressly includes potential family-asset conduit actors identified in the record, including Dr. Olga Ivankovich, if discovery and docket-certified transfer evidence confirms personal participation in post-judgment asset routing or concealment.

C. Jurisdiction

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 18 U.S.C. § 1964 (RICO civil remedies).

This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a), as the state claims arise from the same nucleus of operative facts as the federal RICO claims.

Venue is proper in the Southern District of Florida, Fort Lauderdale Division, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the

events giving rise to the claims occurred in Broward County, Florida. The enterprise's physical operations — asset seizure, eviction, property conversion, discovery production — occurred in this district.

In personam jurisdiction exists over each Defendant. The individual Florida resident defendants (Ackel, Hunter, Brighton, Biggie) reside and conduct enterprise activity in this district. Non-resident defendants (Ivankovich, Burell, Moore, Flitman, Hand) directed enterprise conduct into this district through wire and mail transmissions, court filings, and coordinated actions targeting a Florida victim. Entity defendants (CMR, BlueWater, In-Visions, National Liquidators, SHM LMC, Moore & Company, Highland Hill, Sinclair, Nexus) are organized in, conduct business in, and/or directed collection and litigation conduct into Florida. Blackstone Group Inc. is subject to jurisdiction under Florida's long-arm statute, Fla. Stat. § 48.193(1)(a)(1), having operated, conducted, engaged in, or carried on a business venture in this state through its subsidiary SHM LMC. Akerman LLP is headquartered in this district.

## II. THE ENTERPRISE

The enterprise is defined as the method, system, and coordinated operating structure through which the defendants acted — distinct from the defendants themselves.

### A. Enterprise Definition

The RICO enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4), operating as a coordinated system of financial extraction, physical asset seizure, litigation manipulation, and victim resource destruction.

The enterprise operates through a dual-hub command structure with shared intelligence channels, legal coordination intermediaries, and synchronized timing mechanisms. The enterprise is an ongoing organizational system — separate and distinct from the defendants who conduct its affairs.

The enterprise's common purpose is the systematic extraction and conversion of Starboard Yacht Group's assets, revenue streams, intellectual property, business relationships, and operating capacity through coordinated multi-vector attack.

B. Enterprise Operating Methods

The enterprise employs the following recurring methods to accomplish its common purpose:

(a) Litigation Fraud Method: Filing inflated or fabricated damage claims in federal court; submitting sworn affidavits containing materially overstated financial figures; manipulating discovery processes to simultaneously extract victim intelligence and conceal enterprise financial records; obtaining default judgments when the enterprise's own conduct prevents the victim from retaining counsel.

(b) Creditor Cascade Method: Coordinating the simultaneous acceleration of multiple creditor obligations on a single target date, creating compounding financial pressure designed to collapse the victim's ability to service any individual obligation. On January 31, 2025, three independently devastating enterprise actions were executed on the same day: Seakeeper dealer termination, SHM duress settlement, and CMR discovery deadline — the Triple Coordination Event.

(c) Physical Seizure and Conversion Method: Signing binding agreements

(subordination, lease) to establish trust and access, then breaching those agreements to seize the exact assets protected by them. Deploying enterprise actors (Hunter for service of process, Biggie for pre-seizure intelligence, Brighton for proceeds collection, Pineiro for asset receipt) in a sequential chain.

(d) Counsel Prevention Method: Draining the victim's financial resources through coordinated multi-front litigation, creditor acceleration, and asset seizure, rendering the victim unable to retain counsel in any of the pending matters. Once victim is unrepresented, exploiting the 28 U.S.C. § 1654 LLC representation requirement to obtain default judgments against entity defendants and to strike entity filings.

(e) Legal Coordination Channel Method: Using dual representation by a single law firm (Akerman LLP) across multiple enterprise actions to facilitate information sharing, timing coordination, and synchronized filing of new actions against common targets.

(f) Intelligence Gathering Method: Deploying intermediary actors (Biggie — 4 documented visits; Flitman/Leatherwood — discovery transmissions to Seakeeper) to collect target intelligence, map assets, and relay operational information between the enterprise's hubs. On information and belief, this same relay channel also supported mail-fraud and mail-claims execution lanes culminating in the Fourth IC3 reporting event.

(g) Undocumented Transaction Method: Conducting enterprise operations through oral agreements, undocumented arrangements, and handshake deals — including Ackel's initial occupancy terms, Hunter's LLC management role,

Biggie's reconnaissance assignments, and Brighton's proceeds-sharing arrangement — to evade paper trails and frustrate discovery. The deliberate absence of written agreements across multiple enterprise relationships is itself evidence of coordinated concealment.

C. Enterprise Organizational Structure

The enterprise operates through two command hubs connected by shared channels:

Hub 1 — Federal Litigation and Creditor Cascade (Ivankovich)

Hub 1 is directed by Defendant Ivankovich and operates primarily through federal litigation to obtain fraudulent judgments and orchestrate creditor cascades. Hub 1 actors include Ivankovich, Burell (damages affiant), Moore (discovery handler), Flitman (information channel actor), Hand (coordination actor), Moore & Company, P.A. (professional association channel), and CMR LLC (litigation vehicle). Hub 1's methods include litigation fraud, discovery weaponization, creditor cascade orchestration, and receiver circumvention.

Hub 2 — Physical Seizure and Conversion (Ackel)

Hub 2 is directed by Defendant Ackel and operates primarily through physical seizure, conversion, and extortion of SYG's assets and operating base. Hub 2 actors include Ackel, Hunter (LLC manager/void service executor), Brighton (co-manager/proceeds receiver), Pineiro (asset receiver), and BlueWater Reel Estate LLC (operational vehicle). Hub 2's methods include subordination breach, $1.166M property conversion, void eviction, and extortionate storage demands.

Connecting Channels

The two hubs are connected through shared intelligence, legal intermediaries, and synchronized timing:

(a) Akerman LLP Channel: Simultaneous adverse representation in CMR (Hub 1), SCB (connecting enforcement), and IFB International bankruptcy (DIP counsel) — creating a three-way legal coordination pipeline between enterprise actions targeting a common victim. The triple conflict was operative concurrently: Akerman represented CMR creditors seeking the $6.5M judgment, prosecuted the SCB vessel arrest against SYG, and served as DIP counsel in the IFB International bankruptcy involving overlapping Ivankovich-controlled entities — all simultaneously, all against SYG or SYG-related interests. The Akerman conflict denial letter of January 26, 2026 was issued three days before the Florida Bar complaint (January 29, 2026) and three days after IFB International events bearing on the concurrent representation. Gary Goldstein — the only member of Ivankovich's inner circle who had been excluded from SCB knowledge — was turned as a cooperating FBI witness, further demonstrating the enterprise's need to insulate the SCB channel from potential exposure.

(b) Ed Biggie Intelligence Channel: Four documented pre-seizure reconnaissance visits to SYG's facility (August-October 2025), providing Hub 2 with target intelligence informed by Hub 1's discovery extractions.

(c) Timing Synchronization: Enterprise actions across hubs demonstrate coordinated timing that cannot reasonably be attributed to coincidence — including the January 31, 2025 Triple Coordination Event and the February 12,

2026 SCB filing exactly 11 days before the CMR trial.

D. Enterprise Continuity

The enterprise has operated continuously from at least May 2022 (Ivankovich corporate communications regarding Seakeeper) through the present date, with no natural endpoint. This satisfies both closed-ended continuity — 45+ months of coordinated activity, far longer than the roughly nine-month scheme the Eleventh Circuit held too short to establish closed-ended continuity in Jackson v. BellSouth Telecommunications, Inc., 372 F.3d 1250, 1266 (11th Cir. 2004) — and open-ended continuity, as new predicate acts occurred in 2026 with no indication of cessation.

E. Enterprise Distinctness

The enterprise is distinct from the defendants. It is the coordinated system of methods, channels, and timing mechanisms described above — not merely the sum of the defendants. Individual defendants may be replaced without destroying the enterprise's operating structure. The hubs, channels, and methods have existed and operated independently of any single defendant's participation in any single action, as evidenced by the enterprise's continued expansion into new venues (SCB foreclosure), new shell entities (National Liquidators), and new enforcement methods (garnishment via VIV) even as individual components (CMR under receiver control) undergo structural changes.

III. FACTUAL BACKGROUND AND TIMELINE

This section sets forth the factual chronology of the enterprise's operations in sufficient detail to satisfy Rule 9(b)'s particularity requirement for fraud-based

predicates.

A. Pre-Enterprise Foundation (2008-2021)

In 2008, Stratmann founded SYG with $10,000 in personal savings and a $20,000 personal loan. Over fourteen years, Stratmann built SYG into a $7.68 million annual-revenue marine engineering operation employing approximately 30 full-time workers with benefits.

By 2021, SYG held the Seakeeper "Dealer of the Year" designation and maintained daily average Bank of America operating balances exceeding $1,000,000.

SYG invested over $9 million of its own capital in Seakeeper and Humphree dealerships, demo vessels, sodium-ion battery development (Salty Marine Batteries LLC), and proprietary marine engineering IP.

B. Enterprise Initiation (2022)

On January 3, 2022, Stratmann met Steven Ivankovich aboard M/V Octopussy and shared SYG's post-COVID vision, including SYG's EIDL-funded capital position.

On April 8, 2022, the first Ivankovich wire — $12,862.00 from Glencoe Family Dwelling — was received by SYG. This amount represented approximately 1.2% to 1.3% of SYG's combined operating cash at that time.

The subsequent business relationship resulted in $4,504,641.18 received from four Ivankovich-controlled entities, all accounted for in the 151-page CFO Declaration (DE 237 in Case No. 0:23-cv-61696-AHS), certified as showing $0.00 unaccounted.

C. Enterprise Operations — Hub 1 (2022-2026)

The detailed chronology of CMR litigation fraud, discovery manipulation, damages inflation, creditor cascade events, and the resulting default judgment is set forth in the predicate acts in Sections IV.A and IV.B below and the supporting exhibits referenced therein. The chronology includes, without limitation: the filing of an inflated damages affidavit containing a $758,000+ overstatement; a material divergence between Burell's preliminary report (D-48/DE 314-5) and the later sworn affidavit used for default relief; the use of redacted and incomplete file productions and withholding of responsive evidence during the pretrial discovery lane; the manipulation of discovery deadlines while concealing enterprise financial records; the orchestration of the January 31, 2025 Triple Coordination Event; and the exploitation of SYG's inability to retain counsel to obtain the $6,524,783.18 default judgment.

D. Enterprise Operations — Hub 2 (2024-2026)

On May 30, 2024, Ackel signed a subordination agreement acknowledging and subordinating BlueWater's lien position to SYG's SBA loans. Ackel confirmed the agreement via email the same day — establishing actual knowledge of the subordination obligations and destroying any future ignorance defense.

The Hub 2 chronology includes, without limitation: the breach of the subordination agreement, the November 10-13, 2025 seizure of $1,166,000 in SYG collateral, the execution of void service of process by Hunter on behalf of his own company, the imposition of extortionate storage demands, the unauthorized sale of SK35 gyroscopic marine stabilizer equipment for $309,000, and transcript-

confirmed admissions by Ivankovich that he hired a private investigator and knew SK35's location.

D.1. Federal Lending Structure and Post-Notice Conversion

43a. SBA EIDL Loan and Lien Priority Stack. The SBA holds EIDL Loan No. 5611798202 (original amount: $1,915,000) secured by a perfected UCC-1 filing encumbering all assets of SYG — a first-position security interest with priority over all subsequent liens. Locality Bank holds a Section 7(a) SBA-guaranteed loan in a subordinate second-position lien. The subordination agreement signed by Defendant Ackel on May 30, 2024 explicitly acknowledged and subordinated BlueWater's interests to the SBA lending position. The lien priority stack is:

(i) First Position: United States (SBA) — EIDL Loan No. 5611798202, $1,915,000, UCC-1 all-assets, perfected;

(ii) Second Position: Locality Bank — Section 7(a) SBA-guaranteed loan, subordinate to EIDL;

(iii) Subordinated: BlueWater Reel Estate LLC — per Ackel subordination agreement May 30, 2024;

(iv) Unsecured: All other creditors, including enterprise-produced judgments

43b. The Smoking-Gun Email and Post-Notice Conversion Sequence. On November 5, 2025, Defendant Ackel sent an electronic communication to the SBA inquiring: "Can we auction everything off and not pay the SBA anything?" The SBA responded on the same date, through Nakayama B. Abouem, confirming:

"The UCC-1 is perfected... does not disclaim... lien and priority interest remains." Nancy Chamides was carbon-copied on this communication chain. The post-notice conversion sequence is:

(i) Pre-November 5, 2025: SBA UCC-1 filed and perfected. Enterprise actors aware of SBA lending relationship through subordination agreement and SYG records;

(ii) November 5, 2025: Ackel transmits electronic inquiry to SBA asking whether SBA collateral can be excluded from auction proceeds. This communication establishes actual knowledge of the SBA lien AND deliberate inquiry regarding circumvention;

(iii) November 5, 2025: SBA confirms perfected lien status in writing. Enterprise actors now have actual, confirmed, written notice that the SBA's security interest is perfected and not disclaimed;

(iv) Post-November 5, 2025: Enterprise actors proceed to dispose of, divert, and convert SBA-encumbered collateral — the November 10-13, 2025 seizure of $1,166,000 in SYG collateral occurs five to eight days after Ackel's inquiry and the SBA's confirmation;

(v) Continuing: Enterprise continues to hold, conceal, and dispose of SBA-encumbered assets without SBA authorization or court order.

E. Connecting Channel Operations (2025-2026)

The Akerman dual representation timeline spans from initial CMR representation through the SCB vessel arrest filing on February 13, 2026, including the January 26, 2026 conflict denial letter contradicted by concurrent docket

records and the Florida Bar complaint filed January 29, 2026.

The communications chronology corroborates that channel structure: settlement and lockout pressure communications in 2023-2025 (including SHM no-trespass and settlement-enforcement exchanges), the June 2025 Akerman conflict inquiry and dismissive response, SCB demand/acceleration correspondence in January 2026, service packages for objections and disqualification motions in February 2026, and April 2026 default/strike service activity in the SCB foreclosure lane. Taken together, those dated transmissions show a repeatable legal-coordination pattern in which Akerman lawyers (primarily Klope/Yoss) and parallel service-recipient counsel channels (including Stroup-related service threads) were used to synchronize pressure, preserve adverse positioning, and escalate enforcement against SYG across related matters.

The Biggie intelligence channel comprises four documented reconnaissance visits between August and October 2025, each providing Hub 2 with target intelligence on SYG's asset positions, operational vulnerabilities, and physical layout.

Timing coordination evidence includes the January 31, 2025 Triple Coordination Event (three independent devastating actions on one day), the February 12, 2026 SCB filing exactly 11 days before CMR trial, and the synchronized acceleration of MCA and creditor obligations.

47a. Plaintiff also relies on testimony and records from former CMR General Manager Joe Seinitz, who has direct historical familiarity with Ivankovich and the CMR operating structure predating his CMR role. Seinitz has represented

that he is prepared to execute an updated sworn affidavit addressing enterprise motive, operational compartmentalization, and information-control methods, including statements by Ivankovich that SYG would be loaded with enterprise-controlled business to create dependency and restriction from other work.

47b. On information and belief, Seinitz will further attest that after SYG vessel arrest actions, Ivankovich reduced Seinitz's access while elevating Hand in intelligence-routing functions, consistent with a compartmentalized enterprise model in which different actors receive different narratives and are discouraged from cross-communication.

47c. Plaintiff intends to authenticate Seinitz-linked historical communications through metadata and chain-of-custody records, including date/time headers, sender-recipient routing, and device/account provenance, and to use that authentication to corroborate intent evidence, including Ivankovich email admissions concerning plans and resources directed at disabling SYG's operating continuity.

F. Enterprise-Produced Judgments and Enforcement (2026)

On February 20, 2026, this Court entered a $6,524,783.18 final default judgment against SYG in Case No. 0:23-cv-61696-AHS (DE 299/300). The Court sua sponte identified potential First Degree Grand Theft of $362,072.20 in Footnote 3, referring the matter for appropriate criminal action under FL § 812.014(2).

The default judgment was entered after SYG's opposition (DE 290) was stricken because SYG could not retain counsel — the direct result of the

enterprise's coordinated financial destruction of SYG's resources, creating a 28 U.S.C. § 1654 procedural trap.

IV. PREDICATE ACTS

Predicates are organized by independent fraud element, not by filing/service mechanics. Each predicate identifies: (a) the actor(s), (b) the specific conduct, (c) the date and location, (d) the applicable statute, and (e) the source evidence — satisfying Rule 9(b). Routine litigation filings without independent fraud elements and service of process mechanics are contextual evidence of enterprise pattern, not standalone predicates.

A. Hub 1 Predicates — Litigation Fraud and Creditor Cascade

Predicates supported by independent fraud elements (fabrication, overstatement, concealment, unauthorized filing):

PA #

Actor(s)

Conduct

Date

Statute

Evidence Ref

PA-CMR-1

Ivankovich, Burell

Filing of Burell Affidavit containing $758K+ overstatement of damages, after coercive replacement of preliminary report components reflected in D-48/DE 314-5 (preliminary findings: $4,504,641.18 money in; $1,491,348.48

vendor payments; $1,590,770.78 SYG audit-file paid total), and use of redacted/incomplete productions and withheld underlying records before trial to obstruct verification

On or about the date of filing

18 U.S.C. §§ 1343, 1623 (wire fraud and false declaration via CM/ECF)

DE 288 Objection; DE 237 CFO Declaration; DE 314-5 (D-48 preliminary report, Mar. 4, 2024 findings letter); pretrial production logs and redacted-file productions

PA-CMR-02

Ivankovich, CMR

Filing of DE 287 damages motion without Receiver authorization of record, constituting ultra vires action

On or about the date of filing

18 U.S.C. § 1343

DE 287; Cook County Receiver appointment order

PA-CMR-04

Moore

Discovery weaponization — combined communications (SYG006686-SYG007040) channeled through enterprise, including communications introducing Moore as "our team's attorney" and advising that it was "bad business" to include Matthew Valcourt

2022 through 2024 (Bates-stamped records SYG006686-SYG007040)

18 U.S.C. § 1343

Bates-stamped discovery records; Exhibit PILLER communications (Steve-to-Plaintiff attorney-introduction + Moore advisory message)

PA-CMR-05

Ivankovich, Flitman

Privileged litigation information (mechanic lien filings) transmitted to Seakeeper in November 2024

Nov 2024

18 U.S.C. § 1341 (mail fraud)

Flitman email records

PA-CMR-06

Ivankovich, Leatherwood

Discovery weapons channeling — "need to involve SeaKeeper directly in dissatisfaction" email July 6, 2023, coupled with transcript testimony that Seakeeper reported litigation threats and that "ultimately, through counsel" vendor communications were forced open to obtain desired information (Feb. 23, 2026 Tr. pp. 86, 88-89)

Jul 6, 2023

18 U.S.C. § 1343

Leatherwood email to Seakeeper; Feb. 23, 2026 Bench Trial Transcript (pp. 86, 88-89)

B. Hub Predicates — Creditor Cascade and Business Destruction

PA #

Actor(s)

Conduct

Date

Statute

Evidence Ref

PA-SKR-01

Ivankovich; Seakeeper

Dealer termination destroying $72.5M value, effective Jan 31, 2025 — same day as Triple Coordination Event

Dec 2, 2024 (notice) / Jan 31, 2025 (effective)

18 U.S.C. § 1343; tortious interference

Termination letter; dealer agreement

PA-SHM-01

SHM LMC, LLC; Blackstone Group Inc.

Workspace lockout creating duress conditions during CMR discovery period, resulting in $238K coerced settlement

Dec 2024 - Jan 31, 2025

18 U.S.C. § 1951 (extortion)

Settlement agreement; lockout evidence

PA-SHM-02

SHM LMC, LLC

Customer contract destruction: All Speed Fins ($1.5M), Quad Humphree ($1.0M)

December 2024 – January 2025

18 U.S.C. § 1343

Customer correspondence; contract records

PA-MCA-01

Highland Hill

Refused S[illegible]G payment Feb 3, 2025 despite borrower ability to pay —

manufactured default

Feb 3, 2025

18 U.S.C. § 1343

Payment records; refusal documentation

PA-MCA-02

Highland Hill, Sinclair, Nexus

BofA account freeze (May 28, 2025) blocking payroll tax deposits, forcing

IRS/FL RT-6 delinquencies

May 28, 2025

18 U.S.C. § 1343

BofA records; IRS notices

C. Hub 2 Predicates — Physical Seizure and Conversion

PA #

Actor(s)

Conduct

Date

Statute

Evidence Ref

PA-LOC-01

Ackel

Signed subordination agreement subordinating BlueWater lien to SBA loan, with specific intent to later breach

May 30, 2024

18 U.S.C. § 1343

Subordination agreement; Ackel confirmation email

PA-LOC-02

Ackel, Hunter, Brighton

Conversion of $1,166,000 in SYG collateral, Nov 10-13, 2025

Nov 10-13, 2025

FL § 812.014(2) (grand theft); 18 U.S.C. § 1343

FLPD Case #34-2512-209096

PA-LOC-03

Ackel, Hunter, Brighton

Felony finding entered Dec 9, 2025 — establishing probable cause for First Degree Grand Theft

Dec 9, 2025

FL § 812.014(2); FL § 772.11

Felony finding order

PA-LOC-04

Hunter

Void service of process: Hunter served process for BlueWater — his own

company — rendering COSO-25-053444 default judgment void ab initio

On or about the date of service (exact date to be confirmed through discovery)

Procedural fraud

Service records; Sunbiz records; Broward County Case No. COCE-24-017512 docket packet (Filing #194561390, #194597881, #195238536, #196307292, #199371645)

PA-LOC-05

Acker

Extortionate storage fees: $135/day imposed on seized inventory as leverage

Nov 2025 - present

18 U.S.C. § 1951 (extortion)

Demand communications

PA-LOC-06

Hunter

Lowball offer: $70K-$100K for $1.166M in seized property, November 22, 2025 phone call

Nov 22, 2025

18 U.S.C. § 1951

Call records

PA-LOC-07

Brighton

SK35 gyroscopic marine stabilizer equipment sold for $309,000 on

December 5, 2025; proceeds retained by enterprise actors

Dec 5, 2025

FL § 812.014

Sale records

PA-LOC-03

Pineiro

SK26 gyroscopic marine stabilizer equipment possessed via Ares Marine without court authorization

on or about November 2025

18 U.S.C. § 1343

BSO/FLPD records

PA-LOC-04

In-Visions LLC, Hunter

Facilitated relocation and concealment of seized SYG property through In-Visions' operational infrastructure, including storage coordination with third-party locations and asset transport logistics directed by Hunter in his dual capacity as BlueWater LLC Manager and In-Visions principal

Nov 2025 – present

18 U.S.C. § 1343; FL § 812.014 (accessory)

Property location records; Sunbiz cross-reference

D. Connecting Channel Predicates

PA #

Actor(s)

Conduct

Date

Status

Evidence Ref

PA-SCB-01

Akerman, Klopp

SCB vessel arrest (DE 6) filed Feb 13, 2026 — 10 days before CMR trial; timing coordination through dual representation and the January-February 2026 demand/service sequence that positioned SYG for default-pressure litigation

Feb 13, 2026

18 U.S.C. § 1343

SCB docket; CMR docket; January 2026 demand and service-transmittal chronology

PA-SCB-02

Klopp, Akerman LLP

Conflict-knowledge timeline: June 2025 conflict inquiry and response communications, followed by Klopp's Jan 26, 2026 conflict denial letter contradicted by concurrent dockets showing Akerman representing adverse parties in CMR and SCB simultaneously

Jan 26, 2026

18 U.S.C. § 1343

June 2025 conflict inquiry/response emails; Jan 26 denial letter; PACER records

PA-SCB-03

National Liquidators LLC

Unauthorized vessel location operation: agents dispatched to SYG's known marina locations on February 12, 2026 to photograph and catalog vessel positions without court authorization, providing actionable intelligence for the SCB vessel arrest filed the following day; corroborated by transcript testimony admitting private-investigator retention and SK35 location knowledge and by related pre-arrest pressure communications in the no-trespass/settlement lane

Feb 12, 2026

18 U.S.C. § 1343

Deployment records; marina witness statements; SCB DE 6 timing; hearing transcript admission (private-investigator retention/SK35 location); no-trespass/settlement correspondence timeline

PA-SCB-04

Klopp [illegible] coordinated service-recipient channel participants

Post-filing default and strike escalation activity in April 2026: coordinated service-channel transmittals and docket steps used to press uncontested foreclosure posture after conflict objections were raised, consistent with the enterprise's course-of-action and pressure-channel methods

Apr 2026

18 U.S.C. § 1343

SCB [illegible] default/strike sequence; service transmittal emails; prior conflict correspondence timeline

PA-MAIL-01

Enterprise actors (access via 545 NE 17th Ave)

Visa gift cards intercepted Jan 29, 2026 constituting access device fraud

Jan 29, 2026

18 U.S.C. § 1029

USPS inspector report; FLPD; FBI IC3

PA-NEW-01

Klop[illegible] Akerman LLP

Demand letter sent to SYG on January 6, 2026 on behalf of SCB while Akerman simultaneously represented CMR creditors in federal court and served as IFB International DIP counsel — triple concurrent conflict of interest violating FL Bar Rule 4-1.7(a). The demand was transmitted by wire (email) and constituted a material step in the enterprise's coordinated legal extraction using conflicted counsel.

Jan 6, 2026

18 U.S.C. § 1343 (wire fraud)

Demand letter; FL Bar complaint (Jan 29, 2026); CMR docket; IFB International docket; Akerman conflict denial letter (Jan 26, 2026)

PA-NEW-02

Kiep[illegible] Akerman LLP

SCB admiralty complaint and vessel arrest petition filed via CM/ECF on February 12-13, 2026 while Akerman maintained active representation of CMR creditors ([illegible]) and IFB International DIP interests — an affirmative litigation

act prosecuted through a triple-conflicted law firm, timed to coincide with National Liquidators' vessel location operation (PA-SCB-03) and to land 10 days before the CMR trial

Feb 12-13, 2026

18 U.S.C. § 1343 (wire fraud via CM/ECF)

SCB docket (Case No. 0:26-cv-60289-WPD); CMR docket; IFB International bankruptcy docket; Akerman LLP firm records

E. Federal Secured Creditor Predicates

PA #

Actor(s)

Conduct

Date

Statute

Evidence Ref

PA-FED-01

Ackel (primary sender), Chamides (CC'd)

Post-notice electronic inquiry to SBA: "Can we auction everything off and not pay the SBA anything?" — representing deliberate intent to deprive federal secured creditor of perfected lien recovery. SBA responded same day through Nak[illegible] B. Abouem confirming UCC-1 perfected and priority interest not disclaimed. The inquiry itself is evidence of fraudulent intent: Ackel sought confirmation that the SBA could be excluded from asset distribution BEFORE proceeding with conversion.

Nov 5, 2025

18 U.S.C. § 1343 (wire fraud — email transmission)

Smoking-gun email chain: Ackel → SBA (Nov 5, 2025); SBA response (Nakayama B. Abouem, same date); CC: Nancy Chamides; Subordination agreement (May 30, 2024)

PA-F5[illegible]-02

Ackel, BlueWater, coordinating enterprise actors

Post-notice conversion and concealment of SBA-encumbered assets, commencing 5-8 days after Ackel's Nov 5 inquiry and SBA's same-day confirmation of perfected lien. The seizure of $1,166,000 in SYG collateral on November 10-13, 2025 occurred with actual knowledge that every asset seized was subject to a perfected SBA first-position lien.

Nov 10-13, 2025 (seizure), continuing

18 U.S.C. § 1343 (wire fraud); FL § 812.014 (conversion of federally secured collateral)

Transaction records; FLPD Case #34-2512-209096; Nov 5 email chain establishing actual knowledge timeline

PA-F[illegible]

Enterprise actors (coordinated)

Ongoing collateral diversion impairing SBA first-position security interest — including unauthorized sale of SK35 gyroscopic marine stabilizer equipment ($3[illegible] on Dec 5, 2025), possession of SK26 gyroscopic marine stabilizer equipment via Ares Marine, and extortionate storage demands ($135/day) on

federally secured assets

Dec 5, 2025/continuing

18 U.S.C. § 1343; 18 U.S.C. § 1962(d) (conspiracy to convert secured collateral)

SBA servicing records; SK35 model stabilizer sale documentation; SK26 model stabilizer possession records; storage demand communications

PA-FED-04

Enterprise actors (through default cascade)

Secondary lien impairment — Locality Bank 7(a) SBA-guaranteed loan forced into default through enterprise-driven creditor cascade, MCA acceleration, and BofA account freeze. The Locality Bank loan guarantee creates additional federal program loss because the SBA must cover the guaranteed portion upon Locality Bank default.

2025-ongoing

18 U.S.C. § 1343

Locality Bank records; SBA guarantee documentation; MCA acceleration records; BofA freeze records

F. Enterprise-Produced Judgment Enforcement Predicates

PA #

Actor(s)

Conduct

Date

Statute

Evidence Ref

PA-VIV-0

Vivid Medical / Valcourt entities

Garnishment of Plaintiff's personal Chase bank account in excess of $85,000 pursuant to enterprise-produced default judgment obtained through coordinated creditor cascade. without valid basis to pierce individual liability

2025-2026

18 U.S.C. § 1343 (wire fraud — electronic garnishment)

Chase garnishment records; VIV docket

PA-VIV-0

Vivid Medical / Valcourt entities

Obtained default judgment against SYG without proper service upon Managing Member, in coordination with enterprise timing designed to prevent response

On or after the date of judgment entry (exact date to be confirmed through discovery)

18 U.S.C. § 1343

VIV docket; service records

V. INJURY AND CAUSATION

Damages are presented as a line-item schedule mapped to direct injury and predicate linkage, not lump-sum demands.

Plaintiff seeks recovery in this Track 2 pro se filing only for injuries that struck him directly in his own business or property. Plaintiff does not rely on the

mere fact that SYG suffered harm. Rather, the enterprise used litigation fraud, creditor-cascade tactics, physical seizure, and counsel-prevention methods to reach Plaintiff's own accounts, credit, homestead exposure, litigation expenditures, and personal liability position.

The proximate-cause chain is direct. The VIV predicate series resulted in an actual garnishment of Plaintiff's personal Chase account. The CMR and SCB predicate series forced Plaintiff to incur personal litigation expense and defense burden while depriving SYG of counsel and using that deprivation to obtain or press enterprise-produced judgments. The PA-FED, PA-LOC, PA-MCA, and related predicates impaired collateral and lending relationships tied to obligations for which collection pressure was directed at Plaintiff personally, thereby damaging his credit, exposing his homestead and other personal assets, and forcing him to defend concurrent proceedings in his own name.

To the extent the tables below identify entity-level SYG injuries, those allegations are pleaded as enterprise-injury background and to preserve the factual chain for later amendment, counsel appearance, or related proceedings. Plaintiff's present direct damages demand in this complaint is limited to his own personal business-or-property injuries and to any additional direct personal losses proved through the same predicate sequence.

A. P[illegible]tmann — Individual Injuries

Injury Category

Amount

Predicate Link

Evidence:

1

Personal bank account garnishment (Chase — VIV enterprise-produced

judgment)

$85,000 –

PA-VIV series

Chase garnishment records

2

Personal credit destruction

To be proven at trial (expert damages analysis)

Enterprise-wide

Credit reports pre/post enterprise

3

Homestead threat (NFC foreclosure)

Homestead equity — to be proven at trial

PA-NFC series

Property records; NFC docket

4

Personal liability exposure across 9 concurrent matters

Litigation costs — to be proven at trial

Enterprise-wide

Docket records all 9 cases

B. SYC Entity-Level Enterprise Injuries (Background / Preserved for

Amendment)

Injury Category

Amount

Tier

Predicate Link

Evidence

1

Property seizure — collateral conversion

$1,[illegible]

T1

PA-[illegible]

FL[illegible]2-209096

2

SK35 vessel conversion

$30[illegible]

T1

PA-[illegible]

Sale [illegible] Dec 5, 2025

3

CMR enterprise-produced judgment

$6,[illegible]

T1

PA-CMR series

DE [illegible]

4

SBA EIDL loan default (enterprise causation)

$1,9[illegible]

T1

PA-MCA series; PA-LOC-01

SBA servicing records

5

Locality Bank 7(a) default

$9[illegible]

T1

PA-[illegible] PA-FED-04

Locality Bank records

6

Five Star SBA term default

$10[illegible]

T1

PA-MCA series

Loan [illegible]

7

Rent overpayment (Ackel)

$21,[illegible]

T1

PA-LOC series

Payment records

8

Security deposit unreturned

$15,000

T1

PA-LOC series

Lease records

9

Tier 1 Subtotal

$10,9[illegible]

T1

10

SHM duress settlement

$238,000

T2

PA-SH[illegible]

Settlement agreement

11

GL insurance cancellation (2x)

$150,000+

T2

PA-MCA series

Insurance records

12

Customer contract destruction (All Speed Fins, Quad Humphree)

$2,500,000+

T2

PA-S[illegible]-02

Contract/correspondence records

13

MCA acceleration damages

$500,000+

T2

PA-MCA-01

High[illegible]/Sinclair/Nexus records

14

BofA account freeze — payroll/tax penalties

$200,000+

T2

PA-MCA-02

BofA/IRS/FL DOR records

15

Tier 2 Subtotal

$3,5[illegible]+

T2

16

Seakeeper dealer revenue destruction

$5M-$15M

T3

PA-SKP-0[illegible]

Dealer revenue model

17

Salty Marine patent value

$9,7[illegible]

T3

PA-SKP series

Patent [illegible]

18

DARPA/Navy pipeline

$6,0[illegible]

T3

PA-SKP series

Defense contract pipeline

19

Going concern value destruction

$5M-$[illegible]

T3

Enterprise-wide

Before-harm business valuation

20

Tier 2 Subtotal

$25.75M-$40.75M

T3

21

SBA EIDL lien impairment (federal secured creditor injury — §1964(c)

standing)

$1,915,[illegible]

FED

PA-FED-01, PA-FED-02, PA-FED-03

SBA loan records; UCC-1 filing; Nov 5 smoking-gun email; FLPD seizure

records

22

Locality Bank 7(a) SBA-guaranteed lien impairment

$934,[illegible]

FED

PA-FED-[illegible], PA-LOC-01

Locality Bank loan records; SBA guarantee documentation

23

Note: Rows 21-22 represent distinct legal injuries to federal program

interests. SYG's entity-level damages (rows 4-5) are economic losses to SYG from

default; rows 21-22 are impairment of the SBA's perfected security interest through

enterprise-driven conversion of encumbered collateral. Not double-counted.

C. Causation Chain

Each direct personal injury identified in Section V.A flows from a specific predicate sequence without dependence on a legally independent third-party decision. The VIV garnishment injury flows from PA-VIV-01 and the enterprise-procedural judgment-enforcement chain. Plaintiff's personal credit, homestead exposure, and litigation-cost injuries flow from the PA-FED, PA-LOC, PA-MCA, PA-CMR, and PA-SCB series because those predicates impaired collateral, triggered defaults, accelerated enforcement, and forced Plaintiff to respond personally across multiple matters.

The CMR default-judgment injury is not pleaded merely as an adverse court outcome; it is pleaded as the direct consequence of the fraud-laden sequence alleged in PA-CMR-01 and PA-CMR-02, combined with the enterprise's counsel-prevention method, which stripped SYG of the ability to defend and thereby drove enforcement pressure onto Plaintiff personally. Likewise, the Locality Bank and SBA-related injuries are not pleaded as mere downstream lending consequences; they are pleaded as the direct result of post-notice conversion, collateral concealment, and acceleration tactics that impaired secured assets and immediately increased collection pressure against Plaintiff.

The S[illegible] and SHM-related allegations are pleaded to show that the enterprise directly destroyed Plaintiff's own compensation stream, professional goodwill, and continuing business expectancy, not merely SYG's topline revenue. Accordingly, the predicate acts alleged here were both the but-for cause and the

pro[illegible] of Plaintiff's personal business-or-property injuries.

**Pos[illegible]rroborating Developments.** Since the filing of the original Complaint, proc[illegible] three independent forums have produced record facts consistent with the ent[illegible]rn alleged herein. Plaintiff cites these records as public docket facts, not as proof of [illegible]s they contain:

- [illegible]ber 23, 2026, a complaint captioned *Gary A. Goldstein v. Pilgrim Caribbean [illegible], et al.* was filed in the Circuit Court of the 15th Judicial Circuit, Palm Beach [illegible] Florida, Case No. 502026CA012065, Division AD (Judge Jaimie R. Goodman; [illegible] #259927682), by Gary A. Goldstein — the attorney of record for the Ivankovich [illegible]ankruptcy proceedings. The complaint, a matter of public record, names [illegible]nt Steven Ivankovich and Dr. Olga Ivankovich individually alongside twenty-[illegible]rprise entities including Yacht Daddy LLC, Turtle Way LLC, North American [illegible] LTD (Cayman), Downtown Property Ventures LLC, and Tyler Atlas LLC, and [illegible]ivil fraud, extortion, obstruction of justice, conspiracy, aiding and abetting [illegible]nd fraudulent conveyance — entities and patterns overlapping those alleged in [illegible]on.
- [illegible] *Estate of Anthony D. Ivankovich*, No. 2026-003865-CP-02 (11th Jud. Cir., [illegible]Dade), Dr. Olga Ivankovich has been appointed Personal Representative and [illegible]ssued, and Seacoast National Bank has filed a Statement of Claim asserting a [illegible]approximately $1.49 million (DIN 26) — placing the decedent's estate within the [illegible]-map of the enterprise alleged herein.
- [illegible]*hai Holdings Ltd. v. Ivankovich*, No. 1:20-cv-04985 (N.D. Ill.), the United [illegible]ourt of Appeals for the Seventh Circuit has stayed disbursement of a [illegible]19.10 registry fund (docket entry 435) pending appeals Nos. 25-2561, 25-2585, [illegible], and 25-3185 — freezing the same-scale fund at the center of the disputed asset [illegible]
- d. [illegible]mation and belief, the convergence of an insider-pleaded enterprise structure [illegible]dministered estate receiving a major bank claim (b), and a judicially frozen fund [illegible]ing scale (c) is consistent with the asset-concealment and diversion pattern [illegible]n this action.

VI. COUNTS

COUNT I — RICO: CONDUCT OF ENTERPRISE THROUGH PATTERN OF RACKETEERING ACTIVITY

(18 U.S.C. § 1962(c)) — Against All Defendants

Plaintiff realleges and incorporates paragraphs 1 through 51 as if fully set forth herein.

At all relevant times, the association-in-fact enterprise described in Section II existed and operated as a continuing unit with a common purpose.

Each Defendant conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c), by committing the predicate acts set forth in Section [illegible]

The pattern of racketeering activity consisted of at least 32 predicate acts identified above over a period of 47 months, demonstrating both relatedness (all acts share the common purpose of destroying SYG and extracting its assets) and continuity (both closed-ended and open-ended per H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 242 (1989)). Plaintiff reserves the right to identify additional predicate acts through discovery.

Each Defendant's participation in the enterprise satisfies the Reves v. Ernst & Young, 507 U.S. 170, 179 (1993) operation or management test:

Ivanov: Directed Hub 1 litigation strategy, authorized filings, controlled CMK

Acker[illegible]: Directed Hub 2 physical operations, signed subordination, ordered

seiz[illegible]

Hun[illegible] [illegible]ed void service, managed BlueWater, conducted extortion calls, [illegible] asset conversion through In-Visions LLC

Bur[illegible] [illegible]ed the inflation instrument (fraudulent affidavit)

Brig[illegible] [illegible]aged BlueWater operations, received SK35 sale proceeds

Pine[illegible] [illegible]ed/possessed stolen assets via Ares Marine

Bigg[illegible] [illegible]ucted pre-seizure intelligence operations across hubs

Mc[illegible] [illegible]ed enterprise discovery weaponization communications

Flit[illegible] [illegible]ipated in enterprise information channeling tied to discovery and [illegible]-adjacent intelligence transmission

Ha[illegible] [illegible]ed in compartmentalized enterprise coordination and inte[illegible]ting

Ak[illegible]P: Served as legal coordination channel through triple co[illegible]esentation — CMR creditors (Hub 1), SCB vessel arrest (co[illegible]nnel), and IFB International bankruptcy (DIP counsel) — all sim[illegible]argeting SYG or SYG-related interests. Prosecuted PA-NEW-01 (de[illegible]nder conflict) and PA-NEW-02 (SCB complaint under conflict).

Kl[illegible]ed SCB foreclosure and sent demand letter (PA-NEW-01) wh[illegible]oncealing triple concurrent conflict; authored conflict denial letter (Ja[illegible]ontradicted by concurrent docket records across three matters.

Yo[illegible]oted SCB admiralty enforcement (PA-NEW-02) through tri[illegible] firm.

CM[illegible]gation vehicle filing fraudulent damages claims (PA-CMR-

01, [illegible])

Bl[illegible]: Physical seizure vehicle converting $1,166,000 in col[illegible]OC-02)

In-[illegible]: Bridge entity facilitating asset relocation and concealment (PA-[illegible]

Na[illegible]ators LLC: Deployed for unauthorized asset location ope[illegible]-SCB-03)

Mc[illegible]any, P.A.: Professional association channel through which ent[illegible]very and intelligence handling functions were performed

H[illegible] Sinclair / Nexus: Financing-lane actors in coordinated def[illegible]ation and bank-freeze pressure (PA-MCA-01, PA-MCA-02)

As [illegible] proximate result of Defendants' conduct, Plaintiff suffered dire[illegible]njuries to his business and property as set forth in Section V.A, inc[illegible]ual personal-bank garnishment exceeding $85,000, personal credit imp[illegible]nestead exposure, personally incurred litigation burden, and other pe[illegible] to be proven at trial. The broader SYG entity-level injury schedule is [illegible]erprise background and preserved for later amendment or related relie[illegible] present direct-damages demand in this pro se count.

Pla[illegible]ed to recover treble damages, reasonable attorney's fees, and cos[illegible]der 18 U.S.C. § 1964(c).

CC[illegible] — [illegible]ICO CONSPIRACY

(1[illegible]62(d)) — Against All Defendants

Pla[illegible]es and incorporates paragraphs 1 through 58 as if fully set

for [illegible]

Ea[illegible] knowingly agreed to the overall objective of the enterprise and [illegible] an act of racketeering would be committed by a member of the co[illegible]rtherance of that objective. Salinas v. United States, 522 U.S. 52, 63-6[illegible] defendant need not have personally committed two predicate acts — [illegible] predicate act — to be liable under § 1962(d); it is enough that the defe[illegible] about and agreed to facilitate the scheme." Id. at 66.

The [illegible]-spoke conspiracy structure is evidenced by:

(a) [illegible] agreements: Ivankovich directed Hub 1 actors (Burell, Mc[illegible] toward the shared objective of financial extraction through litigation fra[illegible]or cascade. Each actor performed a role comprehensible only as par[illegible]ated plan.

(b) [illegible] agreements: Ackel directed Hub 2 actors (Hunter, Brighton, Pine[illegible]ater) toward the shared objective of physical asset seizure and co[illegible] sequential chain — Biggie reconnaissance → Hunter void service → [illegible] → Brighton proceeds collection → Pineiro asset receipt — evi[illegible]inated agreement.

(c[illegible]m connections: The enterprise is not merely two independent sp[illegible]rman LLP dual-representation channel, the Ed Biggie intelligence rel[illegible]nchronized timing (January 31, 2025 Triple Coordination Event; Feb[illegible] 2026 National Liquidators/SCB sequence) connect the hubs into a uni[illegible]cy.

Ea[illegible]s agreement to the conspiracy is supported by:

De[illegible]

Ev[illegible]agreement

Iva[illegible]

Dire[illegible]litigation, controlled entity, authorized filings

Ack[illegible]

Sig[illegible]ation with intent to breach, orchestrated seizure

Hu[illegible]

Ex[illegible]service for own company, managed BlueWater, conducted

ext[illegible]

Bu[illegible]

Pr[illegible] false affidavit — requires coordination with Ivankovich

Brig[illegible]

Re[illegible]eds from unauthorized SK35 sale — requires agreement with

Ac[illegible]

Pi[illegible]

Re[illegible]ssessed SK26 via Ares Marine — requires Hub 2 coordination

B[illegible]

4 [illegible]e visits spanning months — ongoing intelligence agreement

M[illegible]

Ha[illegible]ry communications channeled through enterprise

Fl[illegible]

Pa[illegible] enterprise intelligence and communications channel functions

lin[illegible]eper and CMR tracks

Han[illegible]

Par[illegible] post-arrest compartmentalized information-control and routi[illegible]s within enterprise channels

Ak[illegible]

Tri[illegible]t representation (CMR + SCB + IFB International) creating infor[illegible] bridge — firm-level decision to maintain conflicted representation acro[illegible] enterprise-related matters; conflict denial letter issued three days befor[illegible] complaint

Kio[illegible]

Filed [illegible] denial contradicted by docket — affirmative concealment of trip[illegible] continued prosecution of SCB and demand activities (PA-NEW-01, PA[illegible] after awareness of conflict

Yo[illegible]

Co[illegible] SCB enforcement (PA-NEW-02) through triple-conflicted firm [illegible]ledge of concurrent CMR representation

CM[illegible]

En[illegible] directed by Ivankovich for Hub 1 objectives

Bl[illegible]

En[illegible] directed by Ackel for Hub 2 objectives

In[illegible]

Bri[illegible] facilitating cross-hub asset operations

Nan[illegible]dators LLC

De[illegible] unauthorized operations — requires commissioning agreement

M[illegible] any, P.A.

Ins[illegible] nnel for Moore/Flitman litigation-adjacent communications and [illegible] handling

Hig[illegible] Sinclair / Nexus

Co[illegible] A-default and bank-freeze pressure lane aligned with enter[illegible] and extraction objective

CO[illegible] CIVIL THEFT

(FL [illegible] Against Ackel, Hunter, Brighton, Pineiro, BlueWater Reel Est[illegible]

Pl[illegible] ges and incorporates paragraphs 1 through 62 as if fully set for[illegible]

Pl[illegible] this count only to the extent the alleged theft and conversion dire[illegible] him individually, including by impairing collateral tied to obli[illegible] rced against him personally, increasing personal collection pres[illegible] using direct out-of-pocket and enforcement-related losses. To the ext[illegible] erted property belonged solely to SYG, those entity-level losses are pres[illegible] endment, substitution, or counsel-led pursuit and are not pleaded here[illegible] lone individual recovery theory.

De[illegible] el, Hunter, Brighton, and Pineiro, acting through BlueWater Ree[illegible], committed theft of $1,166,000 in SYG collateral as defined by FL [illegible]

O[illegible] 2025, a court entered a felony finding establishing probable ca[illegible] egree Grand Theft under FL § 812.014(2).

On [illegible] 2025, vessel SK35 was sold for $309,000 without auth[illegible]d in violation of existing SBA and Locality Bank security interests.

The [illegible]al prerequisites of FL § 772.11, including the statutory dem[illegible] have been satisfied or are excused by the ongoing criminal proc[illegible] the defendants' demonstrated intent to conceal and dispose of ass[illegible]

Plain[illegible] under this count only those damages directly suffered by him indi[illegible] a result of the theft and conversion sequence, in an amount to be prov[illegible] together with any statutory relief available on that direct personal-inj[illegible]

CO[illegible] — FRAUD

Ag[illegible]vich, Ackel, Burell, CMR

Pla[illegible]ges and incorporates paragraphs 1 through 68 as if fully set for[illegible]

Su[illegible]raud (Ackel): Ackel signed the subordination agreement on Ma[illegible]ith specific intent to later breach it by seizing the exact collateral he [illegible] A contemporaneous confirmation email reflects Ackel's knowledge and int[illegible] relied on Ackel's commitment to subordination when continuing to ope[illegible] BlueWater location.

Da[illegible] (Ivankovich, Burell): Ivankovich directed Burell to submit a sw[illegible] containing a $758,000+ overstatement of damages. This Co[illegible] the affidavit in calculating the $6,524,783.18 default judgment. The fra[illegible] a judgment that would not have been entered in that amount but for

the [illegible] it, and that inflated judgment was then used to intensify

enfor[illegible] ssure, defense burden, and collection exposure against Plaintiff

per[illegible]

CO[illegible] — [illegible]ORTIOUS INTERFERENCE WITH BUSINESS

REL[illegible]PS

Ag[illegible]ich, Ackel, Hunter, SHM LMC, Blackstone Group

Plai[illegible]ges and incorporates paragraphs 1 through 71 as if fully set

fo[illegible]

Plai[illegible]ned valid business relationships with Seakeeper (dealer

agr[illegible] 72.5M value), SBA (EIDL loan), marine customers (All Speed

Fi[illegible]phree), and insurance carriers.

De[illegible] knowledge of those relationships.

De[illegible]tionally and unjustifiably interfered through: dealer

ter[illegible]keeper), workspace lockout (SHM), payment refusal then default

acce[illegible]CA), and collateral seizure (Ackel/BlueWater).

As [illegible], Plaintiff lost his personal compensation stream,

pr[illegible]dwill, business expectancy, insurance-backed operating continuity,

an[illegible] personal economic interests tied to those relationships. Entity-level

co[illegible]erprise-value losses are preserved as background and for later

am[illegible] extent they exceed Plaintiff's current individual recovery theory.

V[illegible]OR RELIEF

W[illegible] Plaintiff respectfully requests that this Court:

A. [illegible]lief

En[illegible] in Plaintiff's favor on Count I (RICO § 1962(c)) for treble da[illegible] 18 U.S.C. § 1964(c) for Plaintiff's direct personal business-or-pro[illegible], including the personal-bank garnishment already suffered and add[illegible] personal losses proved at trial;

Ente[illegible] on Count II (RICO Conspiracy § 1962(d)) jointly and sev[illegible] all Defendants;

Ente[illegible] on Count III (Civil Theft FL § 772.11) for those direct pers[illegible]ges, statutory multiples, and related relief that Plaintiff proves were ca[illegible]eft and conversion sequence as applied to him individually;

En[illegible] on Count IV (Fraud) for compensatory damages;

En[illegible] on Count V (Tortious Interference) for compensatory da[illegible]ing Plaintiff's lost personal compensation, business expectancy, goo[illegible]her direct personal economic harm;

Aw[illegible]e attorney's fees under 18 U.S.C. § 1964(c) and FL § 77[illegible]

Aw[illegible]ment and post-judgment interest;

Aw[illegible] suit.

B[illegible]ief

En[illegible]ive trust over all SYG property and assets currently held by or [illegible]rol of any Defendant;

Ord[illegible]ing of all SYG assets seized, sold, transferred, or concealed by [illegible]ince May 30, 2024;

En[illegible]nt injunction prohibiting Defendants from further disposing

of [illegible] or encumbering any SYG property or assets;

Or[illegible]ent of all profits derived from the enterprise's racketeering

ac[illegible]

C[illegible]lief

Gr[illegible] and further relief as this Court deems just and proper.

**SU[illegible]TAL VERIFIED FACTUAL ALLEGATIONS INCORPORATING L[illegible]LARS P10, P11, POST-SETTLEMENT RETALIATION, AND BA[illegible]CY / ACAP RECORD (OCTOBER 2026)**

**A. [illegible] 13-Wire Bank of America Fedwire Origination Proof (A[illegible]_Steve_1.pdf vs. 0:23-cv-61696-AHS D.E. 309-2 Exhibit D-7)**

A[illegible]dant Steven Ivankovich and Defendant Contessa Marine Research LLC re[illegible] Court on the morning of the February 23, 2026 bench trial in Case No. 0:23-cv[illegible] D.E. 309-2, Exhibit D-7; Tr. 72:16–73:12) that all thirteen (13) incoming wires to [illegible]41.18 were paid by Contessa Marine Research LLC for *M/V Octopussy* (and Co[illegible]el stated on the record, *"Nothing about any other boats; this is just monies di[illegible] the Octopussy project,"* Tr. 73:9–11), the underlying Bank of America In[illegible] transfer statements establish on their face that:

[illegible] (2) **wires totaling $977,699.42** (06/17/2022 TRN 2022061700445477 for [illegible].42 and 07/21/2022 TRN 2022072100394168 for $150,000.00, sent from The [illegible] New York Mellon) originated from **ORIG: CONTESSA MARINE [illegible]CH ID: 030206325;**

[illegible] **wires totaling $1,576,941.76** (sent from JPMorgan Chase Bank, N.A.) [illegible] from a non-party entity controlled by Defendant Steven Ivankovich, **ORIG: [illegible]OE FAMILY DWELLING L ID: 930078261** — and **two of those Glencoe [illegible] Dwelling wires (04/08/2022 TRN 2022040800272884 for $12,862.00 and [illegible]2 TRN 2022090900186028 for $500,000.00, totaling $512,862.00) carry the**

[illegible] **edwire payment-detail memo "PMT DET: ... ESTIMATE 2009 7264** [illegible] **D"** (contradicting Ivankovich's sworn testimony at Tr. 122:25–123:18);

[illegible] **wires totaling $950,000.00** (01/11/2023 TRN 2023011100297919 for [illegible].00, 01/18/2023 TRN 2023011800240397 for $500,000.00, and 02/10/2023 [illegible]3021000164057 for $150,000.00, sent from JPMorgan Chase Bank, N.A.) [illegible] from non-party **ORIG: PREMIERE ORLANDO PORTFOLI ID:** [illegible]57; and

4. [illegible] **wire of $1,000,000.00** (03/31/2023 TRN 2023033100572987, sent from [illegible]n Chase Bank, N.A.) originated from non-party **ORIG: ATLAS HOLDINGS** [illegible] **MENT ID: 210523681** ($977,699.42 + $1,576,941.76 + $950,000.00 + [illegible].00 = $4,504,641.18).

**B. P**[illegible] **Closed 3-Unit Seakeeper 35 (SK35) Accounting & Two-Return Email Proc**[illegible] **G006174 & SYG007528–007584)**

The [illegible]ed SYG sales report (Bates SYG006174 and SYG007528–007584) documents SY[illegible] Seakeeper 35 (SK35) Octopussy invoice ("Three Wooden Boxes", $57[illegible] aggregate — serials 35-212-0428 / 35-212-0432 / 35-212-0433 per the ma[illegible] record at D.E. 314-3 / Trial Exhibit D-82). Contemporaneous emails between Fla[illegible] Stratmann, SYG Director of Operations Travis Moore, CFO Brian Ke[illegible] eeper executives E.A. Smith, Chad Hoey, Tom Cole, and Brad Mead establish th[illegible] **ose three SK35 units were returned to Seakeeper under two distinct** [illegible]**gements (one for cash less return shipping, restocking fee, and offset; the** o[illegible] **credit only, $0.00 cash)**:

1. [illegible] **#1 of 3 (Q4 2023 Return to Seakeeper — Cash Less Return Shipping,** [illegible]**ng Fee, & Offset):** Received by Seakeeper on December 4, 2023 and approved [illegible]ory Acceptance Testing (FAT) on December 13, 2023 by Seakeeper Director [illegible] Operations E.A. Smith (easmith@seakeeper.com) for a **($170,004.20) return** [illegible]emo (0:23-cv-61696-AHS D.E. 237 at p. 4; Bates SYG007528–007584), less

[illegible].20 in open Seakeeper invoices = **$152,661.00 net cash wire** received December [illegible]

2. [illegible] **#2 of 3 (Q1 2024 Return to Seakeeper — Store/Account Credit Only, [illegible]sh):** Returned to Seakeeper pursuant to the **January 9, 2024** written agreement [illegible] SYG Director of Operations Travis Moore (travis@starboardyacht.com) and [illegible] Director of Americas Sales & Service Chad Hoey (choey@seakeeper.com, [illegible] Cole and Brad Mead: *"The SK35 would be returned to Seakeeper for an [illegible] 190k credit to the SYG account... Good morning Travis, All below is [illegible] Thanks! — Chad Hoey"*) and confirmed in Plaintiff's January 16, 2025 [illegible]g directive ("2 SK 35 Seakeepers. 1 return and wire received in q4 2023 and [illegible] return for credit q1 2024"), yielding **$0.00 in cash** to SYG (only a store/account [illegible] Seakeeper subsequently froze when it downgraded and terminated SYG's [illegible] — directly refuting Defendant Steven Ivankovich's sworn trial testimony at [illegible] *"A second Seakeeper was sold"* for unremitted cash proceeds); and

3. [illegible] **No. 221-0589 — SYG's Unsold Inventory Unit (Serial-Separated per [illegible]-3 / Trial Exhibit D-82 in the CMR case):** Confirmed in the January 16, 2025 [illegible]ing log as ***"One still in stock"*** after the two returns to Seakeeper. The [illegible]er's serial-level record accounts for all three Octopussy units elsewhere (35- [illegible] and 35-212-0432 returned; 35-212-0428 "still installed on the boat"), so the [illegible] in SYG's unsold inventory at the premises was the separate inventory unit **[illegible] 221-0589 ($309,000.00 value)** — the unit seized at Lauderdale Marine [illegible]ing the BlueWater eviction (COSO-25-053444) and sold by Defendant Tom [illegible] December 5, 2025 (FLPD Case #34-2512-209096 / BSO Axon #02-2601- [illegible]

**C. [illegible]ent Retaliation Sequence & Bankruptcy Adversary (24-01411-LMI/PDR) / Flori[illegible] (Exhibit Q) Record**

**[illegible]ement Retaliation & Triple Adjudication of the $226,502.19 LMC [illegible]acks:** On January 26, 2024, counsel for SHM LMC issued a demand to vacate

...d's premises; on December 11, 2024, SHM LMC terminated Starboard's access; ...December 30, 2024, a no-trespass directive was issued by letter. After a ...3.55 settlement was executed on February 6, 2025 (resolving the four LMC ...d chargebacks totaling $226,502.19 plus interest, 0:23-cv-61696-AHS D.E. 94 ... 22–25, 91), Defendant Akerman LLP reinstated the no-trespass directive ... Plaintiff on **May 21, 2025** (...AKERMAN_NOTRESPASS_REINSTITUTED_20250521.eml), obtained a ...r 24, 2025 enforcement order (D.E. 244) and a January 13, 2026 Final ... for SHM LMC (D.E. 268), and Contessa then obtained a second judgment on ...cal $226,502.19 chargebacks in D.E. 337.

2. ... PACER Bankruptcy Adversary (Adv. No. 24-01411-LMI/PDR & Lead BK ...-LMI/PDR) & Florida Bar ACAP Jurisdictional Deferral (Exhibit Q): ... PACER docket records in *Ivankovich Family LLC, et al. v. Steven Ivankovich, et* ... Proc. No. 24-01411-LMI/PDR (S.D. Fla. Bankr.) establish that Akerman ... Eyal Berger, Esq. filed the Adversary Complaint (Adv. DE 1 on 10/17/2024, ... 4 on 10/25/2024) and received a $433,242.80 fee award (BK DE 655/656 on ...), that Defendant **Amanda Klopp, Esq.** entered formal Notices of ...ance (Adv. DE 11 on 12/04/2024 and Adv. DE 21 on 01/06/2025) as counsel of ... Ivankovich Family LLC, A&O Family LLC (FL), A & O Family LLC (IL), ... P2 Managing Member, LLC, and that the Ivankovich Adversary Plaintiffs ... DE 182 and Adv. DE 183 on **February 13, 2026** — the exact same date ...26) that Defendant Klopp filed the Warrant of Arrest (DE 6) and custodian ...DE 7) for Seacoast National Bank in 0:26-cv-60289-WPD. Furthermore, The ...ar's ACAP letter (Exhibit Q in CA11 26-12270-G Doc. 18 at p. 8) did not ... Defendants Akerman LLP or Klopp, but expressly deferred the conflict ...ation to "the proper tribunal" because the allegations "present questions of law ... a dispute over which a court has jurisdiction."

## VIII. ... DEMAND

Plain[illegible]s trial by jury on all issues so triable.

Dated: [illegible]er 10, 2026

Respe[illegible]mitted,

/s/ Cha[illegible] Stratmann

CHA[illegible]OB STRATMANN

Plai[illegible]

545 N[illegible]venue

Fort [illegible] FL 33301

Tele[illegible]) 873-8546

Em[illegible]boardyacht.com

<u>VE[illegible]ON</u>

I, Ch[illegible] Stratmann, pursuant to 28 U.S.C. § 1746, declare under

pen[illegible]ry that the foregoing is true and correct to the best of my

know[illegible]rmation, and belief.

Exe[illegible]vember 10, 2026

Fort [illegible] Florida

/s/ C[illegible]b Stratmann

Ch[illegible]OB STRATMANN

Pr[illegible]

54[illegible]enue

Fort [illegible], FL 33301

Tel[illegible]) 873-8546

Em[illegible]boardyacht.com

**C[illegible]E OF SERVICE**

I [illegible]TIFY that on November 10, 2026, I filed the foregoing First An[illegible]ed Complaint with the Clerk of Court and served a true and cor[illegible]electronic mail upon counsel of record: Bryan Thomas West, Es[illegible]LP), bryan.west@akerman.com, counsel for Defendant Akerman LLP[illegible] Marcus Brill, Esq. (Glachman & Brill, P.A.), jor[illegible]nbrill.com, counsel for Defendants Ackel, Brighton, Hunter, an[illegible]eal Estate LLC. Service of process on De[illegible] be completed pursuant to the Court's January 12, 2027 de[illegible]

/s[illegible] Stratmann

C[illegible]OB STRATMANN

Charles Jacob Stratmann
Plaintiff Pro Se
545 NE 17th Avenue
Fort Lauderdale, FL 33301
Telephone: (954) 873-8546
Email: jake@starboardyacht.com

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 0:26-cv-61150-PAB

CHARLES JACOB STRATMANN,

Plaintiff,

v.

STEVEN IVANKOVICH, et al.,

Defendants.

_______________________________________/

# PLAINTIFF'S NOTICE OF FILING CORRECTED FIRST AMENDED VERIFIED COMPLAINT

Plaintiff Charles Jacob Stratmann, proceeding pro se, gives notice of filing the attached Corrected First Amended Verified Complaint and states:

1. On October 23, 2026, the Court granted in part Plaintiff's motion (D.E. 35), granting leave to file an amended complaint on or before November 6, 2026, and extending the deadline to serve process and file proofs of service to January 12, 2027 (D.E. 36).

2. On November 9, 2026, Plaintiff filed his Motion for Extension of Time (D.E. 38) and the First Amended Verified Complaint was docketed at D.E. 40 with attachments at D.E. 40-1 through 40-3. By Paperless Order entered November 10, 2026 (D.E. 41), the Court granted D.E. 38 and deemed the amended complaint filed at D.E. 40 timely.

3. The First Amended Verified Complaint docketed at D.E. 40 was an incomplete earlier draft containing formatting defects and did not reflect Plaintiff's final amended pleading. By contemporaneous Notice of Errata and Clarification, Plaintiff files the Corrected First Amended Verified Complaint, which supersedes D.E. 40 in its entirety.

4. Summary of changes from the original Complaint (D.E. 1): corrected party names and caption, including the addition of Defendant Robert Allen Law; corrected verification and certificate of service dates; refined factual allegations consistent with the original pleading; a section of post-filing developments drawn from public court records, placed before the counts; the same five counts; and the original jury demand and verification.

5. The exhibit materials filed at D.E. 40-1 through 40-3 are public-record prints and remain part of the record; the Corrected FAVC incorporates them by reference to the extent cited. Plaintiff will supplement any exhibit found defective by separate notice.

6. Plaintiff will serve process on all Defendants by the January 12, 2027 deadline set in D.E. [illegible]

Dated: November 10, 2026

Respectfully submitted,

/s/ Charles Jacob Stratmann

CHARLES JACOB STRATMANN

Plaintiff, pro se

545 [illegible] Avenue

Fort Lauderdale, FL 33301

Telephone: ([illegible]) 873-8546

Email: [illegible]boardyacht.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 10, 2026, I filed the foregoing Notice and the attached Corrected First Amended Verified Complaint with the Clerk of Court and served true and

correct [illegible] by electronic mail upon counsel of record: Bryan Thomas West, Esq. (Akerman LLP), [illegible]st@akerman.com, counsel for Defendant Akerman LLP; and Jordan Marcus Brill, Esq. (Glachman & Brill, P.A.), jordan@glachmanbrill.com, counsel for Defendants Ackel, Brig[illegible], and Bluewater Reel Estate LLC, and by first-class U.S. Mail upon all Defe[illegible] represented by counsel at their addresses of record.

/s/ [illegible] Stratmann

CHAR[illegible]OB STRATMANN

# COVER NOTE / FILING MEMORANDUM

**CJS v. Ivankovich et al., No. 0:26-cv-61150-PAB (S.D. Fla.)**

*Accompanies the First Amended Verified Complaint*

Plaintiff Charles Jacob Stratmann, proceeding pro se, respectfully submits this First Amended Verified Complaint **pursuant to and within the deadline set by the Court's October 23, 2026 paperless Order (DE36)**, which granted leave to file an amended complaint on or before November [illegible] 2026, and extended the time to serve all defendants and file proofs of service through January 12, 2027. Plaintiff's Motion for Extension of Time was filed November 9, 2026 (DE38), and a summons was returned executed the same day (DE37).

**Conferral posture**: Local Rule 7.1(a)(3) certification is directed to motions. This filing is a pleading submitted under an express grant of leave previously ordered by the Court after briefing on the subject matter — it is not a motion seeking relief. Should the Court prefer a formal conferral record, Plaintiff will supplement promptly upon notice.

**Conferral certificate (S.D. Fla. L.R. 15.1 & 7.1(a)(3))**: Plaintiff certifies that on **November 6, 2026**, he conferred in good faith regarding the amendment and extension with counsel for appearing Defendants — Jordan Marcus Brill, Esq. (Glachman & Brill, P.A.) for Defendants Acke[illegible] Real Estate LLC, Brighton, and Hunter, and Bryan Thomas West, Esq. (Akerman LLP) for Defendant Akerman LLP — as reflected in the conferral correspondence underlying Plaintiff's Motion for Extension of Time (D.E. 38).

**Alternative authority**: This amended complaint is filed pursuant to the Court's October 23, 2026 paperless Order (DE36) and Plaintiff's extension motion (DE38, filed November 9, 2026). To the extent the amendment window is deemed to have run, Plaintiff alternatively invokes Fed. R. Civ. P. 15(a)(2), which provides that leave to amend should be freely given when justice so requires.

**Content of the amendment** (summarized per L.R. 15.1 practice): corrected party designations and [illegible] including the addition of Defendant Robert Allen Law; refined factual allegations

consistent with the original pleading; a new section of post-filing corroborating developments placed after the factual allegations and before the counts; the same five counts for relief as the original complaint; and the original jury demand and verification.

DATED [illegible] day of November, 2026.

/s/ ______________________________

CH[illegible]OB STRATMANN

Pro Se Plaintiff

**CERTIFICATE OF SERVICE**

I certify [illegible] November 10, 2026, a true and correct copy of the foregoing Cover Note / Filing Memorandum and the accompanying First Amended Verified Complaint were served via the [illegible] ECF system upon all counsel of record, including Jordan Marcus Brill, Esq. (G[illegible], P.A.) and Bryan Thomas West, Esq. (Akerman LLP), and via first-class U.S. [illegible] all Defendants without counsel of record at their addresses of record.

/s/ ______________________________

CHA[illegible]OB STRATMANN

# EXHIBIT A

**Case No. 0:26-cv-61150-PAB — United States District Court, Southern District of Florida**

**<u>GARY A. GOLDSTEIN v. PILGRIM CARIBBEAN ISLE LLC, ET AL.</u>**

**Case No. 502026CA012065** — 15th Judicial Circuit, in and for Palm Beach County, Florida

**Document:** Plaintiff's Verified Complaint (204 pages)

**Alleged Wrongdoing:** Fraud, civil theft, and conversion relating to marine-industry transactions involving Steven Ivankovich and associated entities, including asset dissipation and use of shell entities.

**Relevance to this action:** Cited in the First Amended Verified Complaint (Post-Filing Corroborating Developments; predicate-act corroboration) as an independent public-record proceeding naming enterprise principals and describing asset-concealment methods.

**Status:** Public-record court filing obtained from Palm Beach County Clerk records. [Printed separately — cover sheet only in this package.]

/s/ ______________________________

CHARLES JACOB STRATMANN

Pro Se Plaintiff

# EXHIBIT B

**Ca[illegible] 26-cv-61150-PAB — United States District Court, Southern District of Florida**

**GO[illegible] v. IVANKOVICH — SUPPORTING CASE RECORDS**

Ca[illegible] **[illegible]26C[illegible]012065** — 15th Judicial Circuit, in and for Palm Beach County, Florida

**Co[illegible]**

- [illegible] Cover Sheet(s) (portal filings _2, _4)
- [illegible]tion / First Amended Complaint cover record (_6, 11 pp.)
- [illegible]ed copy record (_5)
- [illegible] receipts (_8, _9, _12)

**Sou[illegible]** [illegible]NGS/Gary Goldstein vs ivankovich/ — public-record PDFs.

**Rele[illegible]** Establishes filing date, party designations, and procedural history of the Goldstein proc[illegible] [illegible]enced in the Complaint.

**Sta[illegible]** [illegible]ached or retained as needed — cover sheet only in this package.]

/s/ ______________________________

CH[illegible] [illegible]A[illegible]OB STRATMANN

Pro [illegible]

# EXHIBIT C

**Cas[illegible]26-cv-61150-PAB — United States District Court, Southern District of Florida**

**AF[illegible] OF JOSEPH SEINITZ**

In re [illegible] of Iv[illegible]**kovich**, No. 21 D 9220 — Circuit Court of Cook County, Illinois, Dom[illegible]ions Division

**Dat**[illegible] 2025 (file-stamped June 2, 2025, per lock memo)

**Dep**[illegible]ph Seinitz — cooperating witness with documented cooperation against Steven Ivan[illegible]

**Con**[illegible] affidavit describing Steven Ivankovich's asset-hiding network, including the ros[illegible] *[illegible]ploys Gary Goldstein, Nancy Webber, David Morris, Diana Sidek, Rodney Bal[illegible] Brown to help him move money, buy assets, hide assets, pay his bills, create LLC*[illegible]-asset concealment (Dubai Escalade / Cadillac titled to Mohamed Aljasmi).

**Cha**[illegible] Sealed intake package `02_[illegible]INTAKE/W2752_SEINITZ_AFFIDAVIT_LOCK/` — SHA-256 prefix `8A2C95E5`. Affi[illegible] Exhibits 1–6 were not attached to the source package and are noted as absent pen[illegible]

**Rele**[illegible]rroborates the enterprise's asset-concealment methods and identifies actors refe[illegible] Complaint's factual allegations.

**Sta**[illegible]ffidavit follows this cover page.

/s/ ______________________________

CH[illegible]B STRATMANN

Pro[illegible]

Atty No. 26828

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

| | | |
|---|---|---|
| IN [illegible]IAGE OF | ) | |
| | ) | |
| JEA[illegible]ANKOVICH, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | No. 21 D 9220 |
| and | ) | |
| | ) | |
| ST[illegible]KOVICH | ) | |
| | ) | |
| Respondent | ) | |
| | ) | |
| [illegible] IVANKOVICH, et al. | ) | |
| [illegible]-Party Respondents. | ) | |

## AFFIDAVIT OF JOSEPH SEINITZ

[illegible] Seinitz, hereby certify under penalty of perjury pursuant to Section 5/1-109 of the Illinois [illegible] Civil Procedure, as to the following matters:

[illegible] Joseph Seinitz, a resident of Dekalb, Illinois with a secondary residence in Flor[illegible]

[illegible] have known Steven Ivankovich and the Ivankovich family since the 1980's. I atte[illegible]e high school as Steven and his brother, Daniel Ivankovich.

[illegible] personally know Steven, Daniel, Olga and Anthony Ivankovich, as well as Jean[illegible]ch, both socially and most recently as a former employee of Steven Ivankovich.

[illegible] approximately 2019, Steven hired me to serve as his head of security, and as a full-[illegible] and advisor. In that role, I took care of security for the Ivankovich family and som[illegible]siness, financial and personal needs.

[illegible] When I was hired by Steven, Steven and Jeanette were married and not involved in a div[illegible]eding. I had the opportunity to get to know Jeanette, the parties' children and more impo[illegible] S[illegible]en, very well.

[illegible] am aware that around late 2021, Jeanette filed for divorce from Steven. I cont[illegible]rk for Steven even after the parties separated from one another, through early 2025.

[illegible] January 2022, I signed an affidavit on behalf of Steven which he presented to the divorce [illegible]

[illegible] November 17, 2022, I testified in this matter at the insistence of Steven as his witness [illegible]ring.

[illegible] Steven has involved me in his divorce proceeding as an affiant, witness and by speak[illegible] often concerning his divorce for the past three years.

[illegible] addition to speaking with me and others on my security team concerning his divorce [illegible] us to undertake certain actions, Steven often conversed with me and trusted me [illegible] with operating and overseeing many of his assets, including luxury yachts, other boats, [illegible] development projects and security for watercrafts and residences. From 2019 thro[illegible]25, I often had daily contact with Steven, multiple times per day, and if not daily, no [illegible]ekly. The breadth of the work I did for Steven is partially portrayed in the attached "Dis[illegible]stions" document that Steven had me complete in ____________, attached to my Affi[illegible]ibit **1**.

[illegible] my years of work with Steven, uncountable conversations with Steven and pers[illegible]ations of Steven, I have gained substantial knowledge concerning Steven's divorce strat[illegible]ss to assets, his extraordinary wealth, his hiding of assets through LLCs held in oth[illegible]s routine use of credit cards held in his father's name, the people who work for



#11[illegible]

Ste[illegible] loyal to him, the creation and control Steven asserts over LLCs, his personal use of luxury [illegible] and multiple million-dollar-plus residences, his financial support of his non-doc[illegible] fiancée who is not legally in the USA, and much more.

[illegible] On or around late March 2025, I voluntarily contacted counsel for Jeanette Iva[illegible] provided information to assist them in these divorce proceedings. I risked my job, my [illegible] security and my family's security in doing so. I voluntarily decided to take that risk beca[illegible] no longer stand watching Steven attempt to destroy his wife, his children and many oth[illegible] the way. In my opinion, Steven is a dangerous man, he does not care if he des[illegible] financially or otherwise.

[illegible] have been promised nothing from Jeanette and her attorneys, and I have come to the [illegible] the truth both through this affidavit and in any testimony that I may be asked to prov[illegible] Court or in any other proceeding.

[illegible] speaking the truth, the Court should be informed of the following non-exhaustive fac[illegible] part of my personal knowledge from my years of employment with Steven and [illegible] conversations with Steven:

[illegible] While I have been working with Steven, Steven has been in total control of [illegible]ions of assets, even though he attempts to portray in the divorce that his mother [illegible] are involved. Based upon my last personal observation of Steven's father, [illegible]ankovich in 2024, Anthony is not capable of conversing or understanding basic [illegible] to his health issues. Even prior to 2024, I never witnessed Anthony involved [illegible] the businesses Steven was operating, including Contessa Marine Research, held [illegible]'s name. Sometime around December 2024, while in Dubai, Steven [illegible]ated his father on the phone to gain access to funds held in his father's name.

...rmation and belief, this was not the only time that Steven impersonated his father ...ccess to funds held in his father's name. Steven also always carried at least one ...d held in his father's name which he used routinely to pay his personal expenses. ...ached a photocopy of one credit card that Steven had in his possession with ...s name and several screenshots from my computer of the credit cards in Anthony's ... were given to me by Steven to use to book airline travel for Steven and others. ...cuments are attached as **Exhibit 2**. I personally observed Steven using credit ...n his father's name for airline and hotel purchases, car rentals and dining out. ...lso gave the boat captain for the Contessa, one of Steven's yachts, a credit card in ...s name to pay for the boat's supplies.

Steven's mother Olga was never involved in any of LLCs nor made any ...s whatsoever concerning the buying and selling of yachts, boats, land and ...s. Steven controlled everything. Olga only knows what Steven tells her.

Just around the time the divorce started, Steven purchased the multi-...llar Octopussy boat with the intention of rehabbing it and reselling it. He used ...Contessa Marine Research, with Anthony as the member to title the boat. Anthony ...r involved in the purchase or rehab in any capacity. Steven was unable to ... the refurbishment of the yacht, and we had it shipped to Dubai, where it sits. ...involved in extensive litigation regarding this yacht.

Steven rents a residence in Monaco for $20,000 per month and a house in ...ada, Florida where he often stays with his fiancée, a girl named Ekaterina Zueva ...") from Siberia. I have been to the Islamorada residence many times. Steven ... residences personally. Steven also purchased an Aston Martin SUV for his own



#1122...

...se in Monaco. He purchased an engagement ring for Katie as well which she ...tinely. Because Katie is illegally within the United States, Steven transports her ...o and from Florida and the Bahamas on one of his boats, hiding her to avoid ...ion. Not only have I witnessed Katie in the Bahamas and at Steven's Islamorada ... but also my security team has been involved in transporting her to and from ...nations with Steven. See Exhibit 6, *supra*, which shows Katie and Steven in the ... in 2024. Katie cannot otherwise travel outside of the USA because of her illegal ...

I have travelled to Dubai and have worked with Steven while in Dubai. I ... Steven owns a condo in Dubai, and I have been there. It is plush, has 3-4 ... a 40-foot terrace and holds a lot of artwork. He paid a designer to furnish the ... Steven personally uses this residence and has had his employees, Diana Sidek ... Morris, stay at the Dubai residence as well. Steven also purchased a Cadillac ... in Dubai which he titled in the name of Mohamed Aljasmi.

Steven employs Gary Goldstein, Nancy Webber, David Morris, Diana ...ey Balasi, and Mark Brown to help him move money, buy assets, hide assets, ...ills, create LLCs. Steven also uses his loyal business associate, Olafur Hand, to ... belonging to Steven. All these people are paid with funds that Steven has access ... paid me and my team in the same manner and was often late with his payments. ... were typically made by wire transfer into our accounts. Attached as **Group** ... are "Certificate of Incorporation" documents for Trench Town Holdings Limited, ...rine Limited, and BooNooNooNoos Boats Limited, all incorporated by Steven in ...e Bahamas with Olafur Hand listed as the "Director" and sole "Shareholder."



#1122-...

Around late 2022 into early 2023, Steven purchased a residence at 233 [illegible]nee Street, Chicago next door to Jeanette. He told me that he had long ago made [illegible] purchase the residence from the family that lived there when the owner passed [illegible]. Steven titled the residence in an LLC. Steven sent one of my security team members [illegible]iew and secure the residence after it was purchased.

Steven has multiple yachts and many boats, harbored in Dubai, Florida, [illegible] Monaco. All the watercrafts are titled in various LLCs, including Contessa [illegible] Research, IMG, Yacht Daddy LLC and Poopsie Walla LLC. In full disclosure, I am [illegible] manager of IMG LLC and on Poopsie Walla I am a manager with Olafur Hand. [illegible] as **Exhibit 4** is a bill of sale from Steven's purchase of a pleasure boat on February [illegible] which Steven uses in Dubai.

In 2023, Steven purchased a 2024 Sunseeker 100 motor yacht through [illegible] Marine Research LLC and as the "authorized signatory," assigned the purchase [illegible] Daddy LLC, an LLC he created in the Cayman Islands. Steven is the sole member [illegible] Daddy LLC. Attached as **Group Exhibit 5** are (1) the Assignment, signed by [illegible] 2023; (2) the Register of Directors for Yacht Daddy; (3) the Minutes of the First [illegible] of the Board of Directors of Yacht Daddy LLC dated September 14, 2023 showing [illegible] the Director and sole shareholder and (4) the Campbells Questionnaire form for [illegible]rporation of Yacht Daddy LLC also listing Steven as the sole director and [illegible]der with Steven's contact information, further describing the business as a [illegible] entity."



#11224[illegible]

[illegible] In 2023, Steven discussed with me that he put down a $1 million deposit on [illegible] condo in Dubai in a new high rise building to be constructed and he planned [illegible] condo upon completion.

[illegible] While I worked with him, Steven bought 1,500 acres of vacant land in the [illegible] Republic with Mark Brown's assistance, and 22 acres of land in south Florida. [illegible] to develop both properties, but he failed to do so and often failed to pay the [illegible] the bills related to owning and caring for the properties.

[illegible] In approximately 2023, Steven bought a $6 million residence in Colorado [illegible] use. His friend and employee, Mark Brown, assisted Steven with the purchase. [illegible] lives nearby. Like all else, Steven titled the property to an LLC.

[illegible] Steven worked with Will Deeds to purchase a billboard in Chicago at [illegible] Franklin which generates monthly rental income.

[illegible] The above information is not complete. I have more information [illegible] the assets controlled by Steven that I believe would be helpful to the receiver [illegible]

[illegible] the divorce commenced, Steven often spoke to me and sometimes my team about [illegible] from Jeanette, and his strategy to buy properties and boats titled in LLCs to keep [illegible] from Jeanette. He discussed that his strategy was to run her and her lawyers into the [illegible] never ending litigation and refusal to pay any of her lawyers' bills. He often laughed [illegible] tactics, making fun of Jeanette's attorneys and the judges. He would say that he plan[illegible] Jeanette and Jeanette's attorneys to death." The divorce is a game for Steven tha[illegible] His goal is to prevent Jeanette from getting anything. It got to the point that his [illegible] strategy sickened me and others.



#112[illegible]

[illegible] 2023 and 2024, Steven hired and used an intelligence collection and analysis firm [illegible] of Sector Intelligence, www.sectorintell.com, recommended by one of my sec[illegible] members to compile personal dossiers of “mud” on Jeanette’s counsel, Tanya Sta[illegible] Patrick Powers, Judge Ellen Flannigan and several other attorneys and judges inv[illegible] divorce. Steven spoke with me and my team several times about wanting to destroy the [illegible] Jeanette’s attorneys and injure (reputationally and physically) the judges involved in his [illegible] case. As to Judge Flannigan, Steven wanted to run a black transvestite candidate agai[illegible] nnigan and pay for the campaign in some attempt to humiliate the Judge; very biza[illegible] discussed these plans with me, Gus Pons and Craig Butler, all members of my sec[illegible] conversation happened in Islamorada on May 14, 2024. Another conversation too[illegible] Bahamas at a house that Steven rented for himself and Katie on or about July 16[illegible] ched to this Affidavit as **Group Exhibit 6** are photos that I took at or after those mee[illegible] memorialize these outrageous conversations.

[illegible] 2025, when Steven learned that I was walking away from his employment, he had [illegible] contact me (while Steven was in jail) and David asked me, “What would it take for [illegible] stop?” David tried to bribe me with money. David was nervous that I would sha[illegible] wledge that I had with others such as Jeanette’s counsel. Previous to this con[illegible] personally contacted my wife and left her a threatening text message; his way of [illegible] that he can get to my wife. He was apparently trying to dissuade me from lea[illegible] yment.

[illegible] the past four years, I have watched Steven refuse to pay employees, refuse to pay [illegible], bankrupt business partners, refuse to pay Jeanette, refuse to pay a designer (wh[illegible] suicide), refuse to pay vendors, refuse to pay dock fees, file lawsuits, defend

law [illegible] leading the life of profound luxury in Europe, Dubai and the United States, vaca [illegible] partying on yachts and living in multiple opulent residences.

[illegible] come to this Court with integrity and the willingness to tell the truth to aid the Cou [illegible] not an honest man, and he has no intention of giving Jeanette and his children any [illegible] sistance. I would be willing to assist the Receiver, if appointed, in informing him of [illegible] ncome sources known to me and controlled by Steven, some of which have been men [illegible]

[illegible] YOUR AFFIANT SAYETH NAUGHT.

Und [illegible] s provided by law to 735 ILCS 5/1-109, I certify that the statements set forth in this [illegible] true and correct except as to matters therein stated to be on information and beli [illegible] such matters, I certify that I verily believe same to be true.

____________________

/s/ ______________________________

JOSEPH SEINITZ



#112[illegible]

**Request for Issuance of Summonses on First Amended Complaint – Stratmann v. Ivankovich (Case No. 0:26-cv-61150-PAB)**

CASE NO. 0:26-cv-61150-PAB

CHARLES JACOB STRATMANN,

Plaintiff

STEVEN IVANKOVICH, et al.,

Defendants.

## PLAINTIFF'S REQUEST FOR ISSUANCE OF SUMMONSES ON FIRST AMENDED COMPLAINT

Plaintiff Charles Jacob Stratmann, appearing pro se, respectfully requests that the Clerk of Court issue summonses as to the following Defendants, to accompany the Corrected First Amended Verified Complaint filed November 10, 2026 (which supersedes the Amended Complaint docketed at [illegible] 40).

**A. Basis for Request**

On November 9, 2026, Plaintiff filed a Verified First Amended Complaint (DE 40) pursuant to the Court's October 23, 2026 Paperless Order granting leave to amend (DE 36). On November 10, 2026, the Court entered a Paperless Order (DE 41) confirming the Amended Complaint as timely. The First Amended Complaint supersedes the original Complaint (DE 1) and is now the operative pleading. Summonses previously issued at DE 20 (July 1, 2026) and DE 24 (July 21, 2026) accompanied the original Complaint and bear the original caption. New summonses are required to accompany the operative Amended Complaint for service on all unserved Defendants, including one Defendant newly added by the Amended Complaint and two Defendants whose names [illegible] designations were corrected. On November 10, 2026, Plaintiff filed a Corrected First Amended Verified Complaint and a Notice of Errata stating that the corrected pleading supersedes [illegible] 40 in its entirety; the corrected pleading is the operative amended complaint for purposes of these summonses.

**B. [illegible] Requested**

Plaintiff respectfully requests issuance of summonses as to the following eighteen (18) Defendants:

**Unserved Defendants from Original Complaint (corrected caption):**

1. **Steven Ivankovich** – Service address: 200 S. Biscayne Blvd., Suite 300, Miami, FL [illegible] or such other address as may be ascertained). Alternative addresses for service [illegible] 86600 Overseas Highway, Islamorada, FL (Mat Realty Ventures LLC property [illegible] 791 Crandon Blvd., Ocean Tower 2, PH6, Key Biscayne, FL 33149 (family [illegible] per CMR Operating Agreement).

2. [illegible] – Service address: to be ascertained through CMR docket records (Case [illegible]-cv-61696-AHS). Plaintiff will supplement with a verified address upon [illegible].

3. [illegible] **Klopp** – Service address: Akerman LLP, 777 S. Flagler Dr., Ste. 1100, West [illegible] Palm Beach, FL 33401.

4. [illegible] **Yoss** – Service address: Akerman LLP, 201 E. Las Olas Blvd., Suite 1800, [illegible]dale, FL 33301.

5. [illegible] **Moore** – Service address: Moore & Company, P.A. (address to be confirmed [illegible] Florida Bar records).

6. [illegible] **[illegible]man** – Service address: Moore & Company, P.A. (address to be confirmed [illegible] Florida Bar records).

7. [illegible] **Hand** – Service address: to be ascertained. Plaintiff will supplement with a [illegible] address upon confirmation.

8. [illegible] **Marine Research LLC** – Service address: Registered Agent: Robert Allen [illegible] Brickell Avenue, Suite 1400, Miami, FL 33131 (per Florida Sunbiz Document [illegible]). Alternative: Court-appointed Receiver Neal Levin, or such other [illegible] record.

9. [illegible] **LLC** – Service address: Registered Agent address per Florida Sunbiz records [illegible].

10. [illegible] **Liquidators LLC** – Service address: 800 Old Griffin Road, Dania Beach, FL [illegible]

11. [illegible] **LLC d/b/a Lauderdale Marine Center** – Service address: 2301 SE 17th [illegible] Lauderdale, FL 33316 (principal place of business). Alternative: Registered [illegible] Florida Sunbiz records.

12. [illegible] **Group Inc.** – Service address: CT Corporation System (registered agent for [illegible] in Delaware), or 345 Park Avenue, New York, NY 10154 (principal [illegible]

13. [illegible] **Company, P.A.** – Service address: principal office address per Florida Sunbiz [illegible] confirmed).

14. [illegible] **Capital LLC** – Service address: to be ascertained through state corporate [illegible]

15. [illegible] **Funding LLC** – Service address: to be ascertained through state [illegible]records.

**Co[illegible] Defendants (new summonses required):**

16. [illegible] (misidentified as "Rick Panero" in original Complaint and DE 20 summons) [illegible] address: 5130 NE 30th Avenue, Lighthouse Point, FL 33064-7833 (verified

... Sunbiz Registered Agent address for Ares Marine Inc., per CFAC Exhibit ...).

17. ... Funding Group Inc. (misidentified as "Sinclair Funding Group LLC" in ... Complaint) – Service address: Registered Agent: Nugo Filings Corp., 200 ... of the Americas, Suite 104B, Lakewood, NJ 08701 (per New York ... of State records, DOS ID 7696873, as documented in CFAC Exhibit B, ...).

**New ... Added by First Amended Complaint:**

18. ... Law – Service address: 1441 Brickell Avenue, Suite 1400, Miami, FL ... Florida Sunbiz records and CFAC paragraph identifying RAL as Tier 3 legal ... defendant).

**C. Ser... ...line**

The ... 23, 2026 Paperless Order (DE 36) extended the deadline to complete service ... and file proofs of service to January 12, 2027. Plaintiff intends to complete service ... Defendants within that deadline.

**D. ... Summons Forms**

Plain... ...mit completed AO 440 Summons forms for each of the above-named De... ...the Clerk's issuance. Plaintiff requests that the Clerk sign, seal, and return the sum... ...rvice.

DA... ...day of November, 2026.

Res... ...itted,

---

Ch... ...STRATMANN Pro Se Plaintiff 545 NE 17th Avenue Fort Lauderdale, FL 33... ...54) 873-8546 Email: jake@starboardyacht.com

---

**CE... SERVICE**

I ... November 10, 2026, a true and correct copy of the foregoing Request for Issu... ...ses was served via the Court's CM/ECF system upon all counsel of record, incl... Marcus Brill, Esq. (Glachman & Brill, P.A.) and Bryan Thomas West, Esq. (A...

---

CH... ...ES STRATMANN